# United States Court of Appeals for the Federal Circuit

CELLULOSE MATERIAL SOLUTIONS, LLC,

*Plaintiff-Appellant,*

v.

SC MARKETING GROUP, INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the
Northern District of California; Case No. 22-CV-03141
Hon. Laurel Beeler*

## PRINCIPAL BRIEF OF PLAINTIFF-APPELLANT CELLULOSE MATERIAL SOLUTIONS, LLC

CHRISTOPHER A. MITCHELL
DICKINSON WRIGHT PLLC
200 Ottawa Avenue NE, Suite 900
Grand Rapids, MI 49503
(616) 336-1058
cmitchell@dickinson-wright.com

JOHN S. ARTZ
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI 48104
(248) 433-7262
jsartz@dickinson-wright.com

PHILLIP J. DEROSIER
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
pderosier@dickinson-wright.com

*Counsel for Plaintiff-Appellant*

<u>**EXEMPLARY CLAIMS AT ISSUE**</u>

1.  A method for insulating packaging containers comprising: providing a flat laminated packaging insulation which is of uniform thickness, resiliently compressible and foldable, cut to size for locating in a packaging container, said packaging insulation comprising an air laid thermoplastic fibrous batt comprised primarily of thermoplastic fibers, said batt being of uniform thickness, resiliently compressible and foldable, and having foldable thermoplastic film material adhered to both sides of said batt to form a laminate which can be folded without the need for creases, grooves or cut lines in said laminate to facilitate folding, whereby said laminated packaging insulation can be manufactured, compressed and shipped as a flat panel of uniform thickness, and allowed to resiliently expand and be folded for insertion into a packaging container.

2.  The method of claim 1 wherein said fibrous batt includes from about 5 to about 30% thermoplastic binder fibers mixed with and adhered to at least some of said thermoplastic fibers.

3.  The method of claim 2 in which said thermoplastic fibers, said thermoplastic binder fibers and said thermoplastic film are all made of the same thermoplastic polymer material, whereby said packaging insulation used may be readily commercially recycled.

4.  The method of claim 3 wherein said thermoplastic material is PET.

5.  The method of claim 4 wherein said thermoplastic material is recycled PET.

6.  The method of claim 3 in which said fibers have lengths of between about 20 to about 72 mm.

\* \* \*

10. The method of claim 4 which said PET film material is from about 2 to about 20 microns thick, and is made of recycled PET.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 25-2000 |
| **Short Case Caption** | Cellulose Material Solutions, LLC v. SC Marketing Group, |
| **Filing Party/Entity** | Cellulose Material Solutions, LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/21/2025

Signature: /s/ Christopher A. Mitchell

Name: Christopher A. Mitchell

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Cellulose Material Solutions, LLC | | SOPREMA Michigan Acquisition Corp.; Holding SOPREMA S.A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Yafeez S. Fatabhoy<br>Dickinson Wright PLLC (now with Honigman LLP) | Mark H. Rogge<br>Dickinson Wright PLLC | Amanda Vaughan Letney<br>Dickinson Wright PLLC |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)     ☑ No     ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

EXEMPLARY CLAIMS AT ISSUE ........................................................ i

CERTIFICATE OF INTEREST ........................................................... ii

TABLE OF AUTHORITIES ............................................................. vii

STATEMENT OF RELATED CASES ..................................................... x

JURISDICTIONAL STATEMENT ....................................................... 1

STATEMENT OF THE ISSUE............................................................ 2

STATEMENT OF THE CASE............................................................. 5

I.  Factual Background ..................................................................... 5

    A.  Thermal Shipping approached Cellulose in 2014 to develop and
        manufacture packaging insulation for its customers. ........................ 5

    B.  Cellulose developed an all-PET packaging insulation product. ........ 5

    C.  Cellulose shared the specifications of its new product with
        Thermal Shipping, and provided samples. ..................................... 10

    D.  In February 2016, Thermal Shipping issued a purchase order
        for Cellulose's new product, which was private-labeled as
        "Renewliner." ......................................................................... 13

    E.  In April 2016, Thermal Shipping issued a purchase order for
        Renewliner to a new vendor, Turner Fiberfill................................. 15

    F.  In June 2016, Cellulose applied for, and later obtained, the '007
        patent for its invention.............................................................. 16

II. Proceedings in the District Court................................................ 17

    A.  Cellulose sued Thermal Shipping alleging that Renewliner
        infringes on Cellulose's patent.................................................... 17

    B.  The district court granted Thermal Shipping's motion for
        summary judgment of invalidity, concluding that Renewliner is

anticipating prior art under 35 U.S.C. § 102(a) because it was "on sale" before Cellulose's patent application. ............................... 19

SUMMARY OF THE ARGUMENT .................................................. 22

ARGUMENT ................................................................................. 24

I.    Standard of Review ..................................................................... 24

II.   The district court erred in granting Thermal Shipping's motion for summary judgment of invalidity. ................................................ 25

      A.    Statutory Background ...................................................... 25

      B.    There are disputed factual issues concerning application of the exceptions to prior art invalidity contained in 35 U.S.C. § 102(b)(1)(A) and (B). ....................................................... 27

            1.    A trier of fact could find that the Renewliner of the April 2016 purchase order was obtained "directly or indirectly" from Cellulose (Section 102(b)(1)(A)). ............................... 28

            2.    Alternatively, a trier of fact could find that the April 2016 purchase order disclosed subject matter obtained "directly or indirectly" from Thermal Shipping's Sal Cardinale, who claims to be a joint inventor (Section 102(b)(1)(A)). ....................................................... 39

            3.    There is also a factual dispute as to whether Cellulose "publicly disclosed" its invention prior to the April 2016 purchase order (Section 102(b)(1)(B)). ............................... 41

CONCLUSION ............................................................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Seating Co. v. USSC Grp., Inc.*,
514 F.3d 1262 (Fed. Cir. 2008) ..........................................45

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ..........................................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .............................24, 32

*BASF Corp. v. SNF Holding Co.*,
955 F.3d 958 (Fed. Cir. 2020) ..........................................38, 45

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2019) ..........................................41

*Dey, L.P. v. Sunovion Pharms., Inc.*,
715 F.3d 1351 (Fed. Cir. 2013) ..........................................42, 43, 45

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
978 F.3d 653 (9th Cir. 2020) ..........................................46

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
424 F.3d 1374 (Fed.Cir.2005) ..........................................42

*Luv n' Care, Ltd. v. Laurain*,
98 F.4th 1081 (Fed. Cir. 2024) ..........................................24

*Marez v. Bassett*,
595 F.3d 1068 (9th Cir. 2010) ..........................................23

*MeadWestVaco Corp. v. Rexam Beauty and Closures, Inc.*,
731 F.3d 1258 (Fed. Cir. 2013) ..........................................25

*Merck & Cie v. Watson Lab'ys, Inc.*,
822 F.3d 1347 (Fed. Cir. 2016) ..........................................26

*Michelman v. Lincoln Nat. Life Ins. Co.*,
685 F.3d 887 (9th Cir. 2012) ..........................................23

*Mooney v. Fife,*
    118 F.4th 1081 (9th Cir. 2024) ............................................................24

*Mosaic Brands, Inc. v. Ridge Wallet LLC,*
    55 F.4th 1354 (Fed. Cir. 2022) ............................................34, 35, 39

*Netscape Commc'ns Corp. v. Konrad,*
    295 F.3d 1315 (Fed. Cir. 2002) ..........................................................45

*Plastipak Packaging, Inc. v. Premium Waters, Inc.,*
    55 F.4th 1332 (Fed. Cir. 2022) ............................................38, 39, 41

*Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.,*
    108 F.4th 1376 (Fed. Cir. 2024) ...................................................*passim*

*SNIPR Techs. Ltd. v. Rockefeller Univ.,*
    72 F.4th 1372 (Fed. Cir. 2023) ..........................................................25

*Tech. Licensing Corp. v. Videotek, Inc.,*
    545 F.3d 1316 (Fed. Cir. 2008) ..........................................................32

*TypeRight Keyboard Corp. v. Microsoft Corp.,*
    374 F.3d 1151 (Fed. Cir. 2004) ..........................................................35

*U.S. Water Servs., Inc. v. Novozymes A/S,*
    843 F.3d 1345 (Fed. Cir. 2016) ..........................................................37

**Statutes**

28 U.S.C. § 1295(a)(1) ...........................................................................1

28 U.S.C. §§ 1331 and 1338(a) ...............................................................1

35 U.S.C. § 100(g) ................................................................................40

35 U.S.C. § 102(a) ..............................................................3, 19, 41, 42

35 U.S.C. § 102(a)(1) .....................................................................*passim*

35 U.S.C. § 102(b) (2006) ....................................................................43

35 U.S.C. § 102(b)(1) .....................................................................*passim*

35 U.S.C. § 102(b)(1)(A) ................................................................*passim*

35 U.S.C. §102(b)(1)(B) ...................................................................*passim*

35 U.S.C. § 256 ....................................................................................18, 29

35 U.S.C. § 271 ...........................................................................................18

35 U.S.C. § 282 ...........................................................................................24

## STATEMENT OF RELATED CASES

Other than the originating case for this case, there are no related or prior cases that meet the criteria under Federal Circuit Rule 47.5(a).

# JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over Plaintiff-Appellant Cellulose Material Solutions, LLC's ("Cellulose") patent infringement claim under 28 U.S.C. §§ 1331 and 1338(a). On July 29, 2025, the district court entered its "Partial Final Judgment" in accordance with Federal Rule of Civil Procedure 54(b). Appx0001. Cellulose filed a timely notice of appeal on July 30, 2025. Appx09878. This Court, therefore, has appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

# STATEMENT OF THE ISSUE

Cellulose is a leading developer and manufacturer of various insulation products, including the InfinityCore® brand of thermoplastic packaging products.[1] Cellulose sued Defendant-Appellee SC Marketing Group, Inc. (a/k/a Thermal Shipping Solutions) ("Thermal Shipping") claiming infringement of its patent for packaging insulation that keeps the package contents—for example, meal kits with food items—cool and fresh with fewer or even no accompanying refrigerant packs or dry ice. The patent is U.S. Patent No. 11,078,007 (the '007 patent). The '007 patent is directed to a thermoplastic packaging insulation product and, more specifically (as broadly recited in the patent's claims), a foldable laminated packaging insulation having a thermoplastic fibrous batt with thermoplastic film adhered to opposite sides of the batt. Thermal Shipping's product that Cellulose claims infringes the '007 patent is called "Renewliner."

Cellulose developed the Renewliner product in the course of a business relationship with Thermal Shipping, a relationship that Thermal Shipping ended soon after issuing the very first purchase order to Cellulose to supply Renewliner to third party DinnerThyme. Subsequently, in April 2016, Thermal Shipping issued

---

[1]    https://cmsgreen.com/product-solution/thermal-packaging/infinitycore-thermal-liner/

a purchase order for Renewliner to another vendor, Turner Fiberfill who had not previously made Renewliner.

The district court granted Thermal Shipping's motion for summary judgment of invalidity, concluding that Thermal Shipping's Renewliner is anticipatory prior art because it practices the claims of the '007 patent and, by virtue of the April 2016 purchase order to Turner Fiberfill, was "on sale" before Cellulose filed its patent application in June 2016. *See* 35 U.S.C. § 102(a).

Cellulose, however, presented evidence supporting application of two of the Section 102 exceptions to invalidity. *First,* there is evidence that Cellulose provided the Renewliner to Thermal Shipping before the April 2016 purchase order to Turner Fiberfill and that Thermal Shipping, in turn, provided to Turner the specifications to make the same product. This at least supports a finding that the Renewliner of the April 2016 purchase order was obtained indirectly from Cellulose. This evidence also supports the alternative possibility that the Renewliner of the April 2016 purchase order was obtained directly from a "joint inventor," given Thermal Shipping's claim that its owner, Salvatore ("Sal") Cardinale, was a joint inventor of the '007 patent. *See* 35 U.S.C. § 102(b)(1)(A). *Second*, there is evidence that Cellulose "publicly disclosed" its invention *before* the April 2016 purchase order when it provided specifications and samples for Thermal Shipping customers. Against this conflicting evidence, did the district

3

court err in granting summary judgment to Thermal Shipping on the invalidity issue?

## STATEMENT OF THE CASE

### I. Factual Background

#### A. Thermal Shipping approached Cellulose in 2014 to develop and manufacture packaging insulation for its customers.

In May 2014, Thermal Shipping came to Cellulose seeking options for packaging insulation that its customers could utilize in shipping their products. Appx00829-00830, Appx00963, Appx00966-00968. Thermal Shipping had no manufacturing capabilities of its own and was looking for contract manufacturers who could propose and manufacture packaging insulation products that it could sell to its customers. Appx00829-00830, Appx00963, Appx01445-01448. Thermal Shipping did not come to Cellulose with a product it wanted manufactured. Rather, it requested, and Cellulose provided, samples of its existing packaging insulation offerings, including cellulose (i.e., paper) and cotton insulation products, and then continued working to develop other potential packaging products that might secure business from Thermal Shipping. Appx00963, Appx00981-00985, Appx01511, Appx01524-01525.

#### B. Cellulose developed an all-PET packaging insulation product.

One product Cellulose offered was that which became a subject of the '007 patent; namely, an environmentally-friendly packaging insulation product comprised of a non-woven fibrous batt consisting of 100% PET (polyethylene terephthalate) fibers and having a foldable PET film, or scrim, on both sides.

Appx00963-00964, Appx00986-00988, Appx05583. Cellulose conceived of and began internally testing this new product as early as May 2015. Appx00988, Appx01528-01531. Cellulose employee Matt Henderson, one of the inventors of the '007 patent, explained the efforts that he and two of the other inventors, Brandon Fenske and Chris Benner, put into the testing process:

> Q. How did Mr. Benner go about figuring out how to adhere thermoplastic film to both sides of the batt?
>
> A. We tested it in a production line.
>
> Q. What testing did you perform?
>
> A. We put samples of the film through our laminator on to PET material that we were producing to see if it adhered to the facing of the material.
>
> Q. And what steps did Mr. Benner perform to actually figure out how to make that adhering work?
>
> A. He worked with Mr. Fenske and myself to physically put the material on the line or in the line with the material, so laying the samples on there, testing the pull strength of it.
>
> Q. When did that test occur?
>
> A. The original test occurred sometime -- I believe it was at least within the month of him emailing me about the idea, invention.
>
> Q. And how did you test the tensile strength of that adhesion?
>
> A. Again, we just did hand pull. We didn't do anything scientific, just hand pulls through our -- you know, just pulling and tugging, I guess is the best way to say it.
>
> Q. So it's your testimony that this occurred in what year?
>
> A. In 2015.

Q.     Okay. What month?

A.     Sitting here right now, I can't for sure say, but I think it was in May, May of 2015.  I'm almost sure it was May of 2015.

Appx01530-01531.

Henderson further testified that by June 2015, Cellulose began producing samples using PET film sourced from Lenderink Technologies, Inc.:

Q.     So your testimony in terms of your reduction to practice of this claim is based solely on the existence of emails or invoices from this Lenderink [sic] company; is that correct?

        MR. MITCHELL:  Objection.

        THE WITNESS:   And our production requests; you know, any production requests that we would have -- you know, that we have related to that.

BY MR. MAYS:

Q.     When you say "production requests," what do you mean?

A.     The internal production paperwork that we use to make samples -- at that time used sometimes to make samples. So we would -- you know, it has the makeup of what we were making, so it's a formula sheet, if you will, a production setup, so how much fiber would we need, what types of fiber we would need to use, if there's a facing on it, the date, temperature sometimes of like the oven and the compressor, quantity.  I'm trying to think what else is on there. If we're applying, like, water to the product or not. I think that's about it.

Q.     And how would this film have been referred to in these production requests?

A.     I think it was referred to as like Lenderink, Lenderink film, Lenderink poly. I believe that's what it was referred to as.

Appx01531-01532.

This "production run" occurred on June 18, 2015, as reflected in the following Cellulose "Production Setup Form":



# PRODUCTION SETUP FORM

| REQUISITION INFORMATION | | | | | | |
|---|---|---|---|---|---|---|
| Requested By | | Matt Henderson | Quantity To Be Produced | | | 20 |
| Inventory Number | | .25" | Due Date | | | 6/18/15 |

| SAMPLE SPECIFICATIONS | | | | | | | |
|---|---|---|---|---|---|---|---|
| Water-On/Off | Weight | Thickness (inches) | Length (inches) | Width (inches) | Scrim | | |
| OFF | 400 | 0.25 | 32 | 32 | lendrink poly film | | |
| Oven Thickness | Compressor Thickness | Oven Temp | Oil Temp | Thickness Tolerance | Gauge Used | | |
| 85,80,70,55 | 9,7,5 | | 200c | +/ .125" | Measurematic | | |
| Cellulose (%) | BiCo (%) | Polyester 102-00651 | Starch (%) | Resin (%) | Sizing (%) | Other (%) | |
| 0 | 30 | 70 | | | | | |
| Thickness/Weight Checks | Length Tolerance | Waterjet | Waterjet Orifice size | | | | |
| Every 20 Minutes | +/- .125" | OFF | | | | | |

| COMMENTS: |
|---|
| |

| Revision Date: | 8/1/12 | Reason for Revision: | Thickness/Weight Checks Added |
|---|---|---|---|
| Approved By: | MPH | Title: | Operations Manager: |

Appx01511-01512, Appx01518. As Henderson explained, this production setup form shows the production of 20 samples ("Quantity To Be Produced") of a non-

woven, 100% PET batt having a weight of "400"[2] and with a PET "Scrim" ("lend[e]rink poly film") applied to both sides of the batt. Appx01511-01512.[3]

Before this time, Cellulose had not suggested to Thermal Shipping (nor had Thermal Shipping suggested to Cellulose) any all-PET products or products utilizing a PET batt, and made no mention of its new innovation. Appx01512. That changed on June 19, 2015, when Benner e-mailed Thermal Shipping's owner, Sal Cardinale, proposing a "proprietary, insulative material just for [Thermal Shipping]" made of "highly compressible" foam, which would be "easily recyclable in standard recycling containers." Appx00669, Appx00963. When Thermal Shipping expressed interest, Cellulose began working on commercial-scale production. Appx00964, Appx00989, Appx01291-01294.

---

[2] As Henderson also explained, "400" reflects a weight of 400 grams per square meter ("gsm"). *See* Appx01511-01512. "400 gsm" is equivalent to a density of about 3.9 lbs/ft3. Per the specification of the '007 patent, exemplary embodiments having even higher densities of "about 7 pounds per cubic foot" demonstrate the claimed characteristics, including that of "resilient compressibility."

[3] More specifically, the "Sample Specifications" section of the production setup form reflects the use of 30% "BiCo" and 70% "Polyester 102-00651" for the batt, and a "lend[e]rink poly film" for the "scrim." The "Polyester 102-00651" batt fibers were PET fibers. "BiCo" refers to "bicomponent" PET fibers, which are also known as binder fibers and serve to hold the fibers together in the finished non-woven batt. "Scrim" refers to the film applied to the batt; namely, a thin, foldable, "poly" film that Cellulose obtained from Lenderink. The Lenderink "poly" film was a "polyester"—i.e., PET thermoplastic. *See* Appx01511-01512.

## C. Cellulose shared the specifications of its new product with Thermal Shipping, and provided samples.

By late 2015, Cellulose was capable of making its new packaging insulation product in commercial quantities, at which point it issued budgetary "quotes" to Thermal Shipping, which provided Thermal Shipping with specifics about the product's construction in order to aid Thermal Shipping's sales efforts. Appx00964, Appx00970, Appx05583-05584, Appx05586-05617. For example:



# Quote

| | |
|---|---|
| **Customer:** | Thermal Shipping Solutions |
| **Attn:** | Sal Cardinale - President |
| **Project:** | **A & B in-line rectangular-shapes in GREEN Polyester in 1.5" thickness for a 16"x11"x8" cooler** |
| **email:** | sal@thermalshipping.com |
| **Mobile:** | 415-465-5004 |
| **From:** | Chris Benner - Technical Sales Mgr |
| | 2478 Port Sheldon Street |
| | Jenison, MI 49428 |

| | | | |
|---|---|---|---|
| **Mobile:** | (616) 402-1860 | A= 19" x 39" = | 5.15 |
| **Office:** | (888) 968-9877 | | |
| **Fax:** | (616) 669-2370 | B= 8" x 43.75" = | 2.43 |
| **Quote Status:** | ☐ Prototype | | |
| | ☒ Budgetary | | |
| | ☐ Production | | |
| **Date:** | | 11/14/2015 | |

| Part | Part Descriptions | $/sqft | $/EA | FUTURE Min Order Qty | Ext. | |
|---|---|---|---|---|---|---|
| | Parts will have a thickness of 1.5" With a density of 1.0pcf . Pricing is figured using a minum of 92" of material in the machine width and does not include any post processing. Minimum 85% Recycled content . PET facings applied to BOTH sides to be supplied by TSS at no-charge to CMS. (32) pcs per box. *IF TSS WILL APPROVE ATLEAST ONE OF THE 19" WIDE COMPONENTS HAVING CRUSH-CUT EDGES, THIS PART COULD BE RUN IN-LINE FOR A MUCH LOWER $/SQFT???* | $0.406 | $2.089 | 3,328 | | |
| A-19x39x1.5-G-2P | | | | | $6,952.89 | Must be trial-run |
| | Parts will have a thickness of 1.5" With a density of 1.0pcf . Pricing is figured using a minum of 92" of material in the machine width and does not include any post processing. Minimum 85% Recycled content . PET facings applied to BOTH sides to be supplied by TSS at no-charge to CMS. (64)pcs per box. | $0.324 | $0.788 | 3,328 | | |
| B-8x43.75x1.5-G-2P | | | | | $2,620.800 | Must be trial-run |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**Notes:** **Flat bed Die-cutting this part adds $/part, plus a one-time charge of ~$1,400 in cutting die costs**

1) All pricing and proposed programs are subject to CMS's standard terms (net 30) and conditions with exceptions made on a case-by-case basis.
2) All prototype and budgetary quotes are for budgetary purposes only, and are subject to change immediately.
3) All pricing is FOB- CMS Plant, Jenison, MI 49428
4) The product described here is a custom or engineered product with specific performance and cost attributes. Any changes to this product, application parameters, etc., may require reengineering and impact such attributes.
5) ALL lead-times are (15) business days unless previously approved by CMS's VP of Operations
6) **ALL products are subject to industry standard +/-10% over/under shipped volume to po# amount; A's and B's that are part of the same set will be shipped in equivalent amounts**
7) All production quotes are valid for sixty (60) days from the date of the quote.
8) All pricing is subject to change with a (30) day written notice.
9) All products are priced per square foot assuming a minimum combined line with utilization of 92" or more.
10) Packaging costs include up to six JUMBO boxes of product stacked & stretchwrapped at least 104" high on used 2-way wood pallet. Any additional costs for custom-size, new wood, custom-designed, and/or returnable pallet will need to be requoted.
11) In-line dimensional tolerances are +/- 0.25" for Width and +/- 0.375" for Length
12) This budgetary quotation is for the A's and B's ONLY.
13) **Pricing is based upon receiving any FUTURE po# for not less than (5000) sets, after a CMS trial run, TSS customer approval, & ONE-TIME trial order**

Appx0000964, Appx00970.[4] Cellulose continued to provide this information to Thermal Shipping throughout the end of 2015 and into early 2016, along with product samples, in support of Thermal Shipping's efforts to solicit business for this product. Appx01291-01303, Appx01252-01260, Appx01306-01307, Appx01247-01251, Appx01261-01268, Appx01221-01225, Appx05583-05584, Appx05593-05617.

These various quotes and physical samples went not just to Thermal Shipping; several of Thermal Shipping's prospective customers, including third parties DinnerThyme, Munchery, Sunbasket, and Nurture Life, also received product specifications and/or samples in support of Thermal Shipping's efforts to secure business for this new product. Appx01291-01303, Appx01252-01260, Appx01306-1307, Appx05581-05617, Appx05623-05648. As reflected in those product samples and the accompanying correspondence and other documentation, the Cellulose product consisted of two rectangular panels of PET batt material, each batt faced on opposite sides with PET film, that could be folded into a packaging container in order to provide interior insulation on all six sides. Appx01291-01294, Appx05583-05584, Appx05593-05621, Appx05627.

---

[4] The highlighting in the referenced image appears in the record below.

**D.    In February 2016, Thermal Shipping issued a purchase order for Cellulose's new product, which was private-labeled as "Renewliner."**

Thermal Shipping's first customer for Cellulose's new packaging insulation product was DinnerThyme. Appx00964, Appx00972.    On January 5, 2016, Thermal Shipping requested pricing information for an order to DinnerThyme. Cellulose responded the next day by again providing budgetary quotes, specifying the "Project" as being for DinnerThyme and setting out the specifics of the product's construction. Appx01261-01268, Appx05594-05598. A subsequent internal Thermal Shipping email confirmed this, with the sender citing "the quote that [Cellulose] gave me for Rick Fay of DinnerThyme." Appx01221-01224.    At the same time, a Thermal Shipping employee advised Cellulose that it had "closed DinnerThyme," news that Chris Benner promptly conveyed internally at Cellulose. Appx01312-01316.

On February 23, 2016, Thermal Shipping issued to Cellulose a purchase order for DinnerThyme. The Cellulose product was to use a film labeled "Renewliner" which Thermal Shipping sourced and supplied to Cellulose as a cost-saving measure:



**Thermal Shipping Solutions**
Mill Valley, CA 94941

Ph: 415-389-5004  Fx: 415-389-9007
info@thermalshipping.com

**Purchase Order**

| | |
|---|---|
| Date | P.O. No. |
| 2/23/2016 | 12964 |

*RECEIVED IN FULL*

Vendor:

Cellulose Material Solutions LLC
2472 Port Sheldon
Jenison, MI 49428
United States

Ship To:

Dinner Thyme
1257 RANDALL AVE
BRONX, NY 10474-6412
United States

| Customer PO | Expected | Ship Via | Terms |
|---|---|---|---|
| Email Rick | 2/23/2016 | TBD | Net 30 |

| Item | Description | Qty | U/M | Rate | Amount |
|---|---|---|---|---|---|
| PETAB-14109 | A/B in GREEN 1.0pcf Polyester at 1.5" thickness for a 14"x10"x9" cooler A-14x27.5x1.5-G-2P B-7.5x31x1.5-G-2P | 2,371 | | 1.429 | 3,388.16 |
| PETAB-16129 | A/B in GREEN 1.0pcf Polyester at 1.5" thickness for a 16"x12"x9" cooler A-16x31.5x1.5-G-2P B-7.5x37x1.5-G-2P | 2,371 | | 1.828 | 4,334.19 |

Appx00964, Appx00972, Appx01533. Cellulose employees Matthew Henderson and Kevin Chase both confirmed that the product shipped to DinnerThyme was "materially the same" as the samples that Cellulose had previously provided. Appx05584, Appx05628. In short, the product shipped to DinnerThyme and the earlier samples all satisfied claims of the '007 patent.[5]

---

[5] As noted elsewhere, Thermal Shipping's Sal Cardinale declared in respect of the accused Renewliner that "[t]here have been no material changes to the RENEWLINER product since it was first sold in [February] 2016"; i.e., since the DinnerThyme order.  Appx00667.

**E.  In April 2016, Thermal Shipping issued a purchase order for Renewliner to a new vendor, Turner Fiberfill.**

Cellulose later learned that Thermal Shipping also began working with another vendor, Turner Fiberfill ("Turner"). As Turner's CEO, Paul Turner, testified, Thermal Shipping came to Turner in early 2016 about making a packaging insulation product using specifications from Thermal Shipping. Appx01033-01034; Appx01328.[6] This was confirmed in an "Exclusive Manufacturing Agreement" that Thermal Shipping and Turner subsequently entered into in July 2016. Appx00900-00915. That "Exclusive Manufacturing Agreement" confirms Turner's testimony that Thermal Shipping provided Turner with the specifications to make Renewliner. *Id.*

On April 22, 2016, Thermal Shipping issued a purchase order to Turner to supply the Renewliner product to another one of its customers, Juicero. Appx00898-00899. That purchase order, which reflects the product allegedly offered for sale by Thermal Shipping to Juicero, has specifications which are virtually identical to those for the Renewliner product quoted, and made, by

---

[6] As discussed further below, Turner later submitted a declaration that both lacked documentary support and conflicted with his prior deposition testimony, claiming that Thermal Shipping had actually contacted him earlier in 2015, and that he personally provided input into the specifications. Appx09772-09774. Turner's declaration also contradicted Sal Cardinale's January 13, 2024 declaration, in which he stated that Thermal Shipping "partnered" with Turner *after* its relationship with Cellulose ended "in late 2015." Appx00667.

Cellulose. Appx00898-00899, Appx00971-00974. Turner fulfilled that purchase order sometime after July 2016. Appx09833-09834.

As will be discussed further below, there is no reasonable dispute that the February 2016 purchase order to Cellulose, and the April 2016 purchase order to Turner, were for the same Renewliner product; the product covered by the '007 patent. As Thermal Shipping's Sal Cardinale himself put it: "There have been no material changes to the RENEWLINER product since it was first sold in [February] 2016." Appx00667.

## F. In June 2016, Cellulose applied for, and later obtained, the '007 patent for its invention.

In the meantime, Cellulose applied for a patent on its new packaging insulation product on June 27, 2016. Appx00084-00094. On August 3, 2021, a patent was issued for Cellulose's "Thermoplastic Packaging Insulation Products and Methods of Making and Using Same," U.S. Patent No. 11,078,007 ("'007 patent"). Appx00084-00094. Cellulose markets and sells its insulation product as InfinityCore®:



Appx00073.

## II. Proceedings in the District Court

### A. Cellulose sued Thermal Shipping alleging that Renewliner infringes on Cellulose's patent.

Even after ending its relationship with Cellulose, Thermal Shipping continued to market and sell the Renewliner product that Cellulose invented:



Appx00074.

On May 27, 2022, Cellulose sued Thermal Shipping, in relevant part, for direct and indirect infringement of the '007 patent in violation of 35 U.S.C. § 271 (First and Second Causes of Action). Appx00070. Thermal Shipping counterclaimed seeking, in relevant part, declarations of noninfringement and invalidity (First and Second Counterclaims). Appx00105-00106, Appx00130-00131.

Thermal Shipping also counterclaimed for correction of inventorship pursuant to 35 U.S.C. § 256 (Fourth Counterclaim), alleging that Sal Cardinale "was at least involved in 'collaboration efforts' between the parties" such that his "contributions to the '007 patent entitle him to inventor status." Appx00107-00108, App00133. Thermal Shipping's counterclaim on inventorship is not directly at issue in this appeal but, as discussed below, the district court's denial of Cellulose's motion for summary judgment on the issue of inventorship in light of what the court found to be "a triable issue of disputed fact on inventorship" (Appx06333, Appx09630) *is* relevant here because it supports there being at least a factual dispute when it comes to the invalidity issue as well.

**B.**     **The district court granted Thermal Shipping's motion for summary judgment of invalidity, concluding that Renewliner is anticipating prior art under 35 U.S.C. § 102(a) because it was "on sale" before Cellulose's patent application.**

After discovery, Thermal Shipping moved for summary judgment of invalidity, arguing that Renewliner is anticipatory prior art under 35 U.S.C. § 102(a)(1) because it was "on sale" in February and April 2016, before the '007 patent's June 2016 filing date.  Appx00649.[7]

Cellulose responded that genuine issues of material fact exist with respect to the exceptions to invalidity contained in 35 U.S.C. § 102(b)(1)(A) and (B). Appx00949-00954, Appx01272-01275, Appx01277-01278.[8] As support, Cellulose cited evidence that it developed the Renewliner product that was the subject of

---

[7] 35 U.S.C. § 102(a)(1) provides that a patent may be invalidated if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."

[8] 35 U.S.C. § 102(b)(1) provides that "[a] disclosure made 1 year or less before the effective date of the claimed invention shall not be prior art to the claimed invention under subsection (a)(1) if":

> (A) The disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or

> (B) The subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor.

both the February and April 2016 purchase orders (Section 102(b)(1)(A)), and that even before then it had "publicly disclosed" its invention "by the provision of samples and product specifications" (Section 102(b)(1)(B)). Appx00949-00954, Appx01273-01275, Appx01277-01278.

After requesting supplemental briefing, Appx01192, the district court initially denied summary judgment, concluding that the February 2016 purchase order did not trigger the on-sale bar of § 102(a)(1) because a private or public sale by the inventor (i.e., Cellulose) during the one-year grace period is not prior art. Appx01431. As for the April 2016 purchase order, the court determined that the February 2016 sale "publicly disclosed" the invention such that the April 2016 sale did not invalidate the patent, in accordance with 35 U.S.C. §102(b)(1)(B). *Id.*

Notably, the court also rejected Thermal Shipping's argument "that for purposes of the February and April 2016 purchase orders, it supplied Cellulose with the PET film that is part of the claimed invention, meaning that there were no inventor-originated disclosures that prevent the purchase orders from invalidating the patent." Appx01432. The court concluded that "supplying the raw material could still mean that Cellulose's named inventors conceived of the PET film component of the claimed invention." *Id.*

On September 27, 2024, Thermal Shipping moved for reconsideration following this Court's decision in *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108

F.4th 1376 (Fed. Cir. 2024), in which the Court held that a "private sale" did not constitute a "public disclosure." *Id.* at 1382.

Citing *Sanho*, the district court reversed course, concluding that the February 2016 purchase order did not result in Cellulose's invention being "publicly disclosed" because it was a "purely private sale," and that there was no other evidence that the subject matter of the '007 patent had been publicly disclosed prior to the April 2016 purchase order. Appx00016, Appx00019-00020.[9] While the court acknowledged the Cellulose product samples provided to Thermal Shipping and its prospective customers, it rejected them as being insufficient to constitute "public disclosures." Appx00020. The district court therefore held that the Section 102(b)(1)(B) exception to invalidity did not apply.

Turning to Section 102(b)(1)(A), the district court concluded that there was no evidence either that the April 2016 purchase order disclosed subject matter obtained directly or indirectly from Cellulose, or that it was disclosed by Cardinale in his alleged capacity as a joint inventor. Appx00018-00019. According to the court, "Cellulose did not put forth evidence that it provided [the Renewliner concept] or other aspects of the claimed invention that Thermal Shipping ultimately disclosed." *Id.* Having determined that neither of the Section 102(b)(1)

---

[9] The district court's original order appears at Appx00003. The court later amended it (Appx00013, Appx00022) to correct "clerical errors."

exceptions to invalidity applied, the district court granted summary judgment to Thermal Shipping and declared the asserted claims of the '007 patent to be "invalid as a matter of law." Appx00022.

The district court subsequently denied Cellulose's motion for reconsideration. Appx09848. The court reiterated its view that Cellulose "could not establish that the subject matter disclosed [in the April 2016 purchase order] was obtained from the inventors," and had "established only that it is chronologically possible that information came from the inventors." Appx09852-09853.

On July 1, 2025, the district court granted Cellulose's unopposed motion to enter a partial judgment under Federal Rule of Civil Procedure 54(b) and to stay further proceedings pending appeal. Appx09866. The district court entered its partial final judgment on July 29, 2025. Appx00001. Cellulose filed a timely notice of appeal the next day. Appx09878.

## SUMMARY OF THE ARGUMENT

The district court erred by granting Thermal Shipping's motion for summary judgment of invalidity because there are genuine issues of material fact concerning application of the exceptions to prior art invalidity contained in 35 U.S.C. §

102(b)(1)(A) and (B).[10]

1.     Section 102(b)(1)(A):  Cellulose opposed Thermal Shipping's motion with evidence that the April 2016 purchase order from Thermal Shipping to Turner Fiberfill disclosed subject matter (the packaging insulation described in the '007 patent, labeled as "Renewliner") that was obtained "directly or indirectly" either from Cellulose, the patentee, or from Thermal Shipping's Sal Cardinale, an alleged joint inventor.   Under either scenario, there are disputed factual issues making summary judgment inappropriate.

2.     Section 102(b)(1)(B): Cellulose also presented evidence that it had "publicly disclosed" its invention prior to the April 2016 purchase order by sending samples of its packaging insulation product to Thermal Shipping's customers for inspection and testing, without any expectation of confidentiality.  A factfinder could conclude that those were sufficient public disclosures to satisfy Section 102(b)(1)(B).

---

[10] Although Cellulose occasionally references the district court's decision denying reconsideration to help illustrate the court's analytical errors in granting summary judgment, Cellulose is not separately challenging the court's denial of reconsideration, which would be reviewed under the abuse of discretion standard. *See Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012). Rather, the focus here is on the district court's underlying grant of summary judgment.  Should the Court agree that summary judgment was improper, then the district court's denial of reconsideration would be moot. *See Marez v. Bassett*, 595 F.3d 1068, 1076 n. 5 (9th Cir. 2010).

# ARGUMENT

## I.      Standard of Review

This Court "review[s] a grant of summary judgment in accordance with the law of the regional circuit." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1100 (Fed. Cir. 2024). The Ninth Circuit reviews a grant of summary judgment de novo, "viewing the evidence in the light most favorable to the nonmoving party" and determining whether "there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Mooney v. Fife*, 118 F.4th 1081, 1088 (9th Cir. 2024) (citation modified).

As the Supreme Court has emphasized, "summary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. at 249. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Also relevant here is the well-established presumption of validity that a duly-issued patent receives. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof

shall rest on the party asserting such invalidity.").  A party claiming otherwise has the burden of proving invalidity by "clear and convincing evidence." *MeadWestVaco Corp. v. Rexam Beauty and Closures, Inc.*, 731 F.3d 1258, 1264 (Fed. Cir. 2013).  Thus, "[t]o succeed with a summary judgment motion of invalidity . . . the movant must demonstrate a lack of genuine dispute about material facts and show that the facts not in dispute are clear and convincing in demonstrating invalidity." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358–59 (Fed. Cir. 2001).

## II.  The district court erred in granting Thermal Shipping's motion for summary judgment of invalidity.

### A.  Statutory Background

"In 2011, Congress enacted the Leahy-Smith America Invents Act (AIA), transforming the U.S. patent system from a first-to-invent to a first-inventor-to-file system for determining patent priority. Pub. L. No. 112-29, 125 Stat. 284 (2011)." *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1373 (Fed. Cir. 2023).  "In doing so, Congress redefined what constitutes 'prior art' against a patent or application by amending section 102 of the Patent Act." *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376, 1380 (Fed. Cir. 2024) (citation modified).

Addressing anticipatory prior art, 35 U.S.C. § 102(a)(1) provides that a person shall be entitled to a patent unless "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available

to the public before the effective filing date of the claimed invention." "Section 102(a)(1) . . . defines prior art to include situations in which the claimed invention was 'described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention.'" *Sanho*, 108 F.4th at 1380 (quoting 35 U.S.C. § 102(a)(1)).

In this case, the district court held that the April 2016 purchase order that Thermal Shipping issued to Turner Fiberfill to manufacture Renewliner for Thermal Shipping's end customer, Juicero, satisfied Section 102(a)(1)'s "on sale" bar because Cellulose alleged, and Thermal Shipping did not dispute, "that the Renewliner satisfied all claims of the '007 patent," Appx00017, and because it was "on sale before the '007 patent's priority date." Appx09850-09851.[11]

"However, Congress [in the AIA] provided exceptions for certain references that would otherwise be prior art." *Sanho*, 108 F.4th at 1380. Two of those exceptions are relevant here. Under 28 U.S.C. § 102(b)(1), "[a] disclosure made 1 year or less before the effective filing date of a claimed invention shall not be prior art to the claimed invention under subsection (a)(1)" if one of the following applies:

---

[11] "Section 102(b)'s on-sale bar is triggered when a claimed invention is: (1) ready for patenting; and (2) the subject of a commercial offer for sale prior to the critical date." *Merck & Cie v. Watson Lab'ys, Inc.*, 822 F.3d 1347, 1351 (Fed. Cir. 2016).

(A) The disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor; or

(B) The subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor."

*See* 35 U.S.C. § 102(b)(1).

These provisions afford two different protections. Subsection (b)(1)(A) "provide[s] protection for otherwise invalidating disclosures by the patentee or by someone who obtained the subject matter from the patentee, whether directly or indirectly," *Sanho*, 108 F.4th at 1381, while subsection (b)(1)(B) is "directed at disclosures by another (that is, not by the inventor) after the 'subject matter disclosed' was 'publicly disclosed by the inventor.'" *Id.* (quoting 35 U.S.C. §102(b)(1)(B)).

## B. There are disputed factual issues concerning application of the exceptions to prior art invalidity contained in 35 U.S.C. § 102(b)(1)(A) and (B).

In granting summary judgment to Thermal Shipping, the district court concluded that neither of the Section 102(b)(1) exceptions to prior art invalidity apply here. The district court, however, disregarded relevant evidentiary burdens and overlooked disputed factual issues with respect to both exceptions that made summary judgment inappropriate.

### 1. A trier of fact could find that the Renewliner of the April 2016 purchase order was obtained "directly or indirectly" from Cellulose (Section 102(b)(1)(A)).

Section 102(b)(1)(A) protects against a disclosure made within a year of filing a patent application if the disclosure was made "by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." Cellulose's evidence easily gives rise to a genuine issue of material fact under this exception to invalidity.

As mentioned, Cellulose presented evidence that Thermal Shipping approached Cellulose in 2014 about acquiring Cellulose's insulated packaging for Thermal Shipping's customers. *See* discussion *supra* at 5-8. Cellulose initially provided samples of its existing cellulose (paper) and cotton-based product, which Thermal Shipping did not end up buying. *Id.* And so Cellulose proceeded with other product proposals, including over-bagged cotton, to try to secure business from Thermal Shipping. *Id.* Meanwhile, Cellulose began working internally in 2015 to develop a packaging insulation product consisting of a 100% PET core with PET film on both sides, making it completely recyclable. *Id.*

Cellulose employee Chris Benner emailed Thermal Shipping's owner, Sal Cardinale, on June 19, 2015, alluding to this development as a potential product for Thermal Shipping to offer to its customers. *Id.* at 9. Cellulose's president, Matthew Henderson, testified that the product referenced in that email "was the

InfinityCore product that practices the claims of the ['007] patent." Appx00638-00639. As the district court acknowledged, this was a "propriety disclosure" of "a PET solution" to the product packaging offerings that Thermal Shipping was looking for. Appx09628-09629.[12] Before then, neither party had suggested to the other the possibility of an all-PET packaging insulation product.

After receiving positive feedback from Thermal Shipping, Cellulose continued to work on developing this new product, and by late 2015 was in position to be able to manufacture it in commercial quantities. *See* discussion *supra* at 9-12. As a result, Cellulose issued budgetary "quotes" to Thermal Shipping that, as previously discussed, provided details about the product to aid Thermal Shipping in marketing it to its customers. *Id.* Cellulose also provided physical samples both to Thermal Shipping and Thermal Shipping customers. *Id*.

These efforts led to a February 23, 2016 purchase order for Cellulose to supply its new packaging insulation to one of Thermal Shipping's customers, DinnerThyme. *Id*. at 13-14. This was Thermal Shipping's first sale of the new

---

[12] The district court made these statements in its order denying Cellulose's motion for summary judgment with respect to Thermal Shipping's counterclaim for correction of inventorship under 35 U.S.C. § 256. The court cross-referenced that opinion in its decision granting summary judgment of invalidity. *See, e.g.,* Appx00018.

product, which carried Thermal Shipping's private label, Renewliner,[13] and this Cellulose-made product was materially the same as the samples that Cellulose had previously provided, "differing, if at all, only in one or more of…color, thickness and width/length dimensions." Appx05628. In June 2016, Cellulose filed its application for the '007 patent, which covered the product that it developed and had supplied to Thermal Shipping in the preceding months. *See* discussion *supra* at 15-17.

During that same timeframe, unbeknownst to Cellulose, Thermal Shipping approached another manufacturer, Turner Fiberfill, to supply the same product to another one of Thermal Shipping's customers, Juicero. *Id*. That purchase order was issued in April 2016. *Id*.

Viewed in a light most favorable to Cellulose, as it must be, this timeline allows for a factfinder to draw a reasonable inference that the subject matter disclosed in the April 2016 purchase order—i.e., the product being offered for sale –came from Cellulose. That purchase order involved the same product that Cellulose developed and first disclosed to Thermal Shipping in June 2015,[14] that it

---

[13] As mentioned previously, Thermal Shipping supplied the Renewliner-labeled PET film as a cost-saving measure. Appx00964, Appx00972.

[14] The fact that neither party had previously discussed an all PET product itself supports a potential jury determination that this was the first time that Cellulose's new concept was ever disclosed.

had provided physical samples of, and that Thermal Shipping had, just two months earlier, issued a purchase order to Cellulose to fulfill for the very first Renewliner sale to Thermal Shipping's customer, DinnerThyme. In short, prior to 2016, when Turner Fiberfill became involved, the only Renewliner product in existence came from Cellulose, and Thermal Shipping conveyed the specifications for that product to Turner so that it could fulfill the later April 2016 purchase order.

Indeed, even the district court seemed to recognize the existence of a disputed factual issue as to the Renewliner's origin when it originally denied summary judgment on invalidity. In its initial order requesting supplemental briefing, the court cited Cellulose's evidence "that the initial [February 2016] Renewliner product was received from the '007 patent's named inventors," and that the April 2016 purchase order was for "the same" product. Appx01198-01199. And when it originally denied summary judgment, the court acknowledged that Cellulose had presented evidence of "inventor-originated disclosures" of the Renewliner comprehended by the February 2016 purchase order. Appx01432.

In making an about-face in response to Thermal Shipping's motion for reconsideration, the district court found no "evidence that [Cellulose] provided [the concept for Renewliner] or other aspects of the claimed invention that Thermal Shipping ultimately disclosed [in the April 2016 purchase order]." Appx00018-00019; *see also* Appx09851 ("Cellulose . . . could not establish that the subject

matter disclosed was obtained from the inventors."). That was error for a number of reasons.

As an initial matter, the court appears to have imposed an improper burden on Cellulose, suggesting that it had the "*burden of showing* that the April 2016 sale involved 'subject matter obtained, at least indirectly, from' Cellulose." Appx00018 (emphasis added). That is incorrect. "Because an issued patent is by statute presumed valid, a challenger has the burden of persuasion to show by clear and convincing evidence that the contrary is true." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). Cellulose's burden was one of *production* only, i.e., "the burden of going forward with evidence" that the April 2016 purchase order does not qualify as prior art because the subject matter was obtained from Cellulose. *Id.*

More fundamentally, the district court engaged in improper factfinding by weighing the evidence instead of viewing it in a light most favorable to Cellulose. *Anderson*, 477 U.S. at 249, 255. For example, the district court credited Thermal Shipping's claim that, "by June 2015," Sal Cardinale had independently "conceived of a PET batt with PET film on both sides," and that "Thermal Shipping was working with its supplier Tim Wilson on the concept of an all-PET product." Appx09851, Appx09853. According to the court, Cellulose failed to

show "that its alleged disclosures to Thermal Shipping predate Cardinale's knowledge of the concept." Appx09851.

A jury, however, would be entitled to reject Thermal Shipping's claim entirely in light of Cellulose's own evidence, including Cellulose's evidence of prior conception, which even the district court conceded "supports its argument that it conceived of the subject of the '007 patent before Thermal Shipping contributed to that conception." Appx00018. Cellulose also presented evidence of having thereafter (and well before the April 2016 purchase order) provided Thermal Shipping with samples of, and specifications for, the Renewliner product. *See* discussion *supra* at 10-13. In short, there was ample evidence of a factual dispute as to whether the April 2016 purchase order comprehended subject matter obtained from Cellulose.

A jury could also reject Thermal Shipping's independent-conception claim as insufficient without even considering Cellulose's competing evidence. As an initial matter, Thermal Shipping's independent-conception claim contradicts its *other* claim that Cardinale is a *co-inventor* (based on his alleged contribution, made *after* June 2015, to Cellulose-supplied product),[15] which led the district court to

_____

[15] In his May 24, 2024, declaration, Cardinale stated that he worked on applying PET film to PET batts supplied by Cellulose "[i]n the July or August 2015 timeframe." Appx01865.

deny Cellulose's motion for summary judgment as to Thermal Shipping's counterclaim for correction of inventorship. *See* Appx06331-0633, Appx09628-09630. At the very least, the existence of this court-acknowledged factual dispute itself demonstrates the impropriety of granting summary judgment to Thermal Shipping on the grounds that Sal Cardinale came up with the Renewliner.

More importantly, there is no corroborating evidence to support Cardinale's claim that he came up with the idea for Renewliner on his own even before Cellulose first proposed it in June 2015. There is only Cardinale's self-serving declaration that he "developed the idea" and partnered with Cellulose in April 2015 to "manufacture" it (Appx00667), which again conflicts with a second declaration that he "contributed" to it in "July or August 2015." Appx01865-01866.[16]

That alone defeats Thermal Shipping's motion for summary judgment. "[W]hen a party claims that its own invention predates, and thus anticipates, a patent assigned asserted against it, the oral testimony of the inventor of the purported prior art must be corroborated." *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1363 (Fed. Cir. 2022). Again, that is not the case here.

---

[16] The district court credited Cardinale's claim that he had been working with his "supplier Tim Wilson to obtain PET film samples" (Appx09621, Appx00018), but by Cardinale's own account, that was not until *after* Cellulose first communicated the idea to him. Appx01865.

Regardless, it was error for the district court to grant summary judgment because a "factfinder will have to evaluate the credibility and persuasiveness" of Thermal Shipping's evidence and "make its own judgment" as to whether Thermal Shipping can satisfy the clear-and-convincing-evidence standard. *Id*.

As this Court has emphasized time and again, such determinations are for the trier of fact. *See TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004) ("[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant[']s witnesses."). Where, as here, the record draws into question the credibility of the evidence submitted by the party seeking to invalidate a patent, summary judgment is "unwarranted." *Mosaic*, 55 F.4th at 1366 ("[I]f the factfinder were to find that [Mosaic's witness] is not credible . . . the record would then lack the requisite corroborating evidence and Mosaic would be unable to meet its clear and convincing burden.").

The district court also cited a June 24, 2015 email from Cellulose to Thermal Shipping with attached photographs that, according to the court, "did not show a batt with film attached to both sides, foldable without the need for creases, grooves, or cutlines." Appx00018. Yet as the court itself had previously recognized in finding there to be questions of fact as to inventorship, Cellulose's June 19, 2015 email, from less than a week earlier, *did* make a "proprietary

disclosure" to Thermal Shipping of just such a product. Appx06331-06332, Appx09628-09629. And then Cellulose followed that up by providing product specifications and samples throughout the end of 2015 and into 2016, well before Thermal Shipping provided those same specifications to Turner Fiberfill. *See* discussion *supra* at 10-13. The district court failed to account for that evidence in granting summary judgment of invalidity.

The district court also characterized Cellulose's quotes to Thermal Shipping as "disclos[ing] specifications chosen by Thermal Shipping, not Cellulose's inventors." Appx09852. According to the court, this meant that Cellulose had "no evidence that Cardinale shared Cellulose's information with Turner Fiberfill." *Id.* But that was *the court's* subjective assessment, based largely on self-serving declarations from Cardinale as well as Turner's CEO, Paul Turner, which a factfinder is not required to accept. *Id*. Turner's declaration was particularly suspect.

*First*, it was submitted for the first time in response to Cellulose's motion for reconsideration, not as part of Thermal Shipping's summary judgment briefing. Appx09772. *Second*, Turner's statement in his declaration that Cardinale first contacted him in 2015 contradicted Turner's prior deposition testimony that he did not start working with Thermal Shipping until 2016, Appx01033-01034, as well as Cardinale's own declaration stating that Thermal Shipping "partnered" with Turner

after its relationship with Cellulose ended "in late 2015." Appx00667.  *Third*, there is no documentary evidence of any exchange of information between Thermal Shipping and Turner before 2016—no emails or written correspondence of any kind, and no documentation reflecting samples being provided or a sharing of product details.  Nothing.  *Finally*, this conclusion by the district court was again in direct conflict with its determination that this very same evidence concerning specifications created questions of material fact on the question of inventorship. Appx0633, Appx09630.  It was also in disregard of Cellulose's evidence that these specifications were already well-known to Cellulose and were comprehended by the earliest product samples sent to Thermal Shipping back in 2014.  Appx01512, Appx01514-01516.

On the other hand, Cellulose's evidence supports the conclusion, or at least a jury could find, that Thermal Shipping and Turner did not begin their relationship until *after* Cellulose had provided Thermal Shipping with product specifications and samples, such that the only reasonable explanation for how Turner happened to manufacture the same product that Cellulose had previously disclosed is that Thermal Shipping provided those same specifications to Turner.

Again, the district court's role at the summary judgment stage is not to credit certain evidence and disregard or dismiss other evidence. *See U.S. Water Servs., Inc. v. Novozymes A/S*, 843 F.3d 1345, 1351 (Fed. Cir. 2016) ("By disregarding

this evidence, the [d]istrict [c]ourt improperly made credibility determinations and weighed conflicting evidence."). Instead, "[a] factfinder, not the trial court at summary judgment, [needs] to weigh all of the competing evidence and draw its own reasonable conclusions . . . ." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1343 (Fed. Cir. 2022). That includes making reasonable inferences from the evidence. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020) (recognizing that the factfinder is "entitled to make reasonable inferences" in resolving invalidity disputes under 35 U.S.C. § 102).

While the district court emphasized its own "timeline" (Appx00018), concluding that it supported Thermal Shipping's claim of Renewliner having been independently conceived (Appx09851), a factfinder is entitled to instead credit Cellulose's timeline, disregard Thermal Shipping's independent-conception claim, and conclude that the information Thermal Shipping provided to Turner to fulfill the April 2016 purchase order came from Cellulose. The district court dismissed this as "only an inferential argument" (Appx09852), but reasonable inferences are *precisely* what triers of fact are entitled draw. *BASF*, 955 F.3d at 967.

The district court compounded its error by speculating that the information Turner used to manufacture the Renewliner "could have come from [Turner], other Thermal Shipping employees, the public domain, or other sources." Appx09852. There is no evidence of any of that. And even if it were a *possibility*, it does not

warrant summary judgment. Again, it is Thermal Shipping's burden to prove invalidity of the '007 patent by "such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *Plastipak*, 55 F.4th at 1340. This is a "heavy" burden that "rests squarely on [Thermal Shipping]." *Mosaic Brands,* 55 F.4th at 1366. Thermal Shipping did not come close to meeting it.

As this Court observed in *Plastipak*, "often the assessment of what contribution has been made by a purported inventor . . . is bound up with material fact disputes which a reasonable factfinder could resolve in favor of either party." *Plastipak*, 55 F.4th at 1343.

> **2. Alternatively, a trier of fact could find that the April 2016 purchase order disclosed subject matter obtained "directly or indirectly" from Thermal Shipping's Sal Cardinale, who claims to be a joint inventor (Section 102(b)(1)(A)).**

Although this appeal does not involve an inventorship dispute per se, the parties' competing (and in Thermal Shipping's case, contradictory) evidence on inventorship is absolutely relevant to the invalidity issue. Specifically, if Cardinale *is* a joint inventor, as Thermal Shipping asserted in successfully opposing Cellulose's motion for summary judgment on its inventorship counterclaim, then a jury could find either that Cardinale himself disclosed the invention in the April 2016 purchase order, or that Thermal Shipping did based on specifications it

obtained from Cardinale. Either way, because Section 102(b)(1)(A) protects disclosures made by a "joint inventor," which 35 U.S.C. § 100(g) defines as "any 1 of the individuals who invented or discovered the subject matter of a joint invention," Section 102(b)(1)(A)'s exception to invalidity would apply regardless whether the purchase order's subject matter came from Cellulose (the patentee) or Cardinale (a claimed joint inventor).

In addressing the impact of Thermal Shipping's joint inventorship claim, the district court appears to have misapprehended Cellulose's argument. It is not about whether Thermal Shipping is "preclude[d] from claiming that the 2016 Renewliner was independently conceived." Appx09852. Nor was Cellulose suggesting that the inventorship and invalidity inquiries are the same. Appx00019. The point is that *if* Cardinale contributed to Renewliner's development as Thermal Shipping claimed in connection with the parties' inventorship dispute (regardless whether he independently conceived it)—an issue that the district court found to be ripe for trial—then he is, by definition, a "joint inventor" such that the disclosure in the April 2016 purchase order was made either "by the . . . joint inventor [Cardinale] or another [Thermal Shipping] who obtained the subject matter disclosed directly or indirectly from the . . . joint inventor." 35 U.S.C. § 102(b)(1)(A). As such, it would deprive the disclosure of any prior art status in the same way as if the subject matter were obtained from Cellulose (as either the inventor or co-inventor).

If nothing else, this all shows the extent to which the invalidity question is "bound up" with material factual disputes rendering summary judgment unwarranted. *Plastipak*, 55 F.4th at 1343. This Court has cautioned that "[b]ecause the burden rests with the alleged infringer to present clear and convincing evidence supporting a finding of invalidity, granting judgment as a matter of law for the party carrying the burden of proof is generally reserved for extreme cases, such as when the opposing party's witness makes a key admission." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2019) (internal quotation marks and citation omitted). This is not one of those "extreme cases." Summary judgment should have been denied because there is a genuine factual dispute concerning the origin of the subject matter disclosed in the April 2016 purchase order.

> **3.** **There is also a factual dispute as to whether Cellulose "publicly disclosed" its invention prior to the April 2016 purchase order (Section 102(b)(1)(B)).**

The district court also overlooked a factual dispute as to whether Cellulose "publicly disclosed" the subject matter of the '007 patent prior to the April 2016 purchase order for purposes of the Section 102(b)(1)(B) exception to prior art invalidity.

In *Sanho*, the Court held that "publicly disclosed" for purposes of Section 102(b)(1)(B) is narrower than the invalidating "disclosures" in Section 102(a) such

that it requires more than that the invention was "in public use" or "on sale." To have been "publicly disclosed," the invention must have been "made available to the public." *Sanho*, 108 F.4th at 1382. Or put another way, the invention must have been disclosed such that it became "publicly accessible." *Id*. at 1383 (citing 157 CONG. REC. at S1370 (statement by Sen. Jon Kyl)). Thus, a "private sale" like that involved in *Sanho* is not enough, even if there was no confidentiality or nondisclosure agreement. *Id*. at 1385. The sale must have "disclosed the inventive subject matter to the public." *Id.*

Although, as the district court noted, *Sanho* cautioned against improper reliance on cases addressing "what constitutes commercial 'public use'" for purposes of Section 102(a), *Sanho*, 108 F.4th at 1383, part of the "public use" inquiry has long been whether the use "was accessible to the public,"[17] which

---

[17] As the Court explained in *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351 (Fed. Cir. 2013), the pre-AIA version of Section 102 provided that "[a]n applicant may not receive a patent for an invention that was 'in public use . . . in this country, more than one year prior to the date of the application for patent in the United States.'" *Id*. at 1355 (quoting 35 U.S.C. § 102(b) (2006)). "To decide whether a prior use constitutes an invalidating 'public use,' we ask 'whether the purported use: (1) was accessible to the public; or (2) was commercially exploited.' *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1380 (Fed.Cir.2005)." *Id*.

The reference to an invention's pre-filing "public use" as barring patentability is now in Section 102(a)(1): "A person shall be entitled to a patent unless—(1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."

*Sanho* recognized as the same question presented under Section 102(b)(1)(B). *Id.* (citing the AIA's legislative history as explaining that "[w]hether an invention has been made available to the public [for purposes of the current Section 102(b)] is the same inquiry that is undertaken under existing law to determine whether a document has become publicly accessible") (cleaned up).

The Court's prior "public use" decisions "have provided considerable guidance as to what it means to be 'accessible to the public.'" *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013). Relevant factors include "'the nature of the activity that occurred in public; the public access to and knowledge of the public use; [and] whether there was any confidentiality obligation imposed on persons who observed the use.'" *Id.* (citation omitted).

Here, and unlike in *Sanho*, Cellulose submitted evidence from which a jury could determine that the subject matter of the invention described in the '007 patent was in fact "publicly disclosed" in that it was "publicly accessible." Those disclosures included:

- Cellulose made samples of the product in December 2015 and sent them directly to one of Thermal Shipping's customers, Nurture Life, for evaluation.

- Cellulose made additional samples in December 2015 and sent them to Thermal Shipping.

- In January 2016, Cellulose made further product samples and sent them to Thermal Shipping to be passed along to another one of its customers, Munchery, for evaluation and testing.

*See* Appx01291-01303, Appx01252-01260, Appx01306-1307, Appx05581-05617, Appx05623-05648. As Cellulose employees Henderson and Chase both declared, these activities were done in support of Thermal Shipping's concerted effort to develop interest, and therefore sales, for the new product among potential customers. Appx05583-05585, Appx05624-05628.

Thus, even before the initial February 2016 DinnerThyme purchase order, which the district court concluded was insufficient to have "publicly disclosed" the subject matter of the '007 patent because it was a purely private sale, Cellulose (the employer of all of the '007 patent's named inventors) had made various product samples available for inspection and testing not just to Thermal Shipping, but to third parties Nurture Life and Munchery.

The district court rejected Cellulose's dissemination of these samples as being insufficient to constitute "public disclosures" (Appx00020), but once again, disputed factual issues preclude summary judgment. There were no restrictions on the ability of third parties to examine and test the product, which would readily reveal the nature of its construction. Indeed, that was the whole point of Cellulose sending samples for evaluation by Thermal Shipping's customers. Nor were those third parties under any sort of confidentiality obligation, express or implied. So these were not the sort of "secret or confidential third-party uses" that have been

found to be unavailable to the public. *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2013).

On the contrary, anyone in possession of the product had access to its features, could "readily discern" them, and was free to utilize them. *Cf. Dey*, 715 F.3d 1351 at 1359 (recognizing that "if members of the public" can "readily discern" an invention's claimed features, then the public can be said have been "put in possession of those features"). This was not a case where the inventor "clearly limited and controlled" access. *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008). As a result, a jury could find the disclosures sufficient to have made the invention "available to the public." *See BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020) (holding that the district court erred in granting summary judgment on public accessibility because "a factfinder would be entitled to make reasonable inferences" in deciding the issue).[18]

At the very least, the district court should have granted Cellulose's request for additional discovery in light of *Sanho*, which was issued after discovery

---

[18] *See also Netscape Commc'ns Corp. v. Konrad,* 295 F.3d 1315, 1323 (Fed. Cir. 2002) ("Konrad's failure to monitor the use of his remote database object system, and failure to impose confidentiality agreements on those that used it was enough to place the claimed features of the patents in the public's possession.").

closed.[19]   Before *Sanho*, Cellulose had no reason to inquire into the extent of

Thermal Shipping's own public disclosures of the Cellulose-provided Renewliner

product, including to other potential customers, which may well prove to be

significant.  The district court should have allowed for at least limited discovery on

the public-disclosures issue before making a summary judgment ruling.   *See*

*InteliClear, LLC v. ETC Glob. Holdings, Inc*., 978 F.3d 653, 663–64 (9th Cir.

2020) ("[W]e conclude that the summary judgment granted was precipitous,

premature and did not fairly permit development of the issues for resolution,

because the nonmoving party has not had the opportunity to discover information

that is essential to its opposition.") (citation modified).

## CONCLUSION

The district court erred in granting Thermal Shipping's motion for summary

judgment of invalidity, as there are genuine issues of material fact with respect to

application of both of 35 U.S.C. § 102(b)(1)'s exceptions to the on-sale bar.

Cellulose requests that the district court's award of summary judgment to Thermal

Shipping be reversed, and the case remanded for further proceedings.

---

[19] *See* Appx06436-06437 (requesting the opportunity for further discovery in light
of *Sanho*).

Dated:  October 21, 2025

Respectfully submitted,

DICKINSON WRIGHT PLLC


By:  /s/ Christopher A. Mitchell
    CHRISTOPHER A. MITCHELL
    200 Ottawa Avenue NE, Suite 900
    Grand Rapids, MI 49503
    (616) 336-1058
    cmitchell@dickinson-wright.com

    JOHN S. ARTZ
    350 S. Main Street, Suite 300
    Ann Arbor, MI 48104
    (734) 623-7075
    jartz@dickinson-wright.com

    PHILLIP J. DEROSIER
    500 Woodward Avenue, Suite 4000
    Detroit, Michigan 48226
    (313) 223-3500
    pderosier@dickinson-wright.com

    *Counsel for Plaintiff-Appellant*

# <u>ADDENDUM</u>

1        UNITED STATES DISTRICT COURT

2        NORTHERN DISTRICT OF CALIFORNIA

3        SAN FRANCISCO DIVISION

4   CELLULOSE MATERIAL SOLUTIONS, LLC,    )    CASE NO.:  3:22-cv-03141-LB
                                           )
5            Plaintiff,                     )
                                           )
6        v.                                 )    [~~PROPOSED~~] **PARTIAL FINAL**
                                           )    **JUDGMENT**
7   SC MARKETING GROUP, INC.,              )
                                           )
8            Defendant.                     )
    _____    )

9

10       On January 16, 2024, Defendant SC Marketing Group, Inc. d/b/a Thermal Shipping

11  Solutions ("TSS") moved for summary judgment that U.S. Patent No. 11,078,007 was invalid

12  based on 35 U.S.C. §§ 102.  Dkt. 141.  On May 10, 2024, the Court denied that motion.  Dkt.

13  183.  Upon TSS's Motion for reconsideration (Dkt. 238), on December 14, 2024, the Court

14  granted TSS's Motion and found that the asserted claims of the '007 Patent were invalid.   Dkts.

15  279, 302.   On March 10, 2025, the Court denied Plaintiff Cellulose Material Solutions,

16  LLC's ("CMS") Motion for Reconsideration (Dkt. 294) of the Court's December 14 Order.

17  Dkt. 301.  On July 1, 2025, the Court certified its December 14 Order for partial final

18  judgment under Fed. R. Civ. P. 54(b).  Dkt. 317.

19       In accordance with the foregoing, partial final judgment is hereby entered as follows:

20       1.      Judgment in favor of TSS and against CMS as to CMS's First and Second Causes

21  of Action (Dkt. 1).

22       2.      Judgment in favor of TSS and against CMS as to TSS's First and Second

23  Counterclaims (Dkt. 85).

24

25

26

27

28

PARTIAL FINAL JUDGMENT                          1                              3:22-cv-03141-LB

1   Dated: _____July 29_____, 2025        By: _____

2                                                Hon. Laurel Beeler

3

4

5   Dated: _____, 2025             By: _____

6                                                     Clerk

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                       San Francisco Division

11   CELLULOSE MATERIAL SOLUTIONS, LLC,    Case No. 22-cv-03141-LB

12              Plaintiff,

13         v.                              **ORDER GRANTING MOTION FOR
                                           RECONSIDERATION AND
14   SC MARKETING GROUP, INC.,             GRANTING SUMMARY
                                           JUDGMENT AS TO INVALIDITY**
15              Defendant.
                                           Re: ECF Nos. 141, 238
16

17                           **INTRODUCTION**

18       Plaintiff Cellulose Material Solutions claims that defendant SC Marketing Group (also known

19   as Thermal Shipping Solutions) infringes a patent for packaging insulation that keeps the package

20   contents — for example, meal kits with food items — cool and fresh without the need for

21   refrigerant packs. The patent is U.S. Patent No. 11,078,007 (the '007 patent). The parties are

22   competitors.[1] Cellulose's insulation product is called InfinityCore, and Thermal Shipping's

23   product is called Renewliner.[2] Thermal Shipping previously moved for summary judgment of

24   invalidity on two grounds: (1) an offer by Cellulose to Thermal Shipping to sell a prototype of the

25

26   ───────────────

[1] Compl. – ECF No. 1 at 1–2 (¶ 1), 4 (¶ 16), 6 (¶ 30); U.S. Patent No. 11,078,007 (filed June 27, 2016)
27   – ECF No. 1-1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to
the ECF-generated page numbers at the top of documents.
28   [2] Compl. – ECF No. 1 at 2 (¶ 2), 3 (¶ 14). The complaint capitalizes the product names.

ORDER – No. 22-cv-03141-LB

United States District Court
Northern District of California

invention, before the patent's filing date, triggered the on-sale bar of 35 U.S.C. § 102; and (2) the Renewliner is anticipating prior art under § 102 because it was on sale before the patent's filing date.[3] In two orders, the court denied the motion.[4] Thermal Shipping moved for reconsideration in part (on the second ground), following the Federal Circuit's decision in *Sanho Corp. v. Kaijet Tech. Int'l Ltd.*, 108 F.4th 1376 (Fed. Cir. 2024). The court grants the motion: the '007 patent is invalid because the Renewliner was on sale before the patent's filing date and that sale was not preceded by a public disclosure of the invention by Cellulose.

## LEGAL STANDARD

This district's local rules provide that a motion for reconsideration must be based on one of the following: (1) "a material difference in fact or law" relative to that "which was presented to the Court before entry" of the subject order, (2) "[t]he emergence of new material facts or a change of law," or (3) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court." N.D. Cal. Civ. L.R. 7-9(b). A district court can also "reconsider" non-final judgments pursuant to Federal Rule of Civil Procedure 54(b) and the court's "inherent power rooted firmly in the common law" to "rescind an interlocutory order over which it has jurisdiction." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001). Reconsideration is appropriate when (1) the court is presented with newly discovered evidence, (2) the underlying decision was in clear error or manifestly unjust, or (3) there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id.*

## ANALYSIS

The issue is whether the Federal Circuit's *Sanho* decision, which was issued after the summary-judgment order, changed the law such that the outcome of the summary-judgment order should be

---

[3] Mot. – ECF No. 141.

[4] Orders – ECF Nos. 160, 183.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  different. The *Sanho* court interpreted the America Invents Act (AIA) and specifically 35 U.S.C.

2  § 102(a)–(b), which are provisions that govern what constitutes prior art against a patent by

3  reference to the patent's filing date.

4      Under 35 U.S.C. § 102(a)(1), a patent is invalid if "the claimed invention was patented, described

5  in a printed publication, or in public use, on sale, or otherwise available to the public before the

6  effective filing date of the claimed invention." But such a disclosure does not result in invalidity if it

7  was made one year or less before the effective filing date and it "was made by the inventor or joint

8  inventor or by another who obtained the subject matter disclosed directly or indirectly from the

9  inventor or a joint inventor." *Id.* § 102(b)(1)(A). Also, a disclosure made one year or less before the

10  patent filing date is not prior art if "the subject matter disclosed had, before such disclosure, been

11  publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter

12  disclosed directly or indirectly from the inventor or a joint inventor." 35 U.S.C. § 102(b)(1)(B).

13      The requirements for the on-sale bar are "that the claimed invention (1) was the subject of a

14  commercial offer for sale[] and (2) was ready for patenting." *Medicines Co. v. Hospira, Inc.*, 827

15  F.3d 1363, 1372 (Fed. Cir. 2016) (citing *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67–68

16  (1988)). An offer for sale "does not have to be accepted to implicate the on sale bar." *Scaltech, Inc.*

17  *v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328 (Fed. Cir. 2001). But it must be "sufficiently definite." *Id.*

18  "[T]he acceptance of [a] purchase order prior to [the critical date] makes it clear that such an offer

19  had been made, and there is no question that the sale was commercial rather than experimental in

20  character." *Pfaff,* 525 U.S. at 67. "The fact that delivery was set for dates after the critical date is

21  irrelevant to the finding of a commercial offer to sell." *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 590

22  (Fed. Cir. 2000).[5]

23      Here, the parties and some third parties engaged in commercial activity related to the claimed

24  invention in the months leading up the patent's filing date (June 27, 2016). Relevantly here, this

25  activity took the form of two purchase orders, one in February 2016 (for Cellulose to ship product

26  labeled "Renewliner" directly to Thermal Shipping's end customer DinnerThyme) and one in April

27

28  _____

[5] *See* Order – ECF No. 160 at 5 (discussing requirements for the on-sale bar); Mot. – ECF No. 238 (same).

2016 (a sale of the Renewliner that was fulfilled for Thermal Shipping by its vendor Turner Fiberfill rather than Cellulose, for Thermal Shipping's end customer Juicero).

The February 2016 purchase order does not invalidate the patent because "a private or public sale by the inventor during the one-year grace period is not prior art." *Sanho*, 108 F.4th at 1380. The issue then is the April 2016 purchase order, which did not involve Cellulose. The court previously held that the February 2016 purchase order was a public disclosure by Cellulose such that the April 2016 purchase order did not invalidate the patent (under § 102(b)(1)(B)). The court reasoned that "§ 102(a) itself equates an invention's being on sale with a 'public' disclosure."[6]

*Sanho* changes the picture. The court held that a "private sale" by the patentee, before the patent's filing date, is not the same as a public disclosure of the invention. *Id.* at 1385. "Section 102(b) appears to have as its purpose protection of an inventor who discloses his invention to the public before filing a patent application because the inventor has made his invention available to the public — a major objective of providing patent protection in the first place." *Id.* at 1382. But "publicly disclosed by the inventor" as that phrase is used in § 102(b) "must mean . . . that the invention was made available to the public," which a private sale does not accomplish by itself. *Id.* at 1381–85.

*Sanho* analyzed § 102(b)(2)(B), which concerns "patent applications filed by another," rather than § 102(b)(1)(B) (at issue here), which "refers to activities by the inventor or a third party." *Id.* at 1380–81. But the reasoning of *Sanho* applies here: both provisions require that the claimed invention be "publicly disclosed by the inventor" before the third party's disclosure for the third party's disclosure to not invalidate the patent. 35 U.S.C. § 102(b)(1)(B), (b)(2)(B). It follows that in both scenarios, a purely private sale by the inventor is not a public disclosure by the inventor. Thus, based only the only evidence at issue in the earlier-filed motion, the April 2016 purchase order, which reflects a sale offer by Thermal Shipping and which preceded the '007 patent's filing date, invalidates the patent. 35 U.S.C. § 102(a)(1).

Cellulose's original opposition brief, which contained its core arguments in support of a different result, does not overcome *Sanho*. Regarding the April 2016 purchase order, Cellulose

---

[6] Order – ECF No. 183 at 2–3.

contended first that Turner Fiberfill didn't manufacture or ship any Renewliner product until after the July 2016 patent-filing date.[7] But a commercial offer for sale is sufficient to satisfy the on-sale bar of § 102(a)(1). *Medicines*, 827 F.3d at 1372.

Cellulose also argued that the February 2016 purchase order was a public disclosure by Cellulose preceding Thermal Shipping's April 2016 purchase order.[8] This is the reasoning the court previously adopted but that is now foreclosed by *Sanho*.

Finally, looking at the burdens that apply here, and as the court previously explained, "[w]hen an alleged infringer attacks the validity of an issued patent," the law "places the burden of persuasion on the attacker to prove invalidity by clear and convincing evidence." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("[T]he risk of decisional uncertainty stays on the proponent of the proposition."). "A quite different burden is that of going forward with evidence," which is "a shifting burden" that "mean[s] both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Id.* Thermal Shipping, "having the ultimate burden of proving its defense of invalidity based on anticipating prior art, . . . has the burden of going forward with evidence that there is such anticipating prior art." *Id.* Cellulose then "has the burden of going forward with evidence" in rebuttal, such as evidence "that the prior art does not actually anticipate." *Id.*

Again as the court explained before, Thermal Shipping met its initial burden with respect to the purchase orders, because Cellulose alleges that the Renewliner satisfies all claims of the '007 patent. *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-cv-6635-LHK, 2013 WL 6673676, at *4 (N.D. Cal. Dec. 18, 2013), citing *Peters v. Active Mfg.*, 129 U.S. 530, 537 (1889) ("[T]hat which infringes, if later, would anticipate, if earlier.") (cleaned up). Cellulose's two arguments above do not meet its burden of going forward with evidence in rebuttal.

In sum, based on the record put forth in the earlier motion, the only sales at issue were the February 2016 purchase order and the April 2016 purchase order. The February 2016 purchase

---

[7] Opp'n – ECF No. 149 at 16–17.

[8] *Id.* at 17–18.

United States District Court
Northern District of California

1    order is a purely private sale. The April 2016 sales offer by Thermal Shipping preceded the '007

2    filing date and invalidates the patent. 35 U.S.C. § 102(a)(1).

3        Cellulose raises four additional arguments: (1) the April 2016 sale was of subject matter that

4    Thermal Shipping obtained at least indirectly from Cellulose; (2) the April 2016 sale may have

5    offered products based on Cellulose samples; (3) Cellulose made public disclosures before the April

6    2016 sale; and (4) the facts are disputed that the April 2016 sale is prior art.[9]

7

8    **1.   Derivation of Ideas**

9        Cellulose has the burden of showing that the April 2016 sale involved "subject matter obtained,

10   at least indirectly, from" Cellulose.[10] 35 U.S.C. § 102(b)(1)(A) ("A disclosure made 1 year or less

11   before the effective filing date of a claimed invention shall not be prior art to the claimed invention

12   under subsection (a)(1) if . . . (A) the disclosure was made by the inventor or a joint inventor or by

13   another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint

14   inventor . . . ."). Cellulose identifies evidence that supports its argument that it conceived of the

15   subject of the '007 patent before Thermal Shipping contributed to that conception.[11] But the issue is

16   whether Cellulose has identified an antecedent disclosure to Thermal Shipping to show derivation

17   under § 102(b)(1)(A). The court's earlier summary-judgment order recounts the timeline: by June

18   2015, Thermal Supply was working with its supplier Tim Wilson on the concept of an all-PET

19   product with a PET batt and PET film adhered to both sides."[12] Cellulose's June 24, 2015, email did

20   not show a batt with film attached to both sides or an all-PET product with film adhered to both

21   sides, foldable without the need for creases, grooves, or cutlines.[13] Cellulose did not put forth

22   evidence that it originated the ideas that Thermal Shipping ultimately disclosed.

23

24   [9] Opp'n – ECF No. 244-3 at 10–22.

25   [10] *Id.* at 10.

26   [11] Reply – ECF No. 247 at 7 (Thermal concedes that drawing inferences in Cellulose's favor, Cellulose "has pointed to evidence that, at most (and with all inferences in its favor), shows it conceived of the subject matter in the '007 patent before [Thermal Shipping] contributed to that conception.")

27   [12] Order – ECF No. 278 at 7–8 (summarizing evidence).

28   [13] *Id.* at 7 (summarizing evidence).

United States District Court
Northern District of California

Cellulose also contends that Thermal Shipping's claim of joint inventorship renders Thermal Shipping's motion disingenuous because the disclosure in the April 2016 offer was either directly by alleged joint inventor Sal Cardinale or indirectly by Thermal Shipping, which obtained it from Cellulose (the employer of the named inventors of the '007 patent) and/or from Mr. Cardinale.[14] But Thermal Shipping's inventorship claim depends on whether Cellulose's Chris Benner (an inventor) independently conceived of the idea of all-PET product with a PET batt and PET film adhered to both sides before Thermal Shipping communicated that idea to him."[15] That is a different question than whether Thermal Shipping derived a concept from Cellulose. Thermal Shipping could have derived its idea without derivation regardless of whether Mr. Cardinale is a joint inventor.[16]

**2. Subject of April 2016 Purchase Order**

Cellulose contends that the subject of the April 2016 Juicero purchase order to Turner is in dispute because Thermal Supply "may have offered Juicero product based on samples obtained from [Cellulose] (the only party making the product at the time and who had previously provided numerous samples to [Thermal Supply]) or on the basis of the product literature which Sal Cardinale testified was in existence prior to May of 2016 and which shows the [Cellulose] created product."[17] This is speculation unsupported by evidence.

**3. Public Disclosure**

Cellulose contends that it publicly disclosed the subject matter of its invention.[18] But it made one private sale (the February 2016 sale discussed above that is not a public disclosure on *Sanho*) and provided two samples: one to Thermal at Thermal's request and one to Thermal's customer

---

[14] Opp'n – ECF No. 244-3 at 16.

[15] Order – ECF No. 278 at 7–8 (summarizing evidence).

[16] Reply – ECF No. 247 at 10 (making this argument).

[17] Opp'n – ECF No. 244-3 at 17.

[18] *Id.* at 18–20.

United States District Court
Northern District of California

United States District Court
Northern District of California

Munchery, again at Thermal's request. The two samples are not public disclosures. Communications with Thermal are not public disclosures.[19]

Cellulose nonetheless cites *Minerva Surgical, Inc. v. Hologic, Inc.*, for the proposition that distribution of samples is public disclosure.[20] 59 F.4th 1371, 1373, 1376–78 (Fed. Cir. 2023). *Minerva* is distinguishable because it involved patents invalidated under the public-use bar of pre-AIA section 102, which did not include the exceptions of the current section 102(b). *Id.* at 1373 ("the district court granted summary judgment that the asserted claims are anticipated under the public use bar of pre-AIA 35 U.S.C. § 102(b)"). *Sanho* rejected this approach. 108 F.4th at 1384 (discussing public-use bar and stating, "Our cases also do not remotely suggest that the reasons for an expansive view of what constitutes commercial 'public use' would apply with equal force to the exception from prior art for subject matter "publicly disclosed' in section 102(b)(2(B). Indeed, our cases suggest the opposite.") *Minerva* also involved showcasing a medical device at an industry conference open to the public, activity markedly different than sending two samples. *Id.* at 1376–78.[21]

Cellulose also points to the absence of confidential agreements accompanying these disclosures.[22] This does not change the outcome. *Sanho*, 108 F.4th at 1385 (no public disclosure; noted that "there was no confidentiality or nondisclosure agreement").

Cellulose asserts that *Sanho* "creates new issues that warrant reopening discovery for limited purposes or, at the very least, counsel in favor of developing testimony at trial that may bear on these issues. Issues implicated by the *Sanho* decision include, for example, the full extent of [Thermal Supply's] own 'public disclosure,' within the context of Section 102 now created by *Sanho*, of the [Cellulose]-created . . . product to potential customers and others before, or in connection with, the alleged Juicero 'offer.'"[23] But Thermal Supply's invalidity contentions alleged that the '007 patent

---

[19] *See id.* (summarizing the communications and samples).

[20] *Id.* at 20.

[21] *See* Reply – ECF No. 247 at 14–15 (making this argument more fully).

[22] Opp'n – ECF No. 244-3 at 19–20.

[23] *Id.* at 21–22 (emphasis omitted).

ORDER – No. 22-cv-03141-LB          8

1   was invalid for the on-sale bar based on sales that Thermal made in 2016.[24] Cellulose's summary

2   assertion that discovery will illuminate the issue is not supported by any examples. *Sanho* is an

3   intervening decision on a legal issue that does not discernably affect discovery given that

4   inventorship and the on-sale bar have always been part of this lawsuit.

5       Thermal Supply concludes that Cellulose's activities were not publicized and do not show that

6   Cellulose made its product generally available to the public.[25] It bolsters this conclusion with

7   archived snapshots of Cellulose's website from late 2015 through August 2016 that show no

8   marketing of an all-PET product like the one here and instead showed marketing only of an insulation

9   product made from paper.[26] Without evidence of public disclosure, the exception does not apply.

10

11  **4.  Prior Art**

12      Cellulose contends that there are disputes of fact about whether the April 2016 Juicero purchase

13  order for Renewliner is a prior offer for sale of the product in the '007 patent.[27] There are not. As

14  discussed above, the court held previously that that 2016 Renewliner was anticipating art.[28] In its

15  original motion, Thermal Supply presented undisputed evidence from its expert and others that

16

17

18

---

19  [24] Reply – ECF No. 247 at 17 (making this argument); Invalidity Contentions – ECF No. 63-4 at 5 (p. 4).

20  [25] Mot. – ECF No. 238 at 15: Reply – ECF No. 247 at 15.

21  [26] Mot. – ECF No. 238 at 15 & Screenshots, Exs. 2–4 to Mays Decl. – ECF Nos. 238-3–238-5.
    Cellulose asked the court to disregard these because they are authenticated only by a lawyer, who
22  cannot be a witness at trial, and in any event were given to Cellulose on September 27, 2024, after the
    close of fact and expert discovery (January 5 and August 9, respectively), without justification. Opp'n
23  – ECF No. 244-3 at 21. At summary-judgment, courts "do not focus on the admissibility of the
    evidence's form . . . [but] instead focus on the admissibility of its contents." *Fraser v. Goodale*,
24  342 F.3d 1032, 1036 (9th Cir. 2003). The court cannot discern prejudice from screenshots of a
    party's admissions that were in its possession. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x
25  705, 713 (9th Cir. 2010) ("Among the factors that may properly guide a district court in
    determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice
26  or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure
    the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved
27  in not timely disclosing the evidence.").

    [27] Opp'n – ECF No. 244-3 at 20–21.

28  [28] Order – ECF No. 160 at 7.

ORDER – No. 22-cv-03141-LB          9

United States District Court
Northern District of California

1    2016 Renewliner is materially identical to the current version of Renewliner that Cellulose accuses

2    of infringement.[29]

**CONCLUSION**

4    In sum, the court reconsiders its earlier orders and grants summary judgment to Thermal

5    Shipping as to patent invalidity. This resolves ECF Nos. 141 and 238.

6    **IT IS SO ORDERED.**

7    Dated: December 14, 2024

8    LAUREL BEELER
     United States Magistrate Judge

[29] Mot. – ECF No. 238 at 11–12 (summarizing the evidence that was the basis for the court's earlier order).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CELLULOSE MATERIAL SOLUTIONS, LLC, | Case No. 22-cv-03141-LB |
| Plaintiff, | |
| v. | **AMENDED ORDER GRANTING MOTION FOR RECONSIDERATION AND GRANTING SUMMARY JUDGMENT AS TO INVALIDITY** |
| SC MARKETING GROUP, INC., | |
| Defendant. | Re: ECF Nos. 141, 238 |

## INTRODUCTION

Plaintiff Cellulose Material Solutions claims that defendant SC Marketing Group (also known as Thermal Shipping Solutions) infringes a patent for packaging insulation that keeps the package contents — for example, meal kits with food items — cool and fresh without the need for refrigerant packs. The patent is U.S. Patent No. 11,078,007 (the '007 patent). The parties are competitors.[1] Cellulose's insulation product is called InfinityCore, and Thermal Shipping's product is called Renewliner.[2] Thermal Shipping previously moved for summary judgment of invalidity on two grounds: (1) an offer by Cellulose to Thermal Shipping to sell a prototype of the

---

[1] Compl. – ECF No. 1 at 1–2 (¶ 1), 4 (¶ 16), 6 (¶ 30); U.S. Patent No. 11,078,007 (filed June 27, 2016) – ECF No. 1-1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Compl. – ECF No. 1 at 2 (¶ 2), 3 (¶ 14). The complaint capitalizes the product names.

AMENDED ORDER – No. 22-cv-03141-LB

invention, before the patent's filing date, triggered the on-sale bar of 35 U.S.C. § 102; and (2) the Renewliner is anticipating prior art under § 102 because it was on sale before the patent's filing date.[3] In two orders, the court denied the motion.[4] Thermal Shipping moved for reconsideration in part (on the second ground), following the Federal Circuit's decision in *Sanho Corp. v. Kaijet Tech. Int'l Ltd.*, 108 F.4th 1376 (Fed. Cir. 2024). The court grants the motion: the Renewliner was on sale before the patent's filing date and that sale was not preceded by a public disclosure of the invention by Cellulose.

## LEGAL STANDARD

This district's local rules provide that a motion for reconsideration must be based on one of the following: (1) "a material difference in fact or law" relative to that "which was presented to the Court before entry" of the subject order, (2) "[t]he emergence of new material facts or a change of law," or (3) "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court." N.D. Cal. Civ. L.R. 7-9(b). A district court can also "reconsider" non-final judgments pursuant to Federal Rule of Civil Procedure 54(b) and the court's "inherent power rooted firmly in the common law" to "rescind an interlocutory order over which it has jurisdiction." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001). Reconsideration is appropriate when (1) the court is presented with newly discovered evidence, (2) the underlying decision was in clear error or manifestly unjust, or (3) there is an intervening change in controlling law. *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "There may also be other, highly unusual, circumstances warranting reconsideration." *Id.*

## ANALYSIS

The issue is whether the Federal Circuit's *Sanho* decision, which was issued after the summary-judgment order, changed the law such that the outcome of the summary-judgment order should be different. The *Sanho* court interpreted the America Invents Act (AIA) and specifically 35 U.S.C.

---

[3] Mot. – ECF No. 141.

[4] Orders – ECF Nos. 160, 183.

§ 102(a)–(b), which are provisions that govern what constitutes prior art against a patent by reference to the patent's filing date.

Under 35 U.S.C. § 102(a)(1), a patent is invalid if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." But such a disclosure does not result in invalidity if it was made one year or less before the effective filing date and it "was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." *Id.* § 102(b)(1)(A). Also, a disclosure made one year or less before the patent filing date is not prior art if "the subject matter disclosed had, before such disclosure, been publicly disclosed by the inventor or a joint inventor or another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor." 35 U.S.C. § 102(b)(1)(B).

The requirements for the on-sale bar are "that the claimed invention (1) was the subject of a commercial offer for sale[] and (2) was ready for patenting." *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1372 (Fed. Cir. 2016) (citing *Pfaff v. Wells Electronics, Inc.,* 525 U.S. 55, 67–68 (1988)). An offer for sale "does not have to be accepted to implicate the on sale bar." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1328 (Fed. Cir. 2001). But it must be "sufficiently definite." *Id.* "[T]he acceptance of [a] purchase order prior to [the critical date] makes it clear that such an offer had been made, and there is no question that the sale was commercial rather than experimental in character." *Pfaff,* 525 U.S. at 67. "The fact that delivery was set for dates after the critical date is irrelevant to the finding of a commercial offer to sell." *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 590 (Fed. Cir. 2000).[5]

Here, the parties and some third parties engaged in commercial activity related to the claimed invention in the months leading up the patent's filing date (June 27, 2016). Relevantly here, this activity took the form of two purchase orders, one in February 2016 (for Cellulose to ship product labeled "Renewliner" directly to Thermal Shipping's end customer DinnerThyme) and one in April

---

[5] *See* Order – ECF No. 160 at 5 (discussing requirements for the on-sale bar); Mot. – ECF No. 238 (same).

1    2016 (a sale of the Renewliner that was fulfilled for Thermal Shipping by its vendor Turner Fiberfill

2    rather than Cellulose, for Thermal Shipping's end customer Juicero).

3    The February 2016 purchase order does not trigger the on-sale bar because "a private or public

4    sale by the inventor during the one-year grace period is not prior art." *Sanho*, 108 F.4th at 1380. The

5    issue then is the April 2016 purchase order, which did not involve Cellulose. The court previously

6    held that the February 2016 purchase order was a public disclosure by Cellulose such that the April

7    2016 purchase order did not disclose prior art (under § 102(b)(1)(B)). The court reasoned that "§

8    102(a) itself equates an invention's being on sale with a 'public' disclosure."[6]

9    *Sanho* changes the picture. The court held that a "private sale" by the patentee, before the patent's

10   filing date, is not the same as a public disclosure of the invention. *Id.* at 1385. "Section 102(b)

11   appears to have as its purpose protection of an inventor who discloses his invention to the public

12   before filing a patent application because the inventor has made his invention available to the public

13   — a major objective of providing patent protection in the first place." *Id.* at 1382. But "publicly

14   disclosed by the inventor" as that phrase is used in § 102(b) "must mean . . . that the invention was

15   made available to the public," which a private sale does not accomplish by itself. *Id.* at 1381–85.

16   *Sanho* analyzed § 102(b)(2)(B), which concerns "patent applications filed by another," rather

17   than § 102(b)(1)(B) (at issue here), which "refers to activities by the inventor or a third party." *Id.* at

18   1380–81. But the reasoning of *Sanho* applies here: both provisions require that the claimed

19   invention be "publicly disclosed by the inventor" before the third party's disclosure for the third

20   party's disclosure to not invalidate the patent. 35 U.S.C. § 102(b)(1)(B), (b)(2)(B). It follows that in

21   both scenarios, a purely private sale by the inventor is not a public disclosure by the inventor. Thus,

22   based only the only evidence at issue in the earlier-filed motion, the April 2016 purchase order,

23   which reflects a sale offer by Thermal Shipping and which preceded the '007 patent's filing date,

24   discloses prior art. 35 U.S.C. § 102(a)(1).

25   Cellulose's original opposition brief, which contained its core arguments in support of a

26   different result, does not overcome *Sanho*. Regarding the April 2016 purchase order, Cellulose

27

28   _____
     [6] Order – ECF No. 183 at 2–3.

AMENDED ORDER – No. 22-cv-03141-LB          4

United States District Court
Northern District of California

contended first that Turner Fiberfill didn't manufacture or ship any Renewliner product until after the July 2016 patent-filing date.[7] But a commercial offer for sale is sufficient to satisfy the on-sale bar of § 102(a)(1). *Medicines*, 827 F.3d at 1372.

Cellulose also argued that the February 2016 purchase order was a public disclosure by Cellulose preceding Thermal Shipping's April 2016 purchase order.[8] This is the reasoning the court previously adopted but that is now foreclosed by *Sanho*.

Finally, looking at the burdens that apply here, and as the court previously explained, "[w]hen an alleged infringer attacks the validity of an issued patent," the law "places the burden of persuasion on the attacker to prove invalidity by clear and convincing evidence." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ("[T]he risk of decisional uncertainty stays on the proponent of the proposition."). "A quite different burden is that of going forward with evidence," which is "a shifting burden" that "mean[s] both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Id.* Thermal Shipping, "having the ultimate burden of proving its defense of invalidity based on anticipating prior art, . . . has the burden of going forward with evidence that there is such anticipating prior art." *Id.* Cellulose then "has the burden of going forward with evidence" in rebuttal, such as evidence "that the prior art does not actually anticipate." *Id.*

Again as the court explained before, Thermal Shipping met its initial burden with respect to the purchase orders, because Cellulose alleges that the Renewliner satisfies all asserted claims of the '007 patent. *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-cv-6635-LHK, 2013 WL 6673676, at *4 (N.D. Cal. Dec. 18, 2013), citing *Peters v. Active Mfg.*, 129 U.S. 530, 537 (1889) ("[T]hat which infringes, if later, would anticipate, if earlier.") (cleaned up). Cellulose's two arguments above do not meet its burden of going forward with evidence in rebuttal.

In sum, based on the record put forth in the earlier motion, the only sales at issue were the February 2016 purchase order and the April 2016 purchase order. The February 2016 purchase

---

[7] Opp'n – ECF No. 149 at 16–17.

[8] *Id.* at 17–18.

order is a purely private sale. The April 2016 sales offer by Thermal Shipping preceded the '007

filing date and discloses prior art. 35 U.S.C. § 102(a)(1).

Cellulose raises four additional arguments: (1) the April 2016 sale was of subject matter that

Thermal Shipping obtained at least indirectly from Cellulose; (2) the April 2016 sale may have

offered products based on Cellulose samples; (3) Cellulose made public disclosures before the April

2016 sale; and (4) the facts are disputed that the April 2016 sale is prior art.[9]

**1.   Subject Matter Obtained from Cellulose**

Cellulose has the burden of showing that the April 2016 sale involved "subject matter obtained,

at least indirectly, from" Cellulose.[10] 35 U.S.C. § 102(b)(1)(A) ("A disclosure made 1 year or less

before the effective filing date of a claimed invention shall not be prior art to the claimed invention

under subsection (a)(1) if . . . (A) the disclosure was made by the inventor or a joint inventor or by

another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint

inventor . . . ."). Cellulose identifies evidence that supports its argument that it conceived of the

subject of the '007 patent before Thermal Shipping contributed to that conception.[11] But the issue is

whether Cellulose has identified an antecedent disclosure to Thermal Shipping under §

102(b)(1)(A). The court's earlier summary-judgment order recounts the timeline: by June 2015,

Thermal Shipping was working with its supplier Tim Wilson on the concept of an all-PET product

with a PET batt and PET film adhered to both sides."[12] Cellulose's June 24, 2015, email did not

show a batt with film attached to both sides or an all-PET product with film adhered to both sides,

foldable without the need for creases, grooves, or cutlines.[13] Cellulose did not put forth evidence

---

[9] Opp'n – ECF No. 244-3 at 10–22.

[10] *Id.* at 10.

[11] Reply – ECF No. 247 at 7 (Thermal concedes that drawing inferences in Cellulose's favor, Cellulose "has pointed to evidence that, at most (and with all inferences in its favor), shows it conceived of the subject matter in the '007 patent before [Thermal Shipping] contributed to that conception.")

[12] Order – ECF No. 278 at 7–8 (summarizing evidence).

[13] *Id.* at 7 (summarizing evidence).

AMENDED ORDER – No. 22-cv-03141-LB            6

United States District Court
Northern District of California

that it provided that concept or other aspects of the claimed invention that Thermal Shipping ultimately disclosed.

Cellulose also contends that Thermal Shipping's claim of joint inventorship renders Thermal Shipping's motion disingenuous because the disclosure in the April 2016 offer was either directly by alleged joint inventor Sal Cardinale or indirectly by Thermal Shipping, which obtained it from Cellulose (the employer of the named inventors of the '007 patent) and/or from Mr. Cardinale.[14] But Thermal Shipping's inventorship claim depends on whether Cellulose's Chris Benner (an inventor) independently conceived of the idea of all-PET product with a PET batt and PET film adhered to both sides before Thermal Shipping communicated that idea to him."[15] That is a different question than whether Thermal Shipping derived a concept from Cellulose. Thermal Shipping could have derived its idea without derivation regardless of whether Mr. Cardinale is a joint inventor.[16]

**2.  Subject of April 2016 Purchase Order**

Cellulose contends that the subject of the April 2016 Juicero purchase order to Turner is in dispute because Thermal Shipping "may have offered Juicero product based on samples obtained from [Cellulose] (the only party making the product at the time and who had previously provided numerous samples to [Thermal Shipping]) or on the basis of the product literature which Sal Cardinale testified was in existence prior to May of 2016 and which shows the [Cellulose] created product."[17] This is speculation unsupported by evidence.

**3.  Public Disclosure**

Cellulose contends that it publicly disclosed the subject matter of its invention.[18] But it made one private sale (the February 2016 sale discussed above that is not a public disclosure on *Sanho*) and

---

[14] Opp'n – ECF No. 244-3 at 16.

[15] Order – ECF No. 278 at 7–8 (summarizing evidence).

[16] Reply – ECF No. 247 at 10 (making this argument).

[17] Opp'n – ECF No. 244-3 at 17.

[18] *Id.* at 18–20.

United States District Court
Northern District of California

1  provided two samples: one to Thermal at Thermal's request and one to Thermal's customer

2  Munchery, again at Thermal's request. The two samples are not public disclosures. Communications

3  with Thermal are not public disclosures.[19]

4      Cellulose nonetheless cites *Minerva Surgical, Inc. v. Hologic, Inc.*, for the proposition that

5  distribution of samples is public disclosure.[20] 59 F.4th 1371, 1373, 1376–78 (Fed. Cir. 2023).

6  *Minerva* is distinguishable because it involved patents invalidated under the public-use bar of pre-

7  AIA section 102, which did not include the exceptions of the current section 102(b). *Id.* at 1373

8  ("the district court granted summary judgment that the asserted claims are anticipated under the

9  public use bar of pre-AIA 35 U.S.C. § 102(b)"). *Sanho* rejected this approach. 108 F.4th at 1384

10 (discussing public-use bar and stating, "Our cases also do not remotely suggest that the reasons for

11 an expansive view of what constitutes commercial 'public use' would apply with equal force to the

12 exception from prior art for subject matter "publicly disclosed' in section 102(b)(2(B). Indeed, our

13 cases suggest the opposite.") *Minerva* also involved showcasing a medical device at an industry

14 conference open to the public, activity markedly different than sending two samples. *Id.* at 1376–

15 78.[21]

16     Cellulose also points to the absence of confidential agreements accompanying these

17 disclosures.[22] This does not change the outcome. *Sanho*, 108 F.4th at 1385 (no public disclosure;

18 noted that "there was no confidentiality or nondisclosure agreement").

19     Cellulose asserts that *Sanho* "creates new issues that warrant reopening discovery for limited

20 purposes or, at the very least, counsel in favor of developing testimony at trial that may bear on these

21 issues. Issues implicated by the *Sanho* decision include, for example, the full extent of [Thermal

22 Shipping's] own 'public disclosure,' within the context of Section 102 now created by *Sanho*, of the

23 [Cellulose]-created . . . product to potential customers and others before, or in connection with, the

24

25

---

26 [19] *See id.* (summarizing the communications and samples).

  [20] *Id.* at 20.

27 [21] *See* Reply – ECF No. 247 at 14–15 (making this argument more fully).

28 [22] Opp'n – ECF No. 244-3 at 19–20.

AMENDED ORDER – No. 22-cv-03141-LB          8

United States District Court
Northern District of California

alleged Juicero 'offer.'"[23] But Thermal Shipping's invalidity contentions alleged that the '007 patent

was invalid for the on-sale bar based on sales that Thermal made in 2016.[24] Cellulose's summary

assertion that discovery will illuminate the issue is not supported by any examples. *Sanho* is an

intervening decision on a legal issue that does not discernably affect discovery given that

inventorship and the on-sale bar have always been part of this lawsuit.

Thermal Shipping concludes that Cellulose's activities were not publicized and do not show that

Cellulose made its product generally available to the public.[25] It bolsters this conclusion with

archived snapshots of Cellulose's website from late 2015 through August 2016 that show no

marketing of an all-PET product like the one here and instead showed marketing only of an

insulation product made from paper.[26] Without evidence of public disclosure, the exception does

not apply.

**4. Prior Art**

Cellulose contends that there are disputes of fact about whether the April 2016 Juicero purchase

order for Renewliner is a prior offer for sale of the product in the '007 patent.[27] There are not. As

discussed above, the court held previously that that 2016 Renewliner was anticipating art.[28] In its

---

[23] *Id.* at 21–22 (emphasis omitted).

[24] Reply – ECF No. 247 at 17 (making this argument); Invalidity Contentions – ECF No. 63-4 at 5 (p. 4).

[25] Mot. – ECF No. 238 at 15: Reply – ECF No. 247 at 15.

[26] Mot. – ECF No. 238 at 15 & Screenshots, Exs. 2–4 to Mays Decl. – ECF Nos. 238-3–238-5. Cellulose asked the court to disregard these because they are authenticated only by a lawyer, who cannot be a witness at trial, and in any event were given to Cellulose on September 27, 2024, after the close of fact and expert discovery (January 5 and August 9, respectively), without justification. Opp'n – ECF No. 244-3 at 21. At summary-judgment, courts "do not focus on the admissibility of the evidence's form . . . [but] instead focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). The court cannot discern prejudice from screenshots of a party's admissions that were in its possession. *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) ("Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence.").

[27] Opp'n – ECF No. 244-3 at 20–21.

[28] Order – ECF No. 160 at 7.

AMENDED ORDER – No. 22-cv-03141-LB          9

original motion, Thermal Shipping presented undisputed evidence from its expert and others that 2016 Renewliner is materially identical to the current version of Renewliner that Cellulose accuses of infringement.[29]

## CONCLUSION

In sum, the court reconsiders its earlier orders and grants summary judgment to Thermal Shipping: the asserted claims are invalid as a matter of law.

**IT IS SO ORDERED.**

Dated: December 14, 2024

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

[29] Mot. – ECF No. 238 at 11–12 (summarizing the evidence that was the basis for the court's earlier order).

AMENDED ORDER – No. 22-cv-03141-LB            10



US011078007B2

(12) **United States Patent**    (10) **Patent No.:**   **US 11,078,007 B2**

Chase et al.    (45) **Date of Patent:**   *Aug. 3, 2021

(54) **THERMOPLASTIC PACKAGING INSULATION PRODUCTS AND METHODS OF MAKING AND USING SAME**

(71) Applicant: **Cellulose Material Solutions, LLC**, Jenison, MI (US)

(72) Inventors: **Kevin Chase**, Hudsonville, MI (US); **Brandon Fenske**, Grand Rapids, MI (US); **Christopher Benner**, Ada, MI (US); **Matthew Henderson**, Jenison, MI (US)

(73) Assignee: **Cellulose Material Solutions, LLC**, Jenison, MI (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 706 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **15/194,364**

(22) Filed: **Jun. 27, 2016**

(65) **Prior Publication Data**

US 2017/0369226 A1   Dec. 28, 2017

(51) **Int. Cl.**
*B65D 81/38*    (2006.01)

(52) **U.S. Cl.**
CPC ................................ *B65D 81/3848* (2013.01)

(58) **Field of Classification Search**
CPC .. B65D 81/3848; B65D 81/386; B32B 27/06; E04B 1/767; E04B 1/78; E04D 13/16; E04D 13/1625
USPC ...................................................... 220/592.2
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,222,243 A | 12/1965 | Gaston et al. | |
| 3,461,026 A | 8/1969 | Schick | |
| 3,952,073 A | 4/1976 | Isaka et al. | |
| 3,964,235 A | 6/1976 | Miller et al. | |
| 3,987,752 A | 10/1976 | Miller | |
| 4,035,216 A | 7/1977 | Immel | |
| 4,040,847 A | 8/1977 | Miller | |
| 4,045,515 A | 8/1977 | Isaka et al. | |
| 4,083,490 A | 4/1978 | Cunningham et al. | |
| 4,094,130 A | 6/1978 | Kelly et al. | |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | 0210524 | 2/2002 |
| WO | 2011143664 | 11/2011 |

OTHER PUBLICATIONS

Thermopod, Pie and Cake Shipper, www.thermopodllc.com/piecakeshipper.html.

(Continued)

*Primary Examiner* — King M Chu

(74) *Attorney, Agent, or Firm* — Mitchell Intellectual Property Law, PLLC

(57) **ABSTRACT**

Packaging insulation for insertion into a packaging container, which includes an air laid thermoplastic fibrous batt having foldable thermoplastic film material adhered to both sides of the batt. Preferably the thermoplastic material of which the fibers and film are made is the same, and most preferably it is PET. The resulting method and product provides packaging insulation which can be shipped flat and compressed, which expands when unpacked and which can be readily folded to match the interior configuration of a shipping container, such as a cardboard box.

**24 Claims, 3 Drawing Sheets**



(56)         **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,099,363 A | 7/1978 | Wistinghausen et al. |
| 4,111,828 A | 9/1978 | Wang |
| 4,172,749 A | 10/1979 | Liggett |
| 4,210,530 A | 7/1980 | Etzel et al. |
| 4,235,060 A | 11/1980 | Wang et al. |
| 4,337,666 A | 7/1982 | Bhattacharyya et al. |
| 4,341,003 A | 7/1982 | Kopena |
| 4,387,021 A | 6/1983 | Davis et al. |
| 4,427,153 A | 1/1984 | Schaefer |
| 4,452,848 A | 6/1984 | Geiger |
| 4,456,208 A | 6/1984 | MacConochie et al. |
| 4,501,107 A | 2/1985 | Piotrowski |
| 4,550,550 A | 11/1985 | Scott |
| 4,622,346 A | 11/1986 | DiGiulio |
| 4,626,554 A | 12/1986 | DiGiulio |
| 4,652,609 A | 3/1987 | DiGiulio |
| 4,653,397 A | 3/1987 | Gray et al. |
| 4,654,375 A | 3/1987 | Malwitz |
| 4,659,600 A | 4/1987 | DiGiulio |
| 4,659,745 A | 4/1987 | DiGiulio |
| 4,661,386 A | 4/1987 | DiGiulio |
| 4,661,564 A | 4/1987 | DiGiulio |
| 4,665,103 A | 5/1987 | DiGiulio |
| 4,670,513 A | 6/1987 | DiGiulio |
| 4,675,363 A | 6/1987 | DiGiulio |
| 4,679,122 A | 7/1987 | Belke, Jr. et al. |
| 4,686,240 A | 8/1987 | Bailey, Jr. et al. |
| 4,701,474 A | 10/1987 | Bailey, Jr. et al. |
| 4,757,108 A | 7/1988 | Walisser |
| 4,762,229 A | 8/1988 | Wickre |
| 4,794,358 A | 12/1988 | Steingroever et al. |
| 4,797,010 A | 1/1989 | Coelho |
| 4,890,165 A | 12/1989 | Miyagawa et al. |
| 4,896,476 A | 1/1990 | Harris |
| 4,952,441 A | 8/1990 | Bose et al. |
| 5,001,017 A | 3/1991 | Alhamad et al. |
| 5,004,159 A | 4/1991 | Kistner |
| 5,005,765 A | 4/1991 | Kistner |
| 5,051,452 A | 9/1991 | Romesberg |
| 5,060,370 A | 10/1991 | Scales, Jr. et al. |
| 5,094,775 A | 3/1992 | Bailey, Jr. |
| 5,095,054 A | 3/1992 | Lay et al. |
| 5,095,597 A | 3/1992 | Alhamad et al. |
| 5,097,907 A | 3/1992 | Alhamad et al. |
| 5,112,462 A | 5/1992 | Swisher |
| 5,113,892 A | 5/1992 | Hull et al. |
| 5,118,555 A | 6/1992 | Horovi |
| 5,133,834 A | 7/1992 | Capps |
| 5,137,791 A | 8/1992 | Swisher |
| 5,142,755 A | 9/1992 | Alhamad et al. |
| 5,206,082 A | 4/1993 | Malone |
| 5,207,756 A | 5/1993 | Alhamad et al. |
| 5,226,269 A | 7/1993 | Stoltenberg |
| 5,226,557 A | 7/1993 | Nelson |
| 5,242,115 A | 9/1993 | Brown |
| 5,288,764 A | 2/1994 | Rotter et al. |
| 5,297,416 A | 3/1994 | Alhamad et al. |
| 5,308,560 A | 5/1994 | Bibby et al. |
| 5,322,181 A | 6/1994 | Nelson |
| 5,340,846 A | 8/1994 | Rotter et al. |
| 5,350,063 A | 9/1994 | Berdan, II |
| 5,360,848 A | 11/1994 | Kuechler et al. |
| 5,364,707 A | 11/1994 | Swisher |
| 5,366,594 A | 11/1994 | Capps |
| 5,373,028 A | 12/1994 | McAfee et al. |
| 5,374,914 A | 12/1994 | Prueitt |
| 5,402,852 A | 4/1995 | Alhamad et al. |
| 5,414,200 A | 5/1995 | Mouk et al. |
| 5,418,031 A * | 5/1995 | English ........... B32B 27/12 |
| | | 428/74 |
| 5,429,308 A | 7/1995 | Brown |
| 5,431,992 A | 7/1995 | Houpt et al. |
| 5,446,111 A | 8/1995 | Rotter et al. |
| 5,466,504 A | 11/1995 | Gavin et al. |
| 5,470,890 A | 11/1995 | House et al. |
| 5,480,730 A | 1/1996 | Swisher |
| 5,497,627 A | 3/1996 | Heyduk et al. |
| 5,510,419 A | 4/1996 | Burgoyne et al. |
| 5,512,346 A | 4/1996 | Johnson |
| 5,516,580 A | 5/1996 | Frenette et al. |
| 5,525,278 A | 6/1996 | Krosch et al. |
| 5,536,550 A | 7/1996 | Houpt et al. |
| 5,536,793 A | 7/1996 | Rotter et al. |
| 5,554,238 A | 9/1996 | English |
| 5,556,926 A | 9/1996 | Rotter et al. |
| 5,559,278 A | 9/1996 | Mouk et al. |
| 5,575,339 A | 11/1996 | Alhamad |
| 5,582,905 A | 12/1996 | Beck et al. |
| 5,602,295 A | 2/1997 | Abel et al. |
| 5,616,821 A | 4/1997 | Mouk et al. |
| 5,618,327 A | 4/1997 | Aschenbeck et al. |
| 5,620,497 A | 4/1997 | Aschenbeck et al. |
| 5,620,664 A | 4/1997 | Palmer |
| 5,629,089 A | 5/1997 | Berdan, II et al. |
| 5,642,601 A | 7/1997 | Thompson, Jr. et al. |
| 5,646,908 A | 7/1997 | Aschenbeck et al. |
| 5,647,883 A | 7/1997 | Houpt et al. |
| 5,672,414 A | 9/1997 | Okamoto et al. |
| 5,672,429 A | 9/1997 | Berdan, II et al. |
| 5,678,231 A | 10/1997 | Mouk et al. |
| 5,698,750 A | 12/1997 | Mouk et al. |
| 5,723,216 A | 3/1998 | Houpt et al. |
| 5,733,478 A | 3/1998 | Creech et al. |
| 5,738,175 A | 4/1998 | Alhamad |
| 5,743,932 A | 4/1998 | Houpt et al. |
| 5,755,851 A | 5/1998 | Scott et al. |
| 5,770,300 A | 6/1998 | Okamoto et al. |
| 5,770,309 A | 6/1998 | Houpt et al. |
| 5,805,431 A | 9/1998 | Joshi et al. |
| 5,816,332 A | 10/1998 | Alhamad |
| 5,821,605 A | 10/1998 | Hong et al. |
| 5,832,696 A | 11/1998 | Nagy et al. |
| 5,843,764 A | 12/1998 | Woodward |
| 5,849,131 A | 12/1998 | Shaffer et al. |
| 5,883,330 A | 3/1999 | Yoshida |
| 5,894,127 A | 4/1999 | Dando et al. |
| 5,916,393 A | 6/1999 | Shaffer et al. |
| 5,930,117 A | 7/1999 | Gengel |
| 5,998,877 A | 12/1999 | Ohuchi |
| 6,026,646 A * | 2/2000 | Hansen .................. B60N 3/104 |
| | | 220/6 |
| 6,033,769 A | 3/2000 | Brueggemann et al. |
| 6,060,175 A | 5/2000 | Swisher |
| 6,062,316 A | 5/2000 | Alhamad |
| 6,066,887 A | 5/2000 | Hong et al. |
| 6,089,325 A | 7/2000 | Alhamad |
| 6,117,062 A | 9/2000 | Alhamad |
| 6,136,878 A | 10/2000 | Free et al. |
| 6,187,615 B1 | 2/2001 | Kim et al. |
| 6,189,344 B1 | 2/2001 | Aschenbeck et al. |
| 6,191,057 B1 * | 2/2001 | Patel .................. B32B 27/06 |
| | | 442/398 |
| 6,221,478 B1 | 4/2001 | Kammeyer |
| 6,221,925 B1 | 4/2001 | Constant et al. |
| 6,239,187 B1 | 5/2001 | Hatke et al. |
| 6,321,507 B1 | 11/2001 | Copeland et al. |
| 6,345,776 B1 | 2/2002 | Hurray et al. |
| 6,349,774 B2 | 2/2002 | Alhamad |
| 6,373,294 B1 | 4/2002 | Bentley |
| 6,375,096 B1 | 4/2002 | Rashidi |
| 6,388,404 B1 | 5/2002 | Schnebly et al. |
| 6,393,807 B2 | 5/2002 | Tipton et al. |
| 6,397,566 B1 | 6/2002 | Tipton et al. |
| 6,401,438 B2 | 6/2002 | Tipton et al. |
| 6,407,225 B1 | 6/2002 | Mang et al. |
| 6,471,061 B1 | 10/2002 | Teague et al. |
| 6,476,465 B2 | 11/2002 | Hirose |
| 6,476,481 B2 | 11/2002 | Woodworth et al. |
| 6,483,186 B1 | 11/2002 | Hsieh et al. |
| 6,502,373 B1 | 1/2003 | Tipton et al. |
| 6,521,979 B1 | 2/2003 | You |
| 6,527,203 B2 | 3/2003 | Hurray et al. |
| 6,528,443 B1 | 3/2003 | Healy |
| 6,555,491 B1 | 4/2003 | Healy |

(56)                References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,562,173 | B1 | 5/2003 | Collison |
| 6,566,783 | B2 | 5/2003 | Hatz et al. |
| 6,570,469 | B2 | 5/2003 | Nathanson et al. |
| 6,667,547 | B2 | 12/2003 | Woodworth et al. |
| 6,674,255 | B2 | 1/2004 | Schnebly et al. |
| 6,688,757 | B2 | 2/2004 | Kovach et al. |
| 6,699,563 | B1 | 3/2004 | Athamad |
| 6,710,494 | B2 | 3/2004 | Hatz et al. |
| 6,737,775 | B2 | 5/2004 | Hatz et al. |
| 6,759,446 | B2 | 7/2004 | Lee et al. |
| 6,809,937 | B2 | 10/2004 | Augustin et al. |
| 6,815,380 | B2 | 11/2004 | Snyder |
| 6,821,131 | B2 | 11/2004 | Suzuki et al. |
| 6,840,462 | B2 | 1/2005 | Hurray et al. |
| 6,861,821 | B2 | 3/2005 | Masumoto et al. |
| 6,875,486 | B2 | 4/2005 | Miller |
| 6,875,637 | B2 | 4/2005 | Yoshino et al. |
| 6,894,374 | B2 | 5/2005 | Yoshino et al. |
| 6,900,537 | B2 | 5/2005 | Sridevan |
| 6,931,823 | B2 | 8/2005 | Forte et al. |
| 6,943,433 | B2 | 9/2005 | Kamada |
| 6,986,229 | B2 | 1/2006 | Collison |
| 7,026,365 | B2 | 4/2006 | Lee et al. |
| 7,026,635 | B2 | 4/2006 | Rangwalla et al. |
| 7,046,584 | B2 | 5/2006 | Sorrells et al. |
| 7,060,148 | B2 | 6/2006 | Toas et al. |
| 7,070,831 | B2 | 7/2006 | You |
| 7,077,634 | B2 | 7/2006 | Munch et al. |
| 7,080,545 | B2 | 7/2006 | Dimeo, Jr. et al. |
| 7,094,192 | B2 | 8/2006 | Schoenberger et al. |
| 7,185,423 | B2 | 3/2007 | Augustin et al. |
| 7,201,012 | B2 | 4/2007 | Munch et al. |
| 7,201,214 | B2 | 4/2007 | Munch et al. |
| 7,229,677 | B2 | 6/2007 | Miller |
| 7,243,479 | B2 | 7/2007 | Allwein |
| 7,243,484 | B2 | 7/2007 | Allwein |
| 7,250,205 | B1 | 7/2007 | Suda et al. |
| 7,278,549 | B2 | 10/2007 | Munch et al. |
| 7,281,622 | B2 | 10/2007 | Qi |
| 7,296,460 | B2 | 11/2007 | Dimeo, Jr. et al. |
| 7,297,384 | B2 | 11/2007 | Crowley |
| 7,334,384 | B2 | 2/2008 | Nissen |
| 7,344,363 | B2 | 3/2008 | Munch et al. |
| 7,348,580 | B2 | 3/2008 | Rangwalla et al. |
| 7,365,292 | B2 | 4/2008 | Cole et al. |
| RE40,380 | E | 6/2008 | Forte et al. |
| 7,402,029 | B2 | 7/2008 | Munch et al. |
| 7,409,813 | B2 | 8/2008 | Qi et al. |
| 7,448,494 | B2 | 11/2008 | LaSalle |
| 7,449,232 | B2 | 11/2008 | Rangwalla |
| 7,453,153 | B2 | 11/2008 | Saita et al. |
| 7,458,235 | B2 | 12/2008 | Beaufils et al. |
| 7,461,496 | B2 | 12/2008 | Hasselbach et al. |
| 7,472,551 | B2 | 1/2009 | May |
| 7,475,588 | B2 | 1/2009 | Dimeo, Jr. et al. |
| 7,509,788 | B2 | 3/2009 | Hasselbach et al. |
| 7,525,238 | B2 | 4/2009 | Kubler et al. |
| 7,531,703 | B2 | 5/2009 | Ramesh et al. |
| 7,541,562 | B2 | 6/2009 | Cole et al. |
| 7,579,628 | B2 | 8/2009 | Inoguchi |
| 7,627,828 | B1 | 12/2009 | Collison et al. |
| 7,658,989 | B2 | 2/2010 | DeSimone et al. |
| 7,674,657 | B2 | 3/2010 | Heng et al. |
| 7,733,107 | B1 | 6/2010 | Earth et al. |
| 7,775,814 | B1 | 8/2010 | Bhutani |
| 7,785,694 | B2 | 8/2010 | Muller et al. |
| 7,807,313 | B2 | 10/2010 | Kaye et al. |
| 7,820,069 | B2 | 10/2010 | Gosselin |
| 7,846,987 | B2 | 12/2010 | Handa |
| 7,859,115 | B2 | 12/2010 | Kim et al. |
| 7,883,056 | B2 | 2/2011 | Mueller et al. |
| 7,892,448 | B2 | 2/2011 | Gosselin |
| 7,906,561 | B2 | 3/2011 | Hu et al. |
| 7,918,062 | B2 | 4/2011 | Chen |
| 7,936,054 | B2 | 5/2011 | Eom et al. |
| 7,977,689 | B2 | 7/2011 | Inoguchi |
| 8,018,043 | B2 | 9/2011 | Suh et al. |
| 8,026,291 | B2 | 9/2011 | Handa et al. |
| 8,026,583 | B2 | 9/2011 | Kim |
| 8,049,332 | B2 | 11/2011 | Oh et al. |
| 8,053,049 | B2 | 11/2011 | Ruid et al. |
| 8,092,689 | B2 | 1/2012 | Gosselin |
| 8,109,130 | B2 | 2/2012 | Dimeo, Jr. et al. |
| 8,125,086 | B2 | 2/2012 | Jung et al. |
| 8,173,219 | B2 | 5/2012 | Tutin et al. |
| 8,173,454 | B2 | 5/2012 | Kim et al. |
| 8,179,669 | B2 | 5/2012 | Huang |
| 8,198,187 | B2 | 6/2012 | Ohno |
| 8,209,929 | B2 | 7/2012 | Collison |
| 8,216,898 | B2 | 7/2012 | Chen et al. |
| 8,226,033 | B2 | 7/2012 | Koefinger et al. |
| 8,247,480 | B2 | 8/2012 | Kaytan |
| 8,298,865 | B2 | 10/2012 | Jung et al. |
| 8,299,591 | B2 | 10/2012 | Oh et al. |
| 8,309,619 | B2 | 11/2012 | Handa et al. |
| 8,341,910 | B2 | 1/2013 | Collison |
| 8,341,911 | B2 | 1/2013 | Collison |
| 8,365,488 | B2 | 2/2013 | Chen |
| 8,384,202 | B2 | 2/2013 | Hoashi et al. |
| 8,424,262 | B2 | 4/2013 | Deblander et al. |
| 8,440,275 | B2 | 5/2013 | Cole et al. |
| 8,440,280 | B2 | 5/2013 | Ronzani |
| 8,531,254 | B2 | 9/2013 | Yamaji et al. |
| 8,587,185 | B2 | 11/2013 | Negley et al. |
| 8,598,244 | B2 | 12/2013 | Handa et al. |
| 8,604,659 | B2 | 12/2013 | Rieker et al. |
| 8,614,154 | B2 | 12/2013 | Andersen |
| 8,618,656 | B2 | 12/2013 | Oh et al. |
| 8,703,835 | B2 | 4/2014 | Handa et al. |
| 8,727,281 | B2 | 5/2014 | Muller et al. |
| 8,749,049 | B2 | 6/2014 | Mo |
| 8,784,945 | B2 | 7/2014 | Rangwalla |
| 8,795,470 | B2 | 8/2014 | Henderson et al. |
| 8,823,158 | B2 | 9/2014 | Oh et al. |
| 8,828,510 | B2 | 9/2014 | Cole et al. |
| 8,847,377 | B2 | 9/2014 | Kim et al. |
| 8,872,319 | B2 | 10/2014 | Kim et al. |
| 8,882,041 | B2 | 11/2014 | Mueller et al. |
| 8,938,925 | B2 | 1/2015 | Collison |
| 8,941,064 | B2 | 1/2015 | Akin et al. |
| 8,987,064 | B2 | 3/2015 | Do et al. |
| 9,056,410 | B2 | 6/2015 | Burke et al. |
| 9,062,179 | B2 | 6/2015 | Kim et al. |
| 9,070,691 | B2 | 6/2015 | Oh et al. |
| 9,079,197 | B2 | 7/2015 | Bina et al. |
| 9,136,215 | B2 | 9/2015 | Lim et al. |
| 9,168,718 | B2 | 10/2015 | Westwood et al. |
| 9,174,363 | B2 | 11/2015 | Paetz-Lauter et al. |
| 9,206,909 | B2 | 12/2015 | Collison et al. |
| 9,211,552 | B2 | 12/2015 | Gantenbein et al. |
| 9,217,253 | B2 | 12/2015 | Collison |
| 9,233,385 | B2 | 1/2016 | Gantenbein et al. |
| 9,273,835 | B2 | 3/2016 | Negley et al. |
| 2001/0005977 | A1 | 7/2001 | Tipton et al. |
| 2001/0005978 | A1 | 7/2001 | Tipton et al. |
| 2001/0031339 | A1 | 10/2001 | Johnson |
| 2001/0045626 | A1 | 11/2001 | Hirose |
| 2001/0054752 | A1 | 12/2001 | Woodworth et al. |
| 2002/0038826 | A1 | 4/2002 | Hurray et al. |
| 2002/0093297 | A1 | 7/2002 | Schnebly et al. |
| 2002/0130200 | A1 | 9/2002 | Hurray et al. |
| 2002/0136887 | A1 | 9/2002 | Penneau et al. |
| 2002/0153791 | A1 | 10/2002 | Hatz et al. |
| 2002/0153793 | A1 | 10/2002 | Hatz et al. |
| 2002/0153798 | A1 | 10/2002 | Hatz et al. |
| 2002/0168509 | A1 | 11/2002 | DeSimone et al. |
| 2003/0001108 | A1 | 1/2003 | Rangwalla et al. |
| 2003/0011051 | A1 | 1/2003 | Woodworth et al. |
| 2003/0017653 | A1 | 1/2003 | Yoshino et al. |
| 2003/0076668 | A1 | 4/2003 | Kovach et al. |
| 2003/0093897 | A1 | 5/2003 | Augustin et al. |
| 2003/0102548 | A1 | 6/2003 | You |
| 2003/0131935 | A1 | 7/2003 | Dyne |
| 2003/0157314 | A1 | 8/2003 | Penneau et al. |

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2003/0168720 A1 | 9/2003 | Kamada |
| 2003/0180582 A1 | 9/2003 | Masumoto et al. |
| 2003/0205832 A1 | 11/2003 | Lee et al. |
| 2004/0016212 A1 | 1/2004 | Miller |
| 2004/0018340 A1 | 1/2004 | Alhamad |
| 2004/0067182 A1 | 4/2004 | Kelly et al. |
| 2004/0070068 A1 | 4/2004 | Yoshino et al. |
| 2004/0074285 A1 | 4/2004 | Dimeo, Jr. et al. |
| 2004/0081727 A1 | 4/2004 | Kelly et al. |
| 2004/0089820 A1 | 5/2004 | Rangwalla et al. |
| 2004/0094980 A1 | 5/2004 | Armbrust et al. |
| 2004/0104449 A1 | 6/2004 | Yoon et al. |
| 2004/0112093 A1 | 6/2004 | Beaufils et al. |
| 2004/0130021 A1 | 7/2004 | Sridevan |
| 2004/0137767 A1 | 7/2004 | Suzuki et al. |
| 2004/0148959 A1 | 8/2004 | Munch et al. |
| 2005/0004243 A1 | 1/2005 | Lee et al. |
| 2005/0007887 A1 | 1/2005 | Sorrells et al. |
| 2005/0022375 A1 | 2/2005 | Augustin et al. |
| 2005/0044815 A1 | 3/2005 | Forte et al. |
| 2005/0058790 A1 | 3/2005 | Simon et al. |
| 2005/0070617 A1 | 3/2005 | Harfmann |
| 2005/0158521 A1 | 7/2005 | Sanyal |
| 2005/0170726 A1 | 8/2005 | Brunson et al. |
| 2005/0173526 A1 | 8/2005 | Toas et al. |
| 2005/0183443 A1 | 8/2005 | Munch et al. |
| 2005/0183444 A1 | 8/2005 | Munch et al. |
| 2005/0183445 A1 | 8/2005 | Munch et al. |
| 2005/0183845 A1 | 8/2005 | Munch et al. |
| 2005/0199496 A1 | 9/2005 | Dimeo, Jr. et al. |
| 2005/0205424 A1 | 9/2005 | Dimeo, Jr. et al. |
| 2005/0205565 A1 | 9/2005 | Cole et al. |
| 2005/0210913 A1 | 9/2005 | Munch et al. |
| 2005/0214512 A1 | 9/2005 | Fascio |
| 2005/0230258 A1 | 10/2005 | Dimeo, Jr. et al. |
| 2005/0233121 A1 | 10/2005 | Rangwalla |
| 2005/0249910 A1 | 11/2005 | Campal et al. |
| 2005/0260368 A1 | 11/2005 | Ruid et al. |
| 2005/0260383 A1 | 11/2005 | Yassin Alhamad |
| 2006/0003057 A1 | 1/2006 | Kelly et al. |
| 2006/0052466 A1 | 3/2006 | Handa |
| 2006/0059852 A1 | 3/2006 | Toas et al. |
| 2006/0074372 A1 | 4/2006 | Haga et al. |
| 2006/0083281 A1 | 4/2006 | Inoguchi |
| 2006/0134470 A1 | 6/2006 | Kaye et al. |
| 2006/0147696 A1 | 7/2006 | Crowley |
| 2006/0196792 A1 * | 9/2006 | Barth ............... B65D 31/02 |
| | | 206/320 |
| 2006/0211782 A1 | 9/2006 | Handa et al. |
| 2006/0238961 A1 | 10/2006 | Saita et al. |
| 2006/0261304 A1 | 11/2006 | Muthukumaran et al. |
| 2006/0270761 A1 | 11/2006 | Gosselin |
| 2006/0284014 A1 | 12/2006 | Muller et al. |
| 2006/0286325 A1 | 12/2006 | Swoboda et al. |
| 2006/0288661 A1 | 12/2006 | Allwein |
| 2007/0001564 A1 | 1/2007 | Park |
| 2007/0003733 A1 | 1/2007 | Muller |
| 2007/0018042 A1 | 1/2007 | Muller et al. |
| 2007/0036961 A1 | 2/2007 | LaSalle |
| 2007/0045567 A1 | 3/2007 | Rangwalla et al. |
| 2007/0083068 A1 | 4/2007 | Ramesh et al. |
| 2007/0095022 A1 | 5/2007 | Nissen |
| 2007/0107386 A1 | 5/2007 | Allwein |
| 2007/0157565 A1 | 7/2007 | Qi et al. |
| 2007/0180797 A1 | 8/2007 | Hasselbach et al. |
| 2007/0193224 A1 | 8/2007 | Hasselbach et al. |
| 2007/0195852 A1 | 8/2007 | Clark et al. |
| 2007/0199800 A1 | 8/2007 | Qi |
| 2007/0208094 A1 | 9/2007 | Handa et al. |
| 2007/0213416 A1 | 9/2007 | Handa et al. |
| 2007/0228396 A1 | 10/2007 | Sumitani |
| 2007/0232707 A1 | 10/2007 | Benitsch et al. |
| 2007/0283648 A1 | 12/2007 | Chen |
| 2007/0293593 A1 | 12/2007 | Harfmann |
| 2008/0014402 A1 | 1/2008 | Tomich |
| 2008/0032077 A1 | 2/2008 | Crowley |
| 2008/0032114 A1 | 2/2008 | Squires et al. |
| 2008/0047958 A1 | 2/2008 | Cole et al. |
| 2008/0081095 A1 | 4/2008 | Cole et al. |
| 2008/0110203 A1 | 5/2008 | May |
| 2008/0115460 A1 | 5/2008 | Ruid et al. |
| 2008/0121836 A1 | 5/2008 | Bowman et al. |
| 2008/0136110 A1 | 6/2008 | He |
| 2008/0138526 A1 | 6/2008 | Tutin et al. |
| 2008/0142380 A1 | 6/2008 | Unruh et al. |
| 2008/0146686 A1 | 6/2008 | Handa |
| 2008/0157433 A1 | 7/2008 | Heng et al. |
| 2008/0163565 A1 | 7/2008 | Toas |
| 2008/0164619 A1 | 7/2008 | Lee et al. |
| 2008/0190119 A1 | 8/2008 | Smayling |
| 2008/0203854 A1 | 8/2008 | Kubler et al. |
| 2008/0263997 A1 | 10/2008 | Kinne et al. |
| 2008/0265410 A1 | 10/2008 | Chang et al. |
| 2008/0281009 A1 | 11/2008 | He et al. |
| 2008/0281010 A1 | 11/2008 | Lefas et al. |
| 2009/0035479 A1 | 2/2009 | Rangwalla |
| 2009/0044928 A1 | 2/2009 | Upadhya et al. |
| 2009/0102037 A1 | 4/2009 | Kim |
| 2009/0130377 A1 | 5/2009 | Samanta et al. |
| 2009/0166836 A1 | 7/2009 | Kim et al. |
| 2009/0166892 A1 | 7/2009 | Lee |
| 2009/0174044 A1 | 7/2009 | Eom et al. |
| 2009/0193761 A1 | 8/2009 | Hasselbach et al. |
| 2009/0224392 A1 | 9/2009 | Suh et al. |
| 2009/0230138 A1 | 9/2009 | Williams et al. |
| 2009/0230244 A1 | 9/2009 | Kofinger et al. |
| 2009/0278155 A1 | 11/2009 | Inoguchi |
| 2009/0294972 A1 | 12/2009 | Jung et al. |
| 2009/0304999 A1 | 12/2009 | Fascio |
| 2009/0305427 A1 | 12/2009 | Dimeo, Jr. et al. |
| 2009/0313945 A1 | 12/2009 | Unruh et al. |
| 2010/0028649 A1 | 2/2010 | Trouilhet et al. |
| 2010/0029879 A1 | 2/2010 | Gosselin |
| 2010/0044907 A1 | 2/2010 | Burke et al. |
| 2010/0065206 A1 | 3/2010 | Romes |
| 2010/0072598 A1 | 3/2010 | Oh et al. |
| 2010/0101974 A1 * | 4/2010 | Eskenazi ............ B65D 25/101 |
| | | 206/591 |
| 2010/0109140 A1 | 5/2010 | Oh et al. |
| 2010/0117208 A1 | 5/2010 | Kim et al. |
| 2010/0129966 A1 | 5/2010 | Chen et al. |
| 2010/0144962 A1 | 6/2010 | Jana et al. |
| 2010/0181658 A1 | 7/2010 | Yamashita |
| 2010/0216919 A1 | 8/2010 | Kaytan |
| 2010/0221908 A1 | 9/2010 | Ohno |
| 2010/0265985 A1 | 10/2010 | Clark et al. |
| 2010/0266818 A1 | 10/2010 | Westwood et al. |
| 2010/0266824 A1 | 10/2010 | Westwood et al. |
| 2010/0267914 A1 | 10/2010 | Westwood et al. |
| 2010/0297416 A1 | 11/2010 | Kumar et al. |
| 2010/0310798 A1 | 12/2010 | Lasalle et al. |
| 2010/0314397 A1 | 12/2010 | Williams et al. |
| 2010/0320323 A1 | 12/2010 | Mueller et al. |
| 2010/0321878 A1 | 12/2010 | Huang |
| 2011/0020717 A1 | 1/2011 | Kaye et al. |
| 2011/0039089 A1 | 2/2011 | El Bounia et al. |
| 2011/0057346 A1 | 3/2011 | Nunn |
| 2011/0081529 A1 | 4/2011 | Richeson et al. |
| 2011/0085581 A1 | 4/2011 | Clark et al. |
| 2011/0089558 A1 | 4/2011 | Muto et al. |
| 2011/0090933 A1 | 4/2011 | Gibbs et al. |
| 2011/0109120 A1 | 5/2011 | Bonerb |
| 2011/0114513 A1 | 5/2011 | Kelly |
| 2011/0140143 A1 | 6/2011 | Kim et al. |
| 2011/0180490 A1 | 7/2011 | Gosselin |
| 2011/0209780 A1 | 9/2011 | Gantenbein et al. |
| 2011/0210442 A1 | 9/2011 | Lim et al. |
| 2011/0219716 A1 | 9/2011 | Chen |
| 2011/0221546 A1 | 9/2011 | Yamaji et al. |
| 2011/0233796 A1 | 9/2011 | Kim et al. |
| 2011/0248374 A1 | 10/2011 | Akin et al. |
| 2011/0274901 A1 | 11/2011 | Ronzani |
| 2011/0287584 A1 | 11/2011 | Suh et al. |
| 2012/0013016 A1 | 1/2012 | Oh et al. |

(56)            **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2012/0118495 | A1 | 5/2012 | Jung et al. |
| 2012/0135169 | A1 | 5/2012 | Tangelder et al. |
| 2012/0139090 | A1 | 6/2012 | Kim et al. |
| 2012/0145568 | A1* | 6/2012 | Collison .............. B65D 27/16 206/204 |
| 2012/0146503 | A1 | 6/2012 | Negley et al. |
| 2012/0273947 | A1 | 11/2012 | Mo |
| 2012/0299169 | A1 | 11/2012 | Kim et al. |
| 2012/0299199 | A1 | 11/2012 | Kim et al. |
| 2013/0011647 | A1 | 1/2013 | Handa et al. |
| 2013/0011648 | A1 | 1/2013 | Handa et al. |
| 2013/0020434 | A1 | 1/2013 | Muller et al. |
| 2013/0026651 | A1 | 1/2013 | Oh et al. |
| 2013/0040125 | A1 | 2/2013 | Eberstaller et al. |
| 2013/0059938 | A1 | 3/2013 | Paetz-Lauter et al. |
| 2013/0122255 | A1 | 5/2013 | Chen |
| 2013/0170175 | A1 | 7/2013 | Negley et al. |
| 2013/0170176 | A1 | 7/2013 | Athalye |
| 2013/0221012 | A1 | 8/2013 | Cole et al. |
| 2013/0310829 | A1 | 11/2013 | Cohen |
| 2013/0317238 | A1 | 11/2013 | Mohanty et al. |
| 2014/0023819 | A1 | 1/2014 | Pritchard |
| 2014/0034756 | A1 | 2/2014 | Gantenbein et al. |
| 2014/0043804 | A1 | 2/2014 | Negley et al. |
| 2014/0048560 | A1 | 2/2014 | Bina et al. |
| 2014/0084045 | A1 | 3/2014 | Yang et al. |
| 2014/0087109 | A1 | 3/2014 | Huang et al. |
| 2014/0107240 | A1 | 4/2014 | Donnelly |
| 2014/0127430 | A1 | 5/2014 | Deno et al. |
| 2014/0187658 | A1 | 7/2014 | Handa et al. |
| 2014/0197548 | A1 | 7/2014 | Do et al. |
| 2014/0275301 | A1 | 9/2014 | Ahmed et al. |
| 2014/0276494 | A1 | 9/2014 | Cisko et al. |
| 2014/0285208 | A1 | 9/2014 | Mizuta et al. |
| 2014/0332946 | A1 | 11/2014 | Oh et al. |
| 2014/0336319 | A1 | 11/2014 | Kim et al. |
| 2014/0339320 | A1 | 11/2014 | Gantenbein et al. |
| 2014/0339327 | A1 | 11/2014 | Gantenbein et al. |
| 2014/0361662 | A1 | 12/2014 | Al Ahmad et al. |
| 2014/0364663 | A1 | 12/2014 | Ramesh |
| 2014/0371055 | A1 | 12/2014 | Ramesh |
| 2015/0024545 | A1 | 1/2015 | Kim et al. |
| 2015/0135620 | A1 | 5/2015 | Collison |
| 2015/0151508 | A1 | 6/2015 | Planchard |
| 2015/0158656 | A1* | 6/2015 | McKinnon ........ B65D 81/3858 220/592.2 |
| 2015/0166244 | A1 | 6/2015 | Wood et al. |
| 2015/0168329 | A1 | 6/2015 | Gunness |
| 2015/0191291 | A1 | 7/2015 | Wood et al. |
| 2015/0225526 | A1 | 8/2015 | Tu et al. |
| 2015/0225538 | A1 | 8/2015 | Kim et al. |
| 2015/0255499 | A1 | 9/2015 | Lee et al. |
| 2015/0272664 | A9 | 10/2015 | Cohen |
| 2015/0273741 | A1 | 10/2015 | Burke et al. |
| 2015/0287673 | A1 | 10/2015 | Lim et al. |
| 2015/0330576 | A1 | 11/2015 | Zhai et al. |
| 2015/0340300 | A1 | 11/2015 | Shiramizu et al. |
| 2015/0367985 | A1 | 12/2015 | Duisters et al. |
| 2015/0373849 | A1 | 12/2015 | Huang et al. |
| 2015/0377363 | A1 | 12/2015 | Collison et al. |
| 2016/0039990 | A1 | 2/2016 | Park et al. |
| 2016/0045841 | A1 | 2/2016 | Kaplan et al. |
| 2016/0056358 | A1 | 2/2016 | Moosburger |
| 2016/0060412 | A1 | 3/2016 | Barrette |
| 2016/0074886 | A1 | 3/2016 | Gantenbein et al. |
| 2016/0082667 | A1 | 3/2016 | Donderici |
| 2019/0100371 | A1 | 4/2019 | Cardinale et al. |

OTHER PUBLICATIONS

ThermoPod, ThermoPod Protective Packaging ThermoKeeper insulated protective packaging, www.mhpn.com/product/thermokeeper_insulated_protective_packaging/packaging.

Thermopod, Patent and Trademarks, www.thermopodllc.com/patents.html.

Thermopod search resulting in 5 results.

Thermal Packaging Products, Temperature Controlled Packaging, www.thermomailer.com.

Provisional U.S. Appl. No. 62/299,471, filed Feb. 24, 2016, entitled T-Shaped Insulation for Boxes.

* cited by examiner



FIG. 1



FIG. 2

Appx00064



FIG. 3



FIG. 4



FIG. 5



FIG. 6

1

# THERMOPLASTIC PACKAGING INSULATION PRODUCTS AND METHODS OF MAKING AND USING SAME

## FIELD OF THE INVENTION

The present invention relates to the field of packaging insulation.

## PRIOR ART

Packaging insulation is used for shipping perishable items which must be kept cold during shipping. Individualized packages in which such items are shipped are lined with insulation to maintain the shipped item or items at the appropriate temperature. Current packaging insulation products comprise semi rigid expanded styrene panels, polymer bags stuffed with cotton, or Kraft paper bags stuffed with cotton.

## SUMMARY OF THE INVENTION

The present invention comprises packaging insulation for insertion into a packaging container, which includes a fibrous batt comprised of thermoplastic polymer fibers, having foldable thermoplastic polymer film adhered to both sides of the batt. The resulting method and product provides packaging insulation which can be shipped flat and compressed, which expands when unpacked and which can be readily folded to match the interior configuration of a shipping container, such as a cardboard box. Preferably the same thermoplastic polymer is used for the polymer fibers and the polymer film, and preferably it is PET, and most preferably recyclable.

These and other features, advantages and objects of the invention will be more readily understood and appreciated by reference to the drawings, description of the preferred embodiments, and claims.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a preferred embodiment packaging insulation;

FIG. 2 is a perspective view of two pieces of packaging insulation cut to fit within a particular shipping container;

FIG. 3 is a perspective view of a cardboard shipping container without packaging insulation;

FIG. 4 is a perspective view of the container of FIG. 3 lined with the packaging insulation pieces of FIG. 2;

FIG. 5 is a plan view of the compression equipment used to form the packaging insulation of the preferred embodiment; and

FIG. 6 is a top plan view of the compression equipment.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

In the preferred embodiment, laminated packaging insulation 1 comprises a fibrous polyethylene terephthalate (PET) fiber batt 10, laminated between two layers of PET film material 20 (FIG. 1). FIG. 2 shows a sheet of the packaging insulation 1 which has been cut into pieces 1a and 1b to fit within the cardboard shipping container 30 of FIG. 3. Packaging insulation 1 is readily foldable into appropriate shipping container configurations. As shown in FIG. 4, piece 1b has been folded to cover the bottom, one side and the lid of container 30. Piece 1a has been folded to cover the

2

remaining three sides of container 30. Preferably, the fibrous batt is non-woven, most preferably air-laid. While other thermoplastic polymers can be used for the fibers and film, preferably the same thermoplastic polymer is used for the polymer fibers and the polymer film, preferably it is PET, and most preferably recyclable and recycled. By using the same thermoplastic material for the fibers, the binder fibers and the film, the packaging insulation material may be readily recycled in commercial recycle centers. Recycled PET is the most preferable thermoplastic material.

The non-woven PET fiber batt 10 is formed of PET staple fibers, preferably fibers made from recycled PET (recycled PET fibers), having a length between 20-72 mm, preferably between 20 to 60 mm. The denier of the recycled PET fibers substantially falls between about 1 to about 10, preferably about 2 to about 8, and most preferably about 4-6 denier. Thickness of the PET fibers varies with denier, but finer fibers are preferred. From about 5 to about 30% thermoplastic binder fibers, more preferably about 10-25%, and most preferably about 15-20%, are mixed in with the PET fibers. Binder fibers may be lower melting point resinous fibers such as polyolefin, PVA or PVOH; or may be bi-component fibers including a higher melting point thermoplastic component associated with a lower melting point thermoplastic material. The bi-component fiber may comprise side by side strands of the two materials, or a higher melting point core encased in a lower melting point sheath, or a higher melting point strand with lower melting point beads scattered along its length. The binder fibers have lengths within the ranges discussed above. As above, preferably the same thermoplastic polymer is used for the polymer binder fibers, the batt fibers and the polymer film, preferably it is PET, and most preferably recycled and recyclable.

The PET film material used is preferably made from recycled PET (recycled PET film). It is preferably bi-axially oriented polyester film having a thickness of from about 2 to about 20 microns, most preferably about 12 microns. A clear PET film is preferred, having a haze of only about 3-4%. It is substantially impervious to moisture.

The PET fibers are normally shipped in bales, which are "opened" using a bale opening machine and process, which separates the fibers. They are mixed with the binder fibers and delivered by the flow of air into an air lay machine which forms a continuous batt and delivers it to a continuously moving conveyor belt. The fibers will be air laid to a thickness which is appropriate to the final thickness desired. The fibers will be air laid to a thickness which is greater than, but appropriate to the final thickness desired. A batt as air laid on the conveyor may vary widely, but from about 3 to about 6 inch thicknesses are typical. The basis weight is between about 400 gsm to about 1200 gsm (0.08 pounds/ square foot to about 0.25 pound/square foot.) The batt is conveyed through an oven which is maintained at a temperature of from about from about 160 to about 185° C., typically about 165 to 175° C. The heat of the oven tackifies the sheath of the binder fibers to assist in binding the natural and binder fibers together and give the batt cohesion. The heat of the oven tackifies the sheath of the binder fibers to assist in binding the PET and binder fibers together and give the batt cohesion.

From the oven, the batt is conveyed along to compressor 50 (FIGS. 5 and 6). Compressor 50 comprises a series of upper and lower compression rollers 51a-b, 53a-b, 55a-b, 57a-b and 59a-b which respectively carry a conveyor belt 50a and 50b, made of a low friction material such as Teflon. Located between the compression rollers, are compression

3

plates 52a-b, 54a-b, 56a-b and 58a-b, which press against the upper and lower Teflon conveyor belts 50a and 50b. The Teflon conveyor belts 50a and 50b slide over and past the compression plates.

As fibrous batt 10 is fed between the upper and lower Teflon conveyor belts 50a and 50b, at upper and lower starter rolls 51a and 51b, the PET film facing stock is fed from one of the upper rolls 40a under the upper Teflon conveyor belt 50a at top roll 51a and from one of the lower rolls 40b over the lower Teflon conveyor belt 50b at bottom roll 51b so as to be applied to both opposite sides of the passing fibrous batt 10 (FIG. 5). Two separate top feed stock rolls 40a can carry the same full width paper rolls and used in the alternative, or can carry paper rolls of two different widths and used in the alternative, or can carry two narrower paper rolls and used simultaneously to feed two side by side rolls of paper, which overlap slightly during the lamination process. The same is true for the two separate bottom feed stock rolls 40b.

The batt continues to pass between the upper and lower Teflon conveyor belts, carried by alternating upper and lower compression rollers and compression plates, which gradually reduce the thickness of the laminated batt to the target thickness. Compression rolls 51a-b, and 53a-b are heated to from about 170° C. to about 190° C., while rolls 55a-b, 57a-b and 59a-b are cooled to about 40° F. to about 55° F. Similarly, compression plates 52a-b and 54a-b are heated to from about 170° C. to about 190° C., while plates 56a-b and 58a-b are cooled to about 40° F. to about 55° F. In this manner, binding fibers in the fibrous batt continue to be adhering and tacky, and the PET film stock becomes heated and tacky, through the heated compression rollers and heated compression plates. When the batt reaches the cooling rollers and cooling compression plates, the heated and tacky binder fabrics and the tackified PET film stock begin to solidify and complete the adherence process, both between fibers in the batt, and between the batt and the PET film laminated to each opposing face of the batt.

As the laminated batt passes the final compression rolls 59a and 59b, it passes through longitudinal cutters 60 adjustably mounted on a support 61. This cuts the batt to desired widths. The batt so cut then passes a guillotine cutter blade 70 which cross-cuts the batt to desired lengths.

The resulting packaging insulation products 1 are cut to desired dimensions for specific packaging insulation requirements, and are from about ¼ to about 3 inches thick, and have a density of from about one to about seven pounds per cubic foot. The packaging insulation products can be shipped flat and compressed for economy of shipment. Surprisingly, the laminated PET product can be compressed to a greater degree than other types of fibrous batts used in packaging insulation, making it more economical to ship to the customer. When the laminated PET batts are unpacked at the customer's location, they expand back to at least near their original thickness, and can be folded to fit the packaging container in which product is to be shipped. Preferably, two panels are provided for each package (FIG. 2), one of which can be folded to cover the bottom, rear side and top of the container, and the other of which can be folded to cover the two ends and front side of the container (FIGS. 3 and 4).

EXAMPLE

A 1.5 inch thick all recycled PET fiber and film product, with a density of one pound/cubic foot, was assembled in a cardboard shipping container in the manner shown in FIG.

4

4. Each payload consisted of two 6-oz gel packs with a thermocouple on top, in between (middle), and bottom of the assembly. The assemblies were held together with duct tape.

The gel packs were placed into an environmental chamber for freezing to −18° C. at least 6 hours prior to the official initiation of the test. Concurrently the shipping container fitted with the PET insulation material conditioned to 22° C. in a separate chamber for a minimum of 24 hours.

The gel pack assemblies were placed in the shipping container and the closed container was subjected to 35° C. (95° F.) for more than 72 hours. The temperatures were logged at 15 minute intervals. The gel packs inside the container remained below 39° F. for more than 35 hours.

Of course it is understood that the above are preferred embodiments of the invention, and that various changes and alterations can be made without departing from the spirit and scope of the invention, as set forth in the appended claims.

The invention claimed is:

**1**. A method for insulating packaging containers comprising: providing a flat laminated packaging insulation which is of uniform thickness, resiliently compressible and foldable, cut to size for locating in a packaging container, said packaging insulation comprising an air laid thermoplastic fibrous batt comprised primarily of thermoplastic fibers, said batt being of uniform thickness, resiliently compressible and foldable, and having foldable thermoplastic film material adhered to both sides of said batt to form a laminate which can be folded without the need for creases, grooves or cut lines in said laminate to facilitate folding, whereby said laminated packaging insulation can be manufactured, compressed and shipped as a flat panel of uniform thickness, and allowed to resiliently expand and be folded for insertion into a packaging container.

**2**. The method of claim **1** wherein said fibrous batt includes from about 5 to about 30% thermoplastic binder fibers mixed with and adhered to at least some of said thermoplastic fibers.

**3**. The method of claim **2** in which said thermoplastic fibers, said thermoplastic binder fibers and said thermoplastic film are all made of the same thermoplastic polymer material, whereby said packaging insulation used may be readily commercially recycled.

**4**. The method of claim **3** wherein said thermoplastic material is PET.

**5**. The method of claim **4** wherein said thermoplastic material is recycled PET.

**6**. The method of claim **3** in which said fibers have lengths of between about 20 to about 72 mm.

**7**. The method of claim **6** in which the denier of said thermoplastic fibers is between about 1 to about 10.

**8**. The method of claim **7**, in which the denier of said thermoplastic fibers is about 2 to about 8.

**9**. The method of claim **8** in which the denier of said thermoplastic fibers is from about 4 to about 6.

**10**. The method of claim **4** which said PET film material is from about 2 to about 20 microns thick, and is made of recycled PET.

**11**. The method of claim **10** in which said thermoplastic binder fibers comprise from about 10 to about 25% of said fibers in said batt.

**12**. The method of claim **10** in which said thermoplastic binder fibers comprise from about 15 to about 20% of said fibers in said batt; said binder fibers comprising a higher melting point thermoplastic core fiber; encased in a lower melting point thermoplastic sheath.

**13**. The method of claim **1** in which said laminated packaging insulation is shipped flat and compressed for

5

economy of shipment, and for folding to fit its intended packaging container when provided to a customer for use as packaging insulation.

**14**. The method of claim **13** in which two separate ones of said flat panels of said laminated packaging insulation are provided for said package container, said package container having a bottom, rear side, front side and two end sides and a top, such that one of said flat panels can be folded to cover said bottom, rear side and top of the container, and the other of which can be folded to cover said two ends and front side of the container.

**15**. The method of claim **13** wherein said fibrous batt includes from about 5 to about 30% thermoplastic binder fibers mixed with and adhered to at least some of said fibers, and said fibers, said binder fibers and said film are made of recycled PET.

**16**. The method of claim **15** in which said PET fibers have lengths of between about 20 to about 60 mm.

**17**. The method of claim **16** in which the denier of said PET fibers is between about 1 to about 10.

**18**. The method of claim **16** in which said PET film material is from about 2 to about 20 microns thick.

**19**. The method of claim **16** in which two separate ones of said flat panels of said laminated packaging insulation are provided for said package container, said package container having a bottom, rear side, front side and two end sides and a top, such that one of said flat panels can be folded to cover said bottom, rear side and top of the container, and the other of which can be folded to cover said two ends and front side of the container.

**20**. A package insulation material comprising: a flat laminated packaging insulation which is of uniform thickness, resiliently compressible and foldable, cut to size for locating in a packaging container, said packaging insulation comprising a thermoplastic fibrous batt comprised primarily of thermoplastic fibers, said batt being of uniform thickness, resiliently compressible and foldable, and having foldable thermoplastic film material adhered to both sides of said batt to form a laminate which can be folded without the need for creases, grooves or cut lines in said laminate to facilitate folding, whereby said laminated packaging insulation can be manufactured, compressed and shipped as a flat panel, and allowed to resiliently expand and be folded for insertion into a packaging container.

6

**21**. The package insulation material of claim **20** wherein said thermoplastic fibrous batt includes from about 5 to about 30% thermoplastic binder fibers mixed with and adhered to at least some of said thermoplastic fibers; said thermoplastic fibers of said fibrous batt being recycled PET fibers having lengths of between about 20 to about 60 mm, and a denier of between about 1 to about 10; said thermoplastic film material having a thickness of about 2 to about 20 microns, and is made of recycled PET.

**22**. The package insulation material of claim **21** comprising two separate ones of said flat panels of said laminated packaging insulation for said package container, said package container having a bottom, rear side, front side and two end sides and a top, such that one of said flat panels can be folded to cover said bottom, rear side and top of the container, and the other of which can be folded to cover said two ends and front side of the container.

**23**. A product shipping combination comprising: a packaging container; a flat laminated packaging insulation which is of uniform thickness, resiliently, compressible and foldable, being cut to size for folding and locating in said packaging container, said packaging insulation comprising an air laid PET fibrous batt comprised primarily of PET fibers, said batt being of uniform thickness, resiliently compressible and foldable, and having foldable PET film material adhered to both sides of said batt to form a laminate which can be folded without the need for creases, grooves or cut lines in said laminate to facilitate folding, whereby said laminated packaging insulation can be manufactured, compressed and shipped as a flat panel, allowed to resiliently expand and be folded for insertion into said packaging container; said laminated packaging insulation being folded and inserted into said packaging container.

**24**. The product shipping combination of claim **23** comprising: two separate ones of said flat panels of said laminated packaging insulation for said package container, said package container having a bottom, rear side, front side and two end sides and a top, such that one of said flat panels can be folded to cover said bottom, rear side and top of the container, and the other of which can be folded to cover said two ends and front side of the container.

\* \* \* \* \*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) and Fed. Cir. R. 32(b), as it contains <u>8,939</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

<u>/s/ Christopher A. Mitchell    </u>
Christopher A. Mitchell

Dated:  October 21, 2025