**Case No. 25-2000**

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

CELLULOSE MATERIAL SOLUTIONS, LLC,
*Plaintiff-Appellant*

v.

SC MARKETING GROUP, INC.,
*Defendant-Appellee*

Appeal from the United States District Court for
the Northern District of California
Case No. 22-cv-03141-LB
Hon. Laurel D. Beeler

**BRIEF OF PROFESSORS JONATHAN MASUR AND LISA OUELLETTE
AS *AMICI CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL**

Phillip R. Malone
Nina K. Srejovic
JUELSGAARD INTELLECTUAL PROPERTY
    AND INNOVATION CLINIC
MILLS LEGAL CLINIC AT
    STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@stanford.edu

*Counsel for Amici Curiae*

## **CERTIFICATE OF INTEREST**

Pursuant to Federal Circuit Rules 29(a) and 47.4, counsel for *amici curiae* Professors Jonathan Masur and Lisa Ouellette certifies that:

1.      The full names of the *amici curiae* I represent are: Professors Jonathan Masur and Lisa Ouellette.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) I represent is: N/A.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici curiae* I represent are: None.

4.      The names of all law firms and the partners or associates that appeared before the originating court for the *amici curiae* I represent or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are: None.

5.      Other than the originating case, the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal is: None.

6. All information required by Federal Rules of Appellate Procedure 26.1(b) and 26.1(c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases is: None.

October 28, 2025                    /s/ Phillip R. Malone

                                   Phillip R. Malone
                                   Nina K. Srejovic
                                   JUELSGAARD INTELLECTUAL PROPERTY
                                       AND INNOVATION CLINIC
                                   MILLS LEGAL CLINIC AT STANFORD
                                       LAW SCHOOL
                                   559 Nathan Abbott Way
                                   Stanford, CA 94305
                                   (650) 725-6369
                                   pmalone@stanford.edu

                                   *Counsel for Amici Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

INTEREST OF *AMICI CURIAE* ............................................................ 1

SUMMARY OF ARGUMENT ............................................................... 2

ARGUMENT .......................................................................................... 4

    I.    Third-party sales do not, by themselves, bar an inventor from patenting. 5

        A.    The underlying principles of the on-sale bar articulated by this Court and the Supreme Court dictate that third-party sales should not bar an inventor from receiving a patent. .......................................................... 6

        B.    Patent caselaw has long distinguished between commercial exploitation by the inventor, which creates prior art against the inventor, and by third parties, which does not. .................................... 7

        C.    Recognizing that the on-sale bar is party-specific is consistent with the statutory framework of the America Invents Act and promotes public disclosure. .......................................................................................... 10

        D.    Nearly every case in which the Federal Circuit has invalidated a patent based on a third-party sale has also involved a public disclosure through public use or an enabling publication. ................................. 13

    II.    Cellulose's patent should not be invalidated based solely on Thermal Shipping's purchase order to Turner Fiberfill. ........................................ 16

CONCLUSION...................................................................................... 18

CERTIFICATE OF SERVICE .............................................................. 19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS .. 20

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Abbott Lab'ys v. Geneva Pharms., Inc.*,
182 F.3d 1315 (Fed. Cir. 1999) ........................................................... 13, 14, 16

*BASF Corp. v. SNF Holding Co.*,
955 F.3d 958 (Fed. Cir. 2020) ............................................................... 8

*City of Elizabeth v. Am. Nicholson Pavement Co.*,
97 U.S. 126 (1877) ................................................................................. 6

*In re Caveney*,
761 F.2d 671 (Fed. Cir. 1985) ............................................................ 13, 14, 16

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
778 F.3d 1243 (Fed. Cir. 2015) ............................................................ 7

*Dey, L.P. v. Sunovion Pharms., Inc.*,
715 F.3d 1351 (Fed. Cir. 2015) ............................................................ 8

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.*,
125 F.3d 1448 (Fed. Cir. 1997) ............................................................ 15

*Gillman v. Stern*,
114 F.2d 28 (2d Cir. 1940) ................................................................. 4, 8, 9

*Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*,
586 U.S. 123 (2019) ........................................................................... 2, 5

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.*,
787 F.2d 1577 (Fed. Cir. 1986) .......................................................... 13, 15

*Lexmark Int'l Inc. v. Universal Imaging Indus., LLC*,
699 F. Supp. 3d 1266 (M.D. Fla. 2023) ............................................... 15

*MDS Assocs., Ltd. P'ship v. United States*,
37 Fed. Cl. 611 (1997), *aff'd*, 135 F.3d 778 (Fed. Cir. 1998) ........................... 16

*Metallizing Eng'g Co. v. Kenyon Bearing & Auto Parts Co.*,
153 F.2d 516 (2d Cir. 1946) .......................................................... 7, 8, 9, 15

*Pfaff v. Wells Elecs., Inc.*,
   525 U.S. 55 (1998) .................................................................. 2, 5, 6

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004) ............................................. *passim*

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008) ...................................................................... 10

*Quest Integrity USA, LLC v. Cokebusters USA Inc.*,
   924 F.3d 1220 (Fed. Cir. 2019) ....................................................... 9

*Sanho Corp. v. Kaijet Tech. Int'l Ltd.*,
   108 F.4th 1376 (Fed. Cir. 2024) ............................................... 11, 18

*Schlumberger Tech. Corp. v. BICO Drilling Tools*,
   No. CV H-17-3211, 2019 WL 2450948 (S.D. Tex. June 12, 2019) ................. 16

*STX, LLC v. Brine, Inc.*,
   211 F.3d 588 (Fed. Cir. 2000) ......................................................... 6

*Tone Bros. v. Sysco Corp.*,
   28 F.3d 1192 (Fed. Cir. 1994) ......................................................... 7

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
   721 F.2d 1540 (Fed. Cir. 1983) ............................................. *passim*

*Zacharin v. United States*,
   213 F.3d 1366 (Fed. Cir. 2000) ................................................. 13, 14

*Zacharin v. United States*,
   43 Fed. Cl. 185 (1999) .................................................................. 14

**Statutes**

35 U.S.C. § 102(a) ......................................................................... *passim*

35 U.S.C. § 102(b) ......................................................................... *passim*

America Invents Act ...................................................................... *passim*

**Other Authorities**

157 Cong. Rec. S1360 (daily ed. Mar. 8, 2011) ...................................... 12

Jonathan S. Masur & Lisa Larrimore Ouellette, *Real-World Prior Art*,
   76 STAN. L. REV. 703 (2024) ....................................................................*passim*

### INTEREST OF *AMICI CURIAE*

*Amici curiae* are law professors who have researched and written extensively about patents and the effect of prefiling activities by parties on patentability. Most relevantly, they are the authors of *Real-World Prior Art*, 76 STAN. L. REV. 703 (2024).[1]

Professor Jonathan Masur is the John P. Wilson Professor of Law at the University of Chicago Law School. He is also the Director of the Wachtell, Lipton, Rosen & Katz Program in Behavioral Law, Finance and Economics and the David and Celia Hilliard Research Scholar.

Professor Lisa Larrimore Ouellette is the Deane F. Johnson Professor of Law at Stanford Law School and a Senior Fellow at the Stanford Institute for Economic Policy Research.

Professors Masur and Ouellette are among the leading scholars in the field of patent law. They are the authors of *Patent Law: Cases, Problems, and Materials* (4th ed. 2025), the leading patent casebook, which has been adopted by over seventy law schools.

*Amici* have no financial interest in the outcome of this case. Rather, *amici*

---

[1] No party or party's counsel authored any part of this brief or contributed money towards its preparation or submission. No one, other than *amici* and their counsel, contributed money towards the preparation or submission of this brief. Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this brief.

1

share a professional interest in ensuring that patent law develops in a way that serves the public interest.[2]

### SUMMARY OF ARGUMENT

The patent system is "a carefully crafted bargain" that trades public disclosure of new inventions for an exclusive monopoly for a limited period. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998). 35 U.S.C. §§ 102(a)(1) and 102(b)(1) together bar an inventor from patenting if the inventor placed the claimed invention "on sale" more than one year before the effective filing date of a patent application for that invention. The Supreme Court has held that a secret sale by an inventor triggers the on-sale bar under both pre- and post-America Invents Act (AIA) law. *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 130–32 (2019).

But an ambiguity remains in the on-sale bar: *Who* must make the sale in order for an inventor to be barred from obtaining a patent? If it is not the inventor themself, but a third party, who makes the sale, is the inventor still barred from patenting? The principles behind the on-sale bar, precedent, and the statutory framework dictate that this on-sale bar should be viewed as party-specific: A party's private sale—one that does not create a public use or any other sort of prior art and thus does not "publicly disclose[]" the invention to preserve a one-year patenting grace period under 35

---

[2] *Amici* wish to thank Stanford Law School Juelsgaard Intellectual Property and Innovation Clinic Certified Law Students Jina Zhou and Yiran (Isabella) Yang for their substantial assistance in drafting this brief.

U.S.C. § 102(b)(1)(B)—only bars that party, not others, from patenting.

The Supreme Court and this Court have both specified that the on-sale bar exists to prevent inventors from extending their patent monopolies by commercially exploiting their inventions before filing their patent applications. Because a third-party sale of an invention does not implicate this concern, such sales, on their own, should not bar an inventor from patenting.

Applying the on-sale bar only to first-party sales continues this Court's practice of distinguishing between cases of commercial exploitation by a first-party inventor and cases of third-party commercial exploitation. Although often couched in the language of public use, court decisions have repeatedly treated third-party commercial activity differently from a patentee's. Inventors who commercially exploit their inventions in advance of filing an application have been barred, while third parties' private commercial uses have not invalidated other inventors' patents.

Recognizing the on-sale bar as party-specific conforms with the America Invents Act statutory framework and promotes public disclosure. This Court recently distinguished between sales that publicly disclose an invention and those that do not, holding that only sales that result in a public disclosure trigger the AIA's § 102(b)(1)(B) one-year grace period. A similar distinction should be made under AIA § 102(a). When a sale is not made by the patentee, the patentee should be barred from patenting only if the sale results in a public disclosure of the invention.

3

Limiting the on-sale bar to first-party sales comports with previous Federal Circuit decisions. The rule that third-party commercial exploitation does not implicate the purposes of the on-sale bar or bar a first-party patent dates to canonical cases such as *Gillman v. Stern*, 114 F.2d 28, 31 (2d Cir. 1940) and *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983). More recently, in *Poly-America, L.P. v. GSE Lining Tech., Inc.*, the Federal Circuit held that a third-party sale did not invalidate a patent. 383 F.3d 1303 (Fed. Cir. 2004). By contrast, decisions in which the Federal Circuit has invalidated a patent based on a third-party sale have almost always involved some other type of prior art that arose in the form of public use or a printed publication.

Summary judgment invalidating Cellulose's patent should not be granted based solely on the April 2016 purchase order, which has not yet been found to have led to any public use or other prior art.

## ARGUMENT

The District Court granted summary judgment of invalidity, finding that a third-party "April 2016 purchase order, which reflects a sale offer by Thermal Shipping and which preceded the '007 patent's filing date, discloses prior art. 35 U.S.C. § 102(a)(1)." Appx00016. Appellant challenges the grant of summary judgment and argues that there are genuine issues of fact as to whether the April 2016 purchase order constitutes prior art. Statutory interpretation is critical in this

4

appeal, and *amici* strongly urge this Court to clarify and apply the correct statement of the law in this case.

## I.   Third-party sales do not, by themselves, bar an inventor from patenting.

35 U.S.C. § 102 of the America Invents Act (AIA) bars an inventor from patenting an invention that was placed on sale more than one year before filing. AIA 35 U.S.C. § 102(a)(1), (b)(1); *see also* Pre-AIA 35 U.S.C. § 102(b). The on-sale bar does not require that the invention was ever sold or used by anyone. Instead, the bar is triggered so long as the invention is "the subject of a commercial offer for sale" and is far enough along in its development that it is "ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). Under both pre- and post-AIA law, a secret sale by an inventor triggers the on-sale bar. *See Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 130–32 (2019).

Uncertainty remains over *who* must make the sale to invoke the on-sale bar, especially when third parties are involved. When a third party, not the inventor themself, makes the sale, is the inventor still barred from patenting? Because the on-sale bar lacks any requirement that the sale involve disclosure to the public or any other public benefit, the underlying principles, prior caselaw, and the statute all dictate that the on-sale bar is party-specific and that third-party sales, by themselves, do not bar an inventor from patenting.

5

**A. The underlying principles of the on-sale bar articulated by this Court and the Supreme Court dictate that third-party sales should not bar an inventor from receiving a patent.**

"[Section] 102 of the AIA serves as a limiting provision, both excluding ideas that are in the public domain from patent protection and confining the duration of the monopoly to the statutory term." *Pfaff*, 525 U.S. at 64. The on-sale bar in 35 U.S.C. § 102(a)(1) and (b)(1) provides that second check. The "overriding concern" of the on-sale bar is "an inventor's attempt to commercialize his invention beyond the statutory term." *STX, LLC v. Brine, Inc.*, 211 F.3d 588, 590 (Fed. Cir. 2000). The Supreme Court has held that the on-sale bar should operate when an inventor "attempt[s] to use [the invention] for a profit" before the on-sale bar date contrary to patent law's maxim that an inventor's "monopoly only continues for the allotted period." *See Pfaff*, 525 U.S. at 65 (quoting *City of Elizabeth v. Am. Nicholson Pavement Co.*, 97 U.S. 126, 137 (1877)).

Third-party sales of an invention do not implicate this principle. The on-sale bar's concern that an inventor may commercially exploit their invention for longer than the patent term is implicated only if the sale is offered by the inventor themselves. If the sale is offered only by a third party, the inventor has not benefitted from any extension of their monopoly. Jonathan S. Masur & Lisa Larrimore Ouellette, *Real-World Prior Art*, 76 STAN. L. REV. 703, 738 (2024).

The public-use bar implicates the other distinct, limiting purpose of Section 102, which is to "prevent 'the removal, from the public domain, of inventions that the public reasonably has come to believe are freely available.'" *Delano Farms Co. v. Cal. Table Grape Comm'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015) (quoting *Tone Bros. v. Sysco Corp.*, 28 F.3d 1192, 1198 (Fed. Cir. 1994)). Limiting the on-sale bar to sales or offers for sale by the inventor does nothing to frustrate this goal. If no one purchases the invention or even notices the offer for sale, there is no invention that is "freely available," and no public reliance or expectations to be frustrated. In contrast, if a member of the public does purchase and *use* the invention, then their reliance interest justifies barring a patent. This is true regardless of *who* sells the invention, be it the first-party patent applicant or a third party, which is why the public-use bar is not party-specific.

**B. Patent caselaw has long distinguished between commercial exploitation by the inventor, which creates prior art against the inventor, and by third parties, which does not.**

The distinction between commercial exploitation of an invention by the inventor and commercial exploitation by a third party stretches back decades. Two canonical decisions by Judge Learned Hand illustrate this distinction. In *Metallizing Engineering Co. v. Kenyon Bearing & Auto Parts Co.*, an inventor's commercial exploitation of a metal reconditioning invention more than a year before the critical date barred the inventor from obtaining a patent, "regardless of how little the public

may have learned about the invention." 153 F.2d 516, 520 (2d Cir. 1946). The court reasoned that an inventor's right to a patent was conditioned on not "exploit[ing] his discovery competitively after it is ready for patenting," stating that an inventor must "content himself with either secrecy, or legal monopoly." *Id.* On the other hand, a third party's prior secret commercial exploitation of a pneumatic machine for quilting did not invalidate another inventor's later patent on such a machine. *Gillman v. Stern*, 114 F.2d 28, 31 (2d Cir. 1940). The court found that the third party's exploitation did not create a public use, and because the use was by a third party, there was no question of abandonment or forfeiture by the first-party inventor. *Id.*

The Federal Circuit has followed this distinction between first- and third-party commercial exploitation in subsequent decisions. *See, e.g., BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 967 (Fed. Cir. 2020) (explaining that the public-use bar as described in *Metallizing* only applies to "an *inventor's* commercial exploitation of his invention before the critical date," and that a third party's secret commercial use would not create a "public-use bar to another inventor") (emphasis added); *Dey, L.P. v. Sunovion Pharms., Inc.*, 715 F.3d 1351, 1355 (Fed. Cir. 2015) (stating that "secret or confidential third-party uses do not invalidate later-filed patents"); *Poly-America*, 383 F.3d at 1307–09 (holding that a third-party sale of a machine capable of performing the claimed method could not invalidate the patent). In one of the most well-known Federal Circuit cases involving third-party commercial exploitation,

this Court found that a third party's secret commercial use of a Teflon-stretching machine and sale of the tape produced by the process did not bar a later inventor from obtaining a patent. *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1550 (Fed. Cir. 1983).

While the Federal Circuit has varied in whether it describes commercial exploitation cases as implicating the public-use or on-sale bar, these cases are better understood as implicating the on-sale bar. This Court's reasoning in *Gore*, for example, aligns more with the underlying principles of the on-sale bar. *Id.* ("As between a prior inventor who benefits from a process by selling its product but . . . otherwise keeps the process from the public, and a later inventor who promptly files a patent application from which the public will gain a disclosure of the process, the law favors the latter."). Similarly, in *Metallizing* and *Gillman*, the court treated the secret commercial exploitation as implicating the public-use bar, but the reasoning was grounded in the principle animating the on-sale bar, not the public-use bar. In other cases, this Court has been clear that instances of commercial use implicate the on-sale bar. *See, e.g.*, *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1227 (Fed. Cir. 2019) ("Sale of a product . . . produced by performing a claimed process implicates the on-sale bar"). If that is the case, then the distinction drawn in those cases between first-party and third-party commercial uses should apply to sales—and the on-sale bar—as well. Masur & Ouellette, *Real-World Prior*

*Art, supra*, at 728–29.

Moreover, the on-sale bar is a better fit than the public-use bar for cases of secret commercial exploitation as a matter of statutory interpretation. By definition, secret commercial use is not "public": No member of the public is using the invention, nor is the invention being used in public. While "the invention" itself is not sold, the product of the invention is still on sale. For purposes of patent exhaustion, the Supreme Court has held that "methods . . . may be 'embodied' in a product, the sale of which exhausts patent rights." *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 628–29 (2008). This reasoning as applied to patent exhaustion seems to also apply to the "sale" of a process for purposes of the on-sale bar, as both doctrines involve issues of when an invention is on sale, and both are motivated by concerns about limiting the extent to which inventors can use patent law to control commercial exploitation of their inventions. Masur & Ouellette, *Real-World Prior Art*, *supra*, at 729.

### C. Recognizing that the on-sale bar is party-specific is consistent with the statutory framework of the America Invents Act and promotes public disclosure.

Treating the on-sale bar as party-specific also unifies it with this Court's interpretation of the safe-harbor provisions in AIA § 102(b)(1)(B). Post-AIA § 102(b)(1)(B) provides a one-year grace period for prior art disclosed by a third party, but only if the invention had previously been "publicly disclosed" by the first-

10

party applicant or someone associated with them. In its first case interpreting the AIA third-party grace period, this Court recognized that § 102(b)(1)(B) aims to "protect inventors who *share their inventions with the public* from later disclosures made by others." *Sanho Corp. v. Kaijet Tech. Int'l Ltd.*, 108 F.4th 1376, 1382 (Fed. Cir. 2024) (emphasis added). On the other hand, when "[t]here is no indication the sale disclosed the inventive subject matter to the public," the § 102(b)(1)(B) exception does not apply. *Id.* at 1384–85. In other words, a private sale—one that did not create a public use or any other sort of prior art—is not a public disclosure under the terms of § 102(b)(1)(B), and the one-year grace period is not triggered against third-party disclosure. Per this reasoning, if the invention is not being publicly disclosed, then the only party benefitting from a private sale is the party making the sale—not the public nor its competitors.

Consistent with this interpretation, the on-sale bar should be party-specific: Absent some form of public disclosure, a party's sale can only bar that party from patenting, not others. Masur & Ouellette, *Real-World Prior Art*, *supra*, at 743–45. To hold otherwise could lead to the nonsensical result that *neither* of two independent inventors could receive a patent. Suppose that Party A privately offers an invention for sale; one day later Party B files for a patent on the same invention; and then one day after that Party A files for a patent on the same invention. Both parties have filed for patents well within a year of any § 102(a) prior art being

created, and under the structure of the AIA *someone* should be able to obtain a patent. *See* 157 Cong. Rec. S1360, S1369 (daily ed. Mar. 8, 2011) (statement of Sen. Jon Kyl) ("The bill thus effectively creates a 'first to publish' rule that *guarantees* patent rights in the United States to whoever discloses the invention to the public first." (emphasis added)). But if the on-sale bar were not party-specific, Party A's private third-party sale would bar Party B from patenting but would not trigger the one-year grace period for Party A itself. Party B's application would then bar Party A from patenting. Such a result would be contrary to the intent of the AIA.

Moreover, in cases involving third-party sales, requiring a separate inquiry into whether there was a public use or other public disclosure promotes public disclosure of new inventions at the time of sale. Under this requirement, a sale of an invention under a non-disclosure agreement will not bar another independent inventor from obtaining a patent. This is as it should be: A sale under a non-disclosure agreement does not enrich the store of public knowledge or benefit anyone other than the parties to the sale. On the other hand, when an inventor does not keep the invention secret, the sale will likely result in public use or other prior art, which *does* enrich the store of public knowledge and create reliance interests and thus can properly bar others from patenting. This requirement aligns with § 102(b)(1)(B)'s purpose of protecting disclosing parties and promoting earlier disclosures of new inventions: The public gains nothing from an offer for sale if the

item is never sold and delivered, or if the sale is confidential; when inventors are encouraged to publicize the commercial sale of inventions, more information on new inventions can flow freely into the public domain.

**D. Nearly every case in which the Federal Circuit has invalidated a patent based on a third-party sale has also involved a public disclosure through public use or an enabling publication.**

As noted, Federal Circuit caselaw has previously recognized that third-party commercial exploitation that does not create a public use or other prior art does not, by itself, bar an independent inventor from patenting. *See, e.g.*, *Gore*, 721 F.2d at 1550; *Poly-America*, 383 F.3d at 1308–09. Despite this precedent, some Federal Circuit decisions include statements that third-party sales do bar anyone from obtaining a patent. *See, e.g.*, *Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000) ("it is of no consequence that the sale was made by a third party, not by the inventor"); *Abbott Lab'ys v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318 (Fed. Cir. 1999) ("the statutory on-sale bar is not subject to exceptions for sales made by third parties either innocently or fraudulently"); *In re Caveney*, 761 F.2d 671, 675 (Fed. Cir. 1985) ("sales or offers by one person of a claimed invention will bar another party from obtaining a patent if the sale or offer to sell is made over a year before the latter's filing date"); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1583 (Fed. Cir. 1986) (declining to make an exception to the "general rule that a third-party sale of a device embodying the claimed invention prior to the critical

date invalidates the patent").

However, in nearly all of those decisions, the circumstances surrounding the third-party sale created some other type of prior art by putting the invention into public use or disclosing the invention to the public in an enabling way. In *Zacharin*, the inventor, an Army engineer, "disclosed his invention to a third party, the Army," and "placed no restrictions on the Army's use or disclosure of the design." 213 F.3d at 1370. The Army's subsequent "tests over which [the inventor] had no authority" were a public use that would have, on their own, been a reason to invalidate the patent. *Zacharin v. United States*, 43 Fed. Cl. 185, 194 (1999), *aff'd*, 213 F.3d 1366 (Fed. Cir. 2000). Similarly, although the Federal Circuit affirmed the district court's invalidation of a patent based on a third-party sale in *Abbott Laboratories*, the main reasoning cited was that "buyers had come to rely on [the invention] being freely available." 182 F.3d at 1317. Without evidence otherwise, it is more likely than not that the purchasers in that case did something with the product after purchase that placed it into public use before the critical date. And in *Caveney*, the third party had "sent samples of the claimed invention . . . along with a catalogue and technical information" to a member of the public prior to making the sale. 761 F.2d at 673. This action created a public use through actual use because the samples were enabling when examined by someone with skill in the art, and the catalogue and technical information could have been prior art in the form of printed publications.

14

In similar fashion, in *J.A. LaPorte*, the third-party seller photographed the invention "with no directions from [the inventor] concerning confidentiality" and distributed the photographs to "a member of the relevant public" before making the sale. 787 F.2d at 1579, 1583.

The Federal Circuit has only once invalidated a patent based on a third-party sale where the sale did not involve public use or disclosure. *See Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1450 (Fed. Cir. 1997). In that case, the third-party sale was made prior to the critical date, but the product containing the invention was not delivered by that date, creating a situation in which there was a sale but no public use. *Id.* at 1451. However, that result is inconsistent with the longstanding distinction in prior caselaw between first- and third-party commercial exploitation that does not create public disclosure. *See Gore*, 721 F.2d at 1549–50; *Metallizing*, 153 F.2d at 520. That decision also conflicts with later cases such as *Poly-America*, where this Court held that the on-sale bar was not triggered by a third-party sale that did not otherwise create a public disclosure. 383 F.3d at 1309.

The diverging and often irreconcilable approaches taken by lower courts in cases involving the on-sale bar are often the result of these conflicting outcomes and statements. Some lower courts, citing Federal Circuit caselaw, have found that the on-sale bar applies in cases of third-party sales. *See, e.g.*, *Lexmark Int'l Inc. v. Universal Imaging Indus., LLC*, 699 F. Supp. 3d 1266, 1279–80 (M.D. Fla. 2023)

15

("the Federal Circuit has made clear that 'the statutory on-sale bar is not subject to exceptions for sales made by third parties'") (quoting *Abbott Laboratories*, 182 F.3d at 1318). Other lower courts have held that the on-sale bar is party-specific. *See, e.g.*, *MDS Assocs., Ltd. P'ship v. United States*, 37 Fed. Cl. 611, 632–33 (1997), *aff'd*, 135 F.3d 778 (Fed. Cir. 1998) ("to apply the on-sale bar to a third-party sale, the court must find that either the policy against removing inventions from the public or the policy promoting early disclosure of new inventions is furthered"); *Schlumberger Tech. Corp. v. BICO Drilling Tools*, No. CV H-17-3211, 2019 WL 2450948, at *9 (S.D. Tex. June 12, 2019) (citing the "Federal Circuit's guidance from *ResQNet.com* and *In re Caveney*" in determining that "sales of a product that discloses the invention by a third party" should be "analyzed under the public use prong"). For this reason, *amici* strongly urge the Court to resolve this issue decisively, in a manner consistent with its earliest pronouncements on the subject in *Gore*, the underlying principles of the on-sale bar, and the AIA's statutory structure.

## II. Cellulose's patent should not be invalidated based solely on Thermal Shipping's purchase order to Turner Fiberfill.

If the on-sale bar is understood as party-specific, Cellulose's patent should not be invalidated solely because of Thermal Shipping's purchase order to Turner Fiberfill ("Purchase Order"). The Purchase Order occurred in April 2016, shortly before Cellulose filed its patent application in June 2016. Appx00005–00006; Appx00898–00899; Appx00059. But as we have argued, this Purchase Order by

itself should not prevent Cellulose from obtaining a patent. The third-party Purchase Order and Cellulose's prompt patent filing did not involve the "policy prohibition against an inventor commercializing his invention while deferring the filing of a patent application." *See Poly-America*, 383 F.3d at 1309. Cellulose did not attempt to extend its exclusivity beyond the patent term, and the policy behind the on-sale bar does not support invalidating Cellulose's patent solely because of the Purchase Order. The District Court erred in invalidating Cellulose's patent solely based on the April Purchase Order. *See* Appx00016 ("the April 2016 purchase order, which reflects a sale offer by Thermal Shipping and which preceded the '007 patent's filing date, discloses prior art. 35 U.S.C. § 102(a)(1).").

If the April Purchase Order had led to public use, then that could be an independent reason for invalidating Cellulose's patent. However, the product was delivered in or after July 2016, *after* Cellulose's filing date. Appx00006–00007; Appx00059; Appx09833–09834. Unless there is evidence showing other public use from the April Purchase Order, it seems appropriate to presume that Turner Fiberfill's customer could not have engaged in public use before the delivery date. *See* Masur & Ouellette, *Real-World Prior Art*, *supra*, at 721–24, 741. In other words, there was no public use stemming from the April Purchase Order before Cellulose's filing date.

Finally, it is worth noting that Cellulose made a secret sale of the invention in

February 2016, before the April Purchase Order. Appx00005–00006; Appx00964; Appx00972; Appx01533. The district court held that this sale did not count as a "public" disclosure sufficient to trigger the § 102(b)(1)(B) grace period against third-party disclosures. Appx00006. As this Court has explained, this result makes sense because Cellulose's February sale did not enrich the store of public knowledge or create cognizable reliance interests on the part of any member of the public. *See Sanho*, 108 F.4th at 1383–85. It only benefitted Cellulose and its customer, and thus should not affect any other party's legal rights before the patent filing date. The same is symmetrically true for the April third-party Purchase Order, which did not benefit the public before the critical date and should not affect Cellulose's patent rights.

## **CONCLUSION**

For the reasons set forth above, the District Court's summary judgment of invalidity should be reversed.

October 28, 2025

Respectfully submitted,

By: /s/ Phillip R. Malone

Phillip R. Malone
Juelsgaard Intellectual Property
  and Innovation Clinic
Mills Legal Clinic at Stanford
  Law School
559 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 725-6369
pmalone@stanford.edu
*Counsel for Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2025, I caused the foregoing BRIEF OF

PROFESSORS JONATHAN MASUR AND LISA OUELLETTE AS *AMICI*

*CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL to be served by

electronic means via the Court's CM/ECF system on all counsel registered to

receive electronic notices.

October 28, 2025                                   /s/ Phillip R. Malone

 

Phillip R. Malone
JUELSGAARD INTELLECTUAL PROPERTY
   AND INNOVATION CLINIC
MILLS LEGAL CLINIC AT STANFORD
   LAW SCHOOL
559 Nathan Abbott Way
Stanford, CA 94305
(650) 725-6369
pmalone@stanford.edu

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATIONS

I hereby certify as follows:

1.     The foregoing BRIEF OF PROFESSORS JONATHAN MASUR AND LISA OUELLETTE AS *AMICI CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL complies with the type-volume limitation of Fed. Cir. R. 32. The brief is printed in proportionally spaced 14-point type, and the brief has 4503 words according to the word count of the word-processing system used to prepare the brief (excluding the parts exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)).

2.     The brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

October 28, 2025                              /s/ Phillip R. Malone

                                             Phillip R. Malone
                                             JUELSGAARD INTELLECTUAL PROPERTY
                                               AND INNOVATION CLINIC
                                             MILLS LEGAL CLINIC AT STANFORD
                                               LAW SCHOOL
                                             559 Nathan Abbott Way
                                             Stanford, CA 94305
                                             (650) 725-6369
                                             pmalone@stanford.edu

                                             *Counsel for Amici Curiae*