# United States Court of Appeals for the Federal Circuit

---

CELLULOSE MATERIAL SOLUTIONS, LLC,

*Plaintiff-Appellant,*

v.

SC MARKETING GROUP, INC.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Northern District of California; Case No. 22-CV-03141 Hon. Laurel Beeler*

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT CELLULOSE MATERIAL SOLUTIONS, LLC

---

CHRISTOPHER A. MITCHELL
DICKINSON WRIGHT PLLC
200 Ottawa Avenue NE, Suite 900
Grand Rapids, MI 49503
(616) 336-1058
cmitchell@dickinson-wright.com

JOHN S. ARTZ
DICKINSON WRIGHT PLLC
350 South Main Street, Suite 300
Ann Arbor, MI 48104
(248) 433-7262
jsartz@dickinson-wright.com

PHILLIP J. DEROSIER
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
pderosier@dickinson-wright.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ......................................................................................................... 1

    I.     Summary ........................................................................................... 1

    II.    Cellulose Came Forward with Evidence that the Renewliner Product of the Turner PO was Obtained from Cellulose ................... 4

    III.   TSS's Conflicting, Unsupported and Contradictory Claims............ 11

    IV.   The Turner PO..................................................................................... 23

    V.    Cellulose at Least Demonstrated Disputes of Material Fact as to Prior Public Disclosure of the Renewliner ....................................... 25

    VI.   Further Discovery as to TSS's Public Disclosures of the Renewliner Product is Appropriate ................................................. 28

CONCLUSION .................................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) .........................................................................21

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ...................................10

*BearBox LLC v. Lancium LLC*,
125 F.4th 1101 (Fed. Cir. 2025) .......................................................................22

*Christie v. Iopa*,
176 F.3d 1231 (9th Cir. 1999) ...........................................................................15

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2019) .........................................................................21

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed.Cir.1998) .............................................................................5

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) .........................................................................22

*Fraser v. Goodale*,
342 F.3d 1032 (9th Cir. 2003) ...........................................................................15

*Hollingsworth Solderless Terminal Co. v. Turley*,
622 F.2d 1324 (9th Cir.1980) ............................................................................16

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) .........................................................................22

*Metacel Pharms. LLC v. Rubicon Rsch. Priv. Ltd.*,
No. 2023-2386, 2025 WL 1178384 (Fed. Cir. Apr. 23, 2025)..............................9

*Minerva Surgical, Inc. v. Hologic, Inc.*,
59 F.4th 1371 (Fed. Cir. 2023) .........................................................................25

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022) .............................................................12, 16, 22

ii

*Ormco Corp. v. Align Technology, Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006) ........................................................25

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
    264 F.3d 1344 (Fed. Cir. 2001) ........................................................22

*Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*,
    108 F.4th 1376 (Fed. Cir. 2024) ....................................25, 26, 28, 29

*Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*,
    252 F. App'x 123 (9th Cir. 2007) ....................................................20

*TransWeb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016) ........................................................22

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
    374 F.3d 1151 (Fed. Cir. 2004) ........................................................16

*United States v. Lopez*,
    913 F.3d 807 (9th Cir. 2019) ...........................................................17

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009) ..........................................................9

**Statutes**

35 U.S.C. § 102(a) ...............................................................................28

35 U.S.C. § 102(b)(1)(B) ...............................................................28, 29

35 U.S.C. § 102(b)(2)(B) ...............................................................25, 27

<u>**ARGUMENT**</u>

# I. Summary

Contrary to Appellee's ("TSS")[1] claims, Cellulose Material Solutions ("Cellulose") provided evidence sufficient to support the conclusion that the Renewliner[2] product that was the subject of TSS's purchase order ("PO") to third-party Turner Fiberfill ("Turner") was obtained, directly or indirectly, from Cellulose. This alone warrants reversing the district court's grant of summary judgment to TSS. For even if TSS's claims of independent invention could be credited, they do no more than highlight the existence of a dispute of material fact; i.e., where did the Renewliner product of the Turner PO come from?

While the parties advance competing assertions, there is only one Renewliner product. TSS admits as much. Indeed, its case for an invalidating prior sale depends upon it. Against this fact, Cellulose, owner of the '007 Patent and employer of the named inventors, demonstrated that it first conceived of and then made samples embodying the invention. It then proceeded to make the very first

---

[1] Cellulose uses herein the abbreviation "TSS" in lieu of Appellee's full d/b/a, Thermal Shipping Solutions.

[2] In the interests of simplicity, Cellulose herein refers to the product made by it as "Renewliner." This is the name under which TSS branded the product, even though the product conceived and disclosed to TSS by Cellulose did not bear this name until the time of the first offer for sale to third party DinnerThyme in February of 2016.

Renewliner products sold by TSS. There was no other Renewliner product at that time. TSS never made it.

Only after Cellulose created the first Renewliner products and conveyed the specifications and samples to TSS did TSS turn to Turner as a replacement vendor. The product TSS ordered from Turner, in an argued offer for sale to third-party Juicero, was the same. Again, this essential aspect of the invalidity case is admitted.

TSS claims its CEO, Sal Cardinale, conceived of some or all of the Renewliner product (although its factual assertions in these regards have changed over time). In either version, it claims knowledge predating Cellulose's provision of samples and specifications. This is supposed to defeat any claim that TSS obtained the Renewliner product from Cellulose. Appx06452 ("If TSS already possessed the relevant ideas before [Cellulose's] disclosure, then the ideas nevertheless belong to TSS and did not derive from [Cellulose] or its inventors.").

At one level, TSS's own arguments manifest the inescapable factual dispute. There is only one Renewliner product, which Cellulose first supplied and which embodies the invention of Cellulose's '007 Patent. Sal Cardinale invented none, some, or all of it. In the latter two possibilities, TSS bears the ultimate burden of proof by clear and convincing evidence that Sal Cardinale's alleged knowledge ended up in the Cellulose supplied product. Sal Cardinale cannot simply declare

prior knowledge (whether entire or partial) and so defeat Cellulose's patent by claiming that the exact product Cellulose first provided was something he already knew about.

As for Turner, TSS claims to have transferred at least some of its "independent knowledge" regarding the Renewliner product to that alternative vendor, while Turner supplied the rest. But this contention is disputed by at least Cellulose and TSS's own evidence, and the contradictory statements of Turner's CEO. And, again, TSS's claims of independent invention must be shown with clear and convincing evidence.

When considering TSS's evidence, however, it is manifestly legally insufficient (and so should have been disregarded or discounted), contradictory (thus creating still further, internal issues for the trier of fact, including as to credibility), and in meaningful part represents entirely new and untested evidence brought forth only in response to Cellulose's Motion for Reconsideration of the original grant of summary judgment of invalidity.[3] In the face of the material issues

---

[3] While Cellulose agrees with and endorses the view of the *amici curiae* regarding the proper scope of the on-sale bar, particularly to the extent it permits such inequitable results as obtained in the district court and the encouragement it provides to others to make "token offers" as a means of defeating legitimate intellectual property rights, Cellulose devotes this reply to the matters related to its own principal brief and Appellee's response thereto.

presented by these evidentiary considerations, the propriety of reversing the district court's determination of invalidity is clear.

## II. Cellulose Came Forward with Evidence that the Renewliner Product of the Turner PO was Obtained from Cellulose

The history of the relationship between Cellulose and TSS preceding the involvement of Turner, as well as the subsequent commencement of TSS and Turner's relationship regarding the Renewliner product, catalogs the evidence demonstrating how the Renewliner product of the Turner PO was obtained at least indirectly from Cellulose through TSS, its original customer for the patented product.

TSS contacted Cellulose in 2014 looking for packaging insulation products that TSS could sell to its customers. Appx00829-00830, Appx00963, Appx00966-00968, Appx01445-01448. TSS did not come to Cellulose with a product it wanted manufactured. *Id.* It asked for samples of Cellulose's existing product offerings. *Id.* Cellulose obliged, providing samples of several packaging insulation offerings, including cellulose (i.e., paper) and cotton insulation products. Appx00963, Appx00981-00985, Appx01511, Appx01524-01525.

Cellulose also continued to develop other potential packaging products that might secure business from TSS. *Id.* One such product Cellulose offered was an internally developed packaging insulation product comprised of a non-woven fibrous batt consisting of 100% PET (polyethylene terephthalate) fibers and having

4

a foldable PET film, or scrim, on both sides; i.e., the product that would become the subject of the '007 Patent. Appx00963-00964, Appx00986-00988, Appx05583, Appx01530-01531. This product was developed, and samples produced, prior to June 19, 2015. Appx01511-01512, Appx01518, Appx01531-01532. Before that time, there had been no discussion of *any* all-PET products or products utilizing a PET batt. Appx01512.

The existence of the product at this time is not disputable. Indeed, TSS originally attempted to invalidate the '007 Patent on the grounds that Cellulose allegedly offered to sell it in a June 19, 2015, email between the parties. Appx00669; *see also* Appx00658-00659. Notably, moreover, this all occurred *before* Sal Cardinale allegedly conceived of and told Cellulose to use film on both sides of the batt. Appx01865 at ¶¶ 8-10. In other words, even if his uncorroborated claims are accepted as true, Sal Cardinale told Cellulose nothing it did not already know. *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1461 (Fed.Cir.1998) ([O]ne does not qualify as a joint inventor by merely assisting the actual inventor *after conception* of the claimed invention.").

TSS soon expressed interest in Cellulose's new product and by late 2015 Cellulose was able to make its new packaging insulation product in commercial quantities. At this point, Cellulose issued budgetary "quotes" which provided specifics about the product's construction in order to aid TSS's sales efforts.

Appx00964, Appx00970, Appx05583-05584, Appx05586-05617. Concurrently, Cellulose provided TSS with numerous product samples, made in accordance with specifications that would later be included in the '007 Patent, to facilitate the development of business. Appx01291-01303, Appx01252-01260, Appx01306-01307, Appx01247-01251, Appx01261-01268, Appx01221-01225, Appx05583-05584, Appx05593-05617. These efforts culminated in a February 2016 PO from TSS to Cellulose for third-party DinnerThyme for a product (to be branded Renewliner) that was materially the same as the samples Cellulose had previously provided to TSS. Appx00964, Appx00972, Appx01221-01224, Appx01261-01268, Appx01533, Appx05584, Appx05594-05598, Appx05628.

Thereafter, TSS started working with Turner Fiberfill as an alternative vendor of the Renewliner product. This is by Sal Cardinale's own admission, Appx00667 ("The other manufacturers with whom [TSS] has partnered on the RENEWLINER product since 2016 are Turner Fiberfill, Inc…."), as well as the testimony of Turner's CEO, Paul Turner, who stated that TSS came to Turner in 2016 about making a packaging insulation product using specifications from TSS. Appx01033-01034, Appx01328. Indeed, it was two months after the DinnerThyme PO to Cellulose (based on Cellulose's specifications and samples) that TSS issued Turner a PO for the Renewliner product that was virtually identical to the DinnerThyme PO. Appx00898-00899, Appx00971-00974.

Paul Turner was also clear that somebody at TSS told Turner how to make the product and provided the specifications:

> Q.     How – when TSS approached you to make this product –
>
> A.     Right.
>
> Q.     -- how did you know what to make?
>
> A.     That's a good question. It goes back a long time. I don't remember. I really don't remember. I mean, how do I know – obviously, he must have – he or somebody may have told us that – to make a polyester fiberfill at that spec, but I don't recall who did it – I really don't – whether it was Sal or Ben, or somebody, whatever.
>
> Q.     And just for the record, who's Sal? Who is Sal? What is Sal's full name?
>
> A.     I don't know. Salvatore, that's all I – I don't know what his last name is.
>
> ***
>
> Q.     Anybody else at TSS that you were in contact with?
>
> A.     Well, nobody that's there anymore. I can't remember. There was another – another salesperson there.
>
> Q.     And you don't remember how you got – or you weren't involved with how you got the specifications or what you were supposed to make?
>
> A.     Obviously, somebody must have told us what the spec was, and so we just made it.

Appx01327-01328.

Likewise, he was clear that Turner did not make any Renewliner product until 2016:

> Q.    Did you make the product for TSS prior to 2016?

> A.    No.

Appx01033-01034.

Paul Turner's testimony is corroborated by an "Exclusive Manufacturing Agreement" that TSS and Turner subsequently entered into in July 2016. Appx00900-00915. TSS contends that agreement is irrelevant as being dated "after the fact" of the Turner PO, but its language corroborates Paul Turner's testimony that TSS provided Turner with the specifications to make Renewliner; not the other way around. *Id.*

TSS's role in disclosing the Renewliner product to Turner is further confirmed by Sal Cardinale, who declared unequivocally that the Renewliner product made by Turner (and other vendors since) is materially the same as the Renewliner first developed and made by Cellulose and that was the subject of the February 2016 PO for third party DinnerThyme: "There have been no material changes to the Renewliner product since it was first sold in [February] 2016" (which was the Dinner Thyme PO issued to Cellulose for the RENEWLINER product). Appx00667. TSS even offered an expert declaration in corroboration. Appx00675-00686.

The above evidence supports the conclusion, and a jury could find, that: (i) Cellulose, the owner by assignment of the '007 Patent and employer of all named inventors at the time, put TSS in possession of the Renewliner product and specifications before 2016; and (ii) TSS, whose relationship with Turner began in 2016, conveyed to Turner (issuing the allegedly invalidating Turner PO two months after issuing a PO for the very first Renewliner product from Cellulose) the information for a Renewliner product that was, by Sal Cardinale's own admission, materially the same as Cellulose's Renewliner product.

Citing to *Metacel Pharms. LLC v. Rubicon Rsch. Priv. Ltd.,* No. 2023-2386, 2025 WL 1178384, at *4 (Fed. Cir. Apr. 23, 2025), TSS asserts in its response that Cellulose's evidence is entirely speculative and circumstantial and cannot defeat a motion for summary judgment. Appellee Response Brief ("Resp. Br.") at 25. This is simply incorrect. *Metacel Pharms.* acknowledged that a party ***can*** defeat summary judgment using circumstantial evidence but found that the circumstantial evidence offered in the case under review was insufficient to do so. *Id.* Indeed, it is well-recognized that circumstantial evidence can create genuine issues of material fact. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009) (vacating grant of summary judgment of no infringement in light of "circumstantial evidence that creates genuine issues of material fact").

Moreover, Cellulose's evidence is not entirely circumstantial. As already cataloged above, Cellulose provided abundant evidence that it conceived of the Renewliner product and then provided specifications and physical samples to TSS before it had any relevant relationship with Turner. Two months after issuing the DinnerThyme PO to Cellulose based on the Cellulose-disclosed Renewliner product, TSS allegedly offered for sale to third-party Juicero a product with specifications that are virtually identical to those for the Renewliner product made by Cellulose, as reflected in the Turner PO. Moreover, by Turner's own admission (and as corroborated by the "Exclusive Manufacturing Agreement"), TSS told Turner what product to make.

And, of course, "at the summary judgment stage the judge's function is not …to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986), and "[t]he evidence of the non-movant is to be believed, ***and all justifiable inferences are to be drawn in his favor***." *Id*. at 255 (*emphasis added*).

TSS argues there is no evidence that it received any Cellulose samples of Renewliner product. Resp. Br. at 36. That is incorrect. Even aside from Cellulose's own testimony in these regards (Appx01291-1294), there is ample evidence that TSS requested and received numerous samples of the Cellulose-made product well

before the admitted start of TSS's relationship with Turner or the April 2016 Turner PO. Appx01298-01302, Appx01313.

TSS's response also cites an alleged absence of "inventor" disclosures to TSS but ignores the fact that all named inventors of the '007 Patent were employees of Cellulose at all relevant times (and with whom, indeed, Sal Cardinale alleges to have collaborated in support of TSS's joint inventorship claims).[4] Thus, any information and products conveyed to TSS by Cellulose is, by reason of this relationship, at the very least information obtained from the inventors via Cellulose.

It is, finally, notable that TSS and the district court alike accepted that the Renewliner product of the February 2016 DinnerThyme PO and samples were Cellulose disclosures. Appx06348-06350, Appx01430-10432, Appx00016-00020. Again, before the admitted date of the start of TSS's relationship with Turner, TSS was, via Cellulose, already in possession of the subject matter asserted to be anticipated by the April 2016 Turner PO.

## III.    TSS's Conflicting, Unsupported and Contradictory Claims

Against Cellulose's evidence, TSS offers a conflicting story of the Renewliner product's origins where Sal Cardinale is at the center and Turner and

---

[4] Appx01554-01555.

Cellulose are making the Renewliner product independently and (conveniently for TSS) in ignorance of each other. TSS peddles this story as if its version of events is indisputable. It is not. That TSS's story runs counter to Cellulose's evidence alone demonstrates the existence of disputed questions of material fact respecting where the Renewliner product came from. TSS's evidence in support of these claims is, moreover, legally insufficient, contradictory, and calls into question the credibility of the relevant witnesses. That only compounds the justification for reversing the district court's grant of summary judgment. *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354 (Fed. Cir. 2022) (reversing summary judgment where patent owner presented evidence raising a genuine dispute concerning the credibility of the testimony offered by the party seeking to invalidate the patent).

Consistent with its Counter-Complaint, TSS's first version of the Renewliner product's development was that Sal Cardinale is a joint inventor,[5] allegedly contributing to the claimed invention of the '007 Patent by conceiving of applying PET film to both sides of the PET batt, which he allegedly tested himself *after* having received samples of Cellulose's all-PET batt referenced in the June

---

[5] Appx01554: "Sal Cardinale collaborated with Kevin Chase, Brandon Fenske, Christopher Benner, and/or Matthew Henderson in a joint development project. As part of that collaboration, Mr. Cardinale made a material and meaningful contribution to the conception of the claimed inventions of the '007 Patent."

19, 2015, Cellulose email. Appx01555 ("TSS states that Sal Cardinale contributed at least the idea of adhering a PET film to both sides of a PET batt"), Appx01865 at ¶ 10, Appx01453-01456, Appx01467. Sal Cardinale acknowledged in his deposition that he did not invent the PET batt of the '007 Patent. Appx01453-01456. He also stated under oath that his alleged inventive contribution did not occur until sometime in July or August of 2015. Appx01467, Appx01470-01473, Appx01865 at ¶ 10. That stands to reason, since Cellulose had not suggested any products comprising an all-PET batt until its email disclosure of June 19, 2015. Appx00669, Appx01511-01512. Sal Cardinale confirmed this. Appx01465.

In all events, TSS's interpretation of the parties' history in arguments before the district court was that "[t]he written communications and collaborative efforts between it and Cellulose in developing the inventive concepts that eventually issued collectively as the '007 Patent can only lead to one conclusion: Sal Cardinale…should have been named as an inventor." Appx01690. Ultimately, however, the district court concluded on the parties' cross-motions as to inventorship that the factual disputes respecting whether Sal Cardinale contributed anything to the subject matter of the '007 Patent in the face of Cellulose's prior conception and reduction to practice was a matter for trial, including in view of the parties' "many back-and-forth emails…." Appx09630.

TSS maintained its position throughout discovery. Only after the close of discovery and in opposition to Cellulose's motion for reconsideration[6] on the question of invalidity now before this Court did TSS first trot out the entirely new origin story it now reiterates in its response brief; namely, that Sal Cardinale alone came up with the idea for the Renewliner product before June of 2015, had received samples of PET batt from Turner prior to July 2015, and conveyed to Turner in 2015 that "[h]e was interested in manufacturing a thermal liner consisting of a polyester batt with polyester film adhered to the front and back surfaces." Appx09773 at ¶ 2.[7]

---

[6] Appx09658-09680.

[7] The Court's attention is directed to the record below for the history of TSS's ever-changing invalidity positions:

Appx00649-00814: First summary judgment motion for invalidity on grounds of Cellulose's alleged prior offer for sale to TSS in June 2015 and alleged invalidating February 2016 offer for sale of Renewliner.

Appx01091-01141: Reply in support of first summary judgment motion for invalidity simply arguing Cellulose failed to show disclosure of its Renewliner product to Turner. *See also* Appx01144-01150 (CMS objections to new reply evidence).

Appx09739-09794: Response to Cellulose's Motion for Reconsideration raising new evidence and argument that Sal Cardinale came up with Renewliner independently and asked Turner to make it in 2015.

There are two glaring problems with this Renewliner origin story. First, it arose only after the close of discovery and in the context of Cellulose's motion for reconsideration—supported primarily by a new declaration from Turner's CEO, Paul Turner. For that reason alone, it should be disregarded entirely. It is well established that appellate courts "do not consider evidence or arguments presented for the first time in a motion for reconsideration." *Christie v. Iopa*, 176 F.3d 1231, 1239 n. 8 (9th Cir. 1999) (citation modified). By extension, it is no more appropriate to do so when the evidence is presented for the first time in a response to a motion for reconsideration. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("In reviewing a summary judgment, 'we are limited to the . . . evidence available to the court at the time the motion was made.'") (citation modified).

Second, the new Renewliner origin story finds support only in the vague and contradictory assertions of Sal Cardinale and those contained in Turner's new declaration.

In his declaration, Turner states that "[b]y mid-2015, Turner Fiberfill had sent samples of a polyester fibrous batt to TSS." Appx09773 at ¶ 2. Notwithstanding the unexplained contradiction of Turner's testimony that the company's relationship with TSS began in 2016, there is no indication of what that "polyester fibrous batt" may have been, what percentage of the batt was polyester, what other materials the batt comprised, whether there was any PET film on it, or

whether the batt had any other characteristics corresponding to the claims of the '007 Patent. *Id.* Against the other evidence of record, the district court could not properly accept it as indisputable evidence of TSS's origin story.

Still further, the Turner Declaration includes inadmissible hearsay, including what Sal Cardinale allegedly told Turner. *Id.* at ¶¶ 2 and 3. Courts are limited to relying only on competent and admissible evidence in connection with summary judgment determinations. *See, e.g., Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

Turner's Declaration certainly calls into question his credibility as a witness. *See, e.g., TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004) ("[S]ummary judgment is not appropriate where the opposing party offers specific facts that call into question the credibility of the movant[']s witnesses."); *Mosaic Brands*, 55 F.4th at 1366 ("Ridge showed that Kaminski's credibility is a genuinely disputed material fact, thereby raising a related genuine dispute as to whether Mosaic's corroborating documentary evidence is what it purports to be."). For instance, Turner's statement that Sal Cardinale first contacted him in 2015 directly contradicted his prior deposition testimony that he did not start working with TSS until 2016, Appx01033-01034, as well as Cardinale's own prior declaration confirming that TSS "partnered" with Turner after its relationship with Cellulose ended "in late 2015." Appx00667.

TSS also relies on Tim Wilson, the broker who sourced the PET film used on the Renewliner product,[8] to corroborate Sal Cardinale's sole inventorship claims. Setting aside the fact that the Wilson Declaration was proffered as "evidence" of Sal Cardinale's alleged *joint*-inventorship contributions to the Cellulose Renewliner product, the Wilson Declaration is as fraught as Turner's. For instance, Wilson states: "I *believe* I spoke with Sal Cardinale prior to June 2015 about his idea for both a paper-based package liner as well as a PET-based package liner." Appx01861 at ¶ 2 (*emphasis added*). He provides no corroboration of his own, which is meaningful since this statement is both hearsay (because it is offered to prove that Cardinale told Wilson "about his idea for . . . a PET-based package liner")[9] and utterly equivocal (Wilson "*believes*" he spoke with Mr. Cardinale and that he "*believes*" that happened prior to June of 2015). Wilson states only that this alleged conversation touched on some nebulous "idea" for a "PET-based package liner." *Id.* No specifics are provided as to the contours of this

---

[8] As Cellulose's president testified, it used a custom-printed PET film for Renewliner that TSS wanted to supply through its broker, Tim Wilson, in order to realize a cost-savings. Appx01533; *see also* Appx00964, Appx00972.

[9] "As a general rule, a party is prohibited from introducing a statement made by an out-of-court declarant when it is offered at trial to prove the truth of the matter asserted." *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019) (citation modified).

"idea" that might support Sal Cardinale's allegations of conception of elements of the '007 Patent's claims.

Indeed, the best that can be gleaned from Wilson's assertion, even if it could be accepted on its face, is that it pertained to the vague use of PET for a package liner. That is hardly corroboration for alleged conception of any claimed elements of the '007 Patent and is, in any event, a matter for the jury to evaluate at trial. Wilson also states that he spoke with Mr. Cardinale in and "around" "June 2015" about an idea "for a PET batt with PET film adhered to opposing sides of the batt. Appx01861 at ¶ 3. This is again hearsay, and Wilson offers nothing to evidence *when* in or "around" June the alleged discussion occurred. Moreover, on his own version of events Sal Cardinale states that he "contacted Tim Wilson, my plastics supplier," *after* allegedly suggesting to Chris Benner on or following June 24, 2015, that PET film be adhered to the batt. Appx01865 at ¶¶ 8 and 9. Moreover, the Wilson Declaration states that "Mr. Cardinale explained that he had experimented with ironing PET film to one or both opposing sides of a PET batt." Appx01861 at ¶ 4. However, Sal Cardinale's own assertion is that this alleged ironing did not occur until July or August of 2015. Appx01865 at ¶ 10, Appx01467, Appx01470-01473. Nor does Wilson offer any details about the film or batt allegedly discussed, such as whether they were primarily PET or not, whether the film and/or the batt were foldable, etc., as required by the '007 Patent.

Indeed, a July 2015 email chain between Sal Cardinale and Wilson includes a later, unanswered email from Wilson stating that he did not understand whether Cardinale was referring to PET film or plastic-coated paper. Appx01847-01849.

Ultimately, the district court itself recognized that the Wilson Declaration is "vague" when it denied summary judgment on the parties' cross-motions as to whether or not TSS could establish its claim of joint inventorship. Appx09629. The same can be said here.

As "evidence" of invention (joint or sole) on the part of Sal Cardinale, the Wilson and Turner Declarations are plainly deficient. Nor did TSS offer any corroboration. With respect to Turner, there are no contemporaneous emails or other written correspondence between Turner and TSS supporting this new origin story. Nor is there documentation reflecting *any* contemporaneous exchange of information between them prior to 2016. There is likewise no documentation reflecting any provision of samples or other product details from Turner to TSS. And, indeed, TSS produced in discovery *no* documents or other physical evidence relating to Turner with a date earlier than 2016. With respect to Wilson, there is no evidence predating Cellulose's involvement. Nor did TSS produce any documents to corroborate Sal Cardinale's alleged contributions to the Renewliner product, such as the alleged ironing of PET films onto the Cellulose-provided batt.

As evidence of its independent development of the Renewliner product, TSS also points to its own provisional patent application, which was not filed until February of 2016 – *after* its receipt of samples and specifications from Cellulose. Quite apart from the clear factual dispute raised by the mere timing of the filing (coming well after Cellulose's creation and disclosure of the Renewliner product), the relevance of that provisional application's disclosure as evidence of conception is dubious: The USPTO repeatedly rejected TSS's efforts to antedate the publication of Cellulose's '007 Patent[10] based on the deficiencies of the disclosure, including the failure to disclose an all PET product. Appx05739-05742, Appx05831-05832, Appx05859-05862; *compare* Appx01907-01933. In any event, this is yet another issue for the jury to consider in trying reconcile whose contributions the Renewliner product embodies.

TSS takes issue with being called out on its conflicting claims respecting the origin of the Renewliner product; namely, that Sal Cardinale is both a joint inventor and the sole inventor. TSS argues that parties are free to advance alternative claims or defenses. While that may be, they cannot advance **contradictory facts** in support of those positions. *Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) ("[T]he liberal

---

[10] Published Application 2017/039226. *See* Appx00084.

pleading policy has its limits. '[A] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question.'") (citation modified). Thus, Sal Cardinale cannot advance conflicting and contradictory facts supporting either theory. If nothing else, such "evidence" cannot be used on summary judgment to cast aside Cellulose's own evidence that TSS obtained the Renewliner product from it and then issued a PO to Turner for the same product. This is particularly so where, as here, TSS's obligation on its motion for summary judgment was to show "a lack of genuine dispute about material facts and…that the facts not in dispute are clear and convincing in demonstrating invalidity." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1358–59 (Fed. Cir. 2001) (*see* pp 24-25 of our brief, as well as p 41); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2019) ("Because the burden rests with the alleged infringer to present clear and convincing evidence supporting a finding of invalidity, granting judgment as a matter of law for the party carrying the burden of proof is generally reserved for extreme cases, such as when the opposing party's witness makes a key admission.") (internal quotation marks and citation omitted).

Though not before this Court to decide, the parties' dispute over inventorship (as to which the district court *denied* summary judgment) is plainly implicated here because TSS's response to Cellulose's evidence of disclosure of its

patented invention is to cite conflicting and insufficiently "corroborated" claims of Sal Cardinale's own alleged inventorship of the Renewliner product. When a party claims that its own invention predates, and thereby anticipates, a patent asserted against it, the same "clear and convincing" standard applies as in the context of inventorship. *Mosaic Brands,* 55 F.4th 1354 (Defendant asserting an invalidating sale of its invention.); s*ee also BearBox LLC v. Lancium LLC*, 125 F.4th 1101, 1117 (Fed. Cir. 2025) ("the party seeking correction of inventorship must show by clear and convincing evidence that a joint inventor should have been listed."). Indeed, the same standard is applied to determine if inventor testimony is sufficiently corroborated for all § 102 issues. *See, e.g.*, *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999); *see also TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295 (Fed. Cir. 2016); *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344 (Fed. Cir. 2001). This guards against fraud and "courts being deceived by inventors who may be tempted to mischaracterize the events of the past." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006). The evidence having been found wanting in the context of the parties' cross-motions on inventorship, it was hardly appropriate for the district court to credit it in the context of TSS's invalidity claim; i.e., finding that Sal Cardinale (i) independently came up with the same product disclosed to TSS by Cellulose and (ii) separately conveyed that to Turner.

Ultimately, even if TSS's introduction of contradictory, vague, and legally deficient facts and assertions about the origin of the Renewliner product are countenanced, it is evident that, at best, they highlight a material factual dispute.

## IV. The Turner PO

Sal Cardinale declared that the Renewliner product made by Turner (and other vendors since) is materially the same as the Renewliner first developed and made by Cellulose. Appx00667. This identity in products is the *sine qua non* of TSS's invalidity position in regards to the Turner PO. Indeed, if the products are different, there can be no anticipation. Nonetheless, and in contradiction to the positions it has taken heretofore in the district court,[11] TSS now takes considerable pains to argue that the Renewliner product as eventually manufactured by Turner is different. This is evidently to support the claim that there is no dispute about whether the Turner PO constitutes a disclosure obtained from Cellulose (indirectly, through TSS).

It is notable, however, that the Turner PO (which is the only evidence of the alleged offer for sale) only reflects that TSS sought to have Turner make the

---

[11] Appx06340: "Nor is there any dispute that 2016 Renewliner anticipates the '007 Patent. In its original Motion, [TSS] presented undisputed evidence from its expert and others that 2016 Renewliner is materially identical to the current version of Renewliner that [Cellulose] accuses of infringement. (*See also* Appx00655-00656, Appx01094.)

Renewliner product as specified in the PO for third-party Juicero. Paul Turner himself testified that Turner shipped no Renewliner product until at least the July 2016 date of the Turner/TSS Exclusive Manufacturing Agreement. Appx09833-09834; *see also* Appx00900-00915. There is only the evidence of the PO itself regarding the specifications for the product allegedly offered to Juicero, as well as Sal Cardinale's unequivocal statement that "TSS began selling the Renewliner product by at least as early as February 23, 2016" (which is the offer comprehending Cellulose's Renewliner product) and "[t]here have been no material changes to the Renewliner product since it was first sold in 2016." Appx00667 at ¶ 5.[12]

---

[12] Notably, TSS advanced this claim in its original invalidity motion when arguing that CMS's Renewliner product for DinnerThyme was prior art: "TSS has been manufacturing and selling its Renewliner product since at least as early as February 23, 2016, without any material changes." Appx00659. Not even the district court bought into the idea that the "carding and lapping" made the product different in a way that mattered:

> TSS argues that the February 2016 Renewliner and the April 2016 Renewliner were different because unlike Cellulose, which used an air-laid process to manufacture the product, Turner used a carding machine and a lapper. But it is unclear that the manufacturing process used results in a different product, and Cellulose counters that aside from "formation of a fibrous batt by carding and lapping, [t]he remaining aspects of the Turner Renewliner are, by [TSS]'s own admission, the same as the '007 patent.

Appx01432.

**V. Cellulose at Least Demonstrated Disputes of Material Fact as to Prior Public Disclosure of the Renewliner**

TSS seeks to negate Cellulose's evidence of prior public disclosure of the Renewliner product with the argument that "Cellulose had not begun to generally market its product, had not filed for a patent application had not listed the product on its website, and had not even given a name to the product…." Resp. Br. at 46.

TSS cites no authority supporting the proposition that any or all of the foregoing acts are necessary to demonstrate public disclosure. This is unsurprising since there is no such authority.

While *Sanho* declined to decide exactly what constitutes "public disclosure" under Section 102(b)(2)(B), the decision makes clear that "publicly disclosed" at least means "that it is reasonable to conclude that the invention was made available to the public"; that "the public has learned of the relevant aspects of the invention…." *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, 108 F.4th 1376 (Fed. Cir. 2024). One instructive case on this issue is this Court's 2023 decision in *Minerva Surgical, Inc. v. Hologic, Inc.*, 59 F.4th 1371 (Fed. Cir. 2023). There, disclosure of a product prototype at a trade show permitted viewing and understanding of the prototype, making the disclosure prior art. *Id.* at 1379*; see also Ormco Corp. v. Align Technology, Inc.,* 463 F.3d 1299 (Fed. Cir. 2006).

Here, even to the extent that the *Sanho* decision applies to Cellulose's offer to sell the Renewliner product to TSS, dissemination of the same subject matter (i.e., the Renewliner) went beyond this and included at least the following: Cellulose's provision of Renewliner product samples directly to third party Nurture Life, for evaluation; Cellulose's provision to TSS of numerous sample of the Renewliner product; and TSS's provision of Renewliner product samples made by Cellulose to at least third parties DinnerThyme, Sunbasket, and Munchery for evaluation and testing. *See* Appx01291-01303, Appx01252-01260, Appx01306-01307, Appx05581-05617, Appx05623-05648. Indeed, the evidence reflects that Munchery evaluated the Cellulose product samples and did not like the "exposed edges" of the PET batt/film laminate and so wanted to test overbagged insulation as well. Appx05639; *see also* Appx05626-05627 at ¶¶ 9-10. Clearly, TSS promoted the product and it was readily publicly available as the law requires.

TSS asserts that "Cellulose has not shown that any of the product samples to which it points as public disclosures actually disclosed the subject matter of the 007 Patent," Resp. Br. at 47, and then proceeds to list aspects such as "fiber types, composition blend, fiber length, and/or thicknesses (denier) of the samples' construction that are part of the subject matter of the '007 Patent." *Id.* This is misdirection.

The Section 102(b)(2)(B) exception does not use the phrase "the claimed invention," and so the inquiry is not whether the "public disclosure" is of the claimed invention. Rather, Section 102(b)(2)(B) refers to the public disclosure of "the subject matter disclosed" in the prior art disclosure being excepted. In other words, the inquiry is whether there was an earlier public disclosure of the subject matter of the prior art. That inquiry is satisfied here in view of at least the following:

First, TSS admits that the Renewliner product has been materially the same at all times since at least the time of the DinnerThyme PO (i.e., the product created and supplied by Cellulose). Appx00667 at ¶¶ 3-5.

Second, the samples Cellulose provided to third party NurtureLife, and samples sent to TSS, including for evaluation by Munchery and others, were materially the same as the product that was disclosed to DinnerThyme. Appx05583-05584; *see also* Appx05624-05628.

Given that the Turner PO represents the product offered for sale, the identity between the Renewliner product of that PO and the Cellulose disclosures are the same. At the very least, it raises a genuine issue of fact as to such identity.

Lastly, TSS continues its efforts to characterize any pre-Turner PO disclosures of the Renewliner product as no more than "private commercial

behavior" comparable to the facts in *Sanho*.[13] But the facts here are not analogous. In *Sanho*, the alleged public disclosure was in the form of an offer to sell products embodying the invention that took place strictly between the inventor (Mr. Liao) and the buyer (Sanho). 108 F.4th at 1389-1390. The third-party disclosures of the Cellulose Renewliner product made by it and TSS, as summarized above, were clearly of a different scope and character.

## VI. Further Discovery as to TSS's Public Disclosures of the Renewliner Product is Appropriate

TSS's suggestion that *Sanho* changed nothing, or at least that Cellulose failed to timely seek further discovery, both fail.

First, *Sanho* materially changed the interpretation of Section 102(b)(1)(B), including as applied by the district court in this case. Relatedly, *Sanho's* interpretation became relevant to the appropriateness for further discovery only after TSS sought reconsideration of the district court's earlier determination that Cellulose's disclosure of Renewliner to TSS served as an exception to the alleged

---

[13] One irony in TSS's current position is that it previously asserted:

> "[T]hat in 2015 [Cellulose] and [TSS] were arms-length parties in a customer-supplier relationship between whom no obligation of secrecy existed. At least with respect to [Cellulose], [TSS] was a member of "the public" at the time. As such, [Cellulose's] June 19, 2015, offer made the InfinityCore prototype 'available' to the public under 35 U.S.C. § 102(a)."

Appx01101.

prior art of the April 2016 purchase order to Turner Fiberfill for TSS's end customer Juicero. And, of course, that earlier determination came after the close of discovery. Having prevailed, Cellulose had no reason to seek a reopening of discovery until after TSS made its motion for reconsideration.

The interpretation of Section 102(b)(1)(B) given in *Sanho* also manifestly changed the relevance to this case of TSS's prior third-party disclosures. Before *Sanho*, Cellulose had no reason to inquire into the extent to which TSS itself may have disclosed the Renewliner product to others. Cellulose was already fully aware that it had offered the invention to TSS by the time of the February 2016 PO, and that there were no earlier offers to sell the Renewliner product by TSS.

In all events, TSS cannot credibly contend that the very decision making its own motion for reconsideration possible did not, necessarily, make relevant for the first time any issues newly implicated by the same decision.

## CONCLUSION

Cellulose's patent is presumed valid, and it is TSS's burden to demonstrate otherwise by clear and convincing evidence. It failed to do so. At the very least, there are genuine issues of material fact with respect to application of both of 35 U.S.C. § 102(b)(1)'s exceptions to the on-sale bar.

Cellulose therefore requests that the district court's award of summary judgment to TSS be reversed, and the case remanded for further proceedings.

Respectfully submitted,

Dated: January 27, 2026

DICKINSON WRIGHT PLLC

By: /s/ Christopher A. Mitchell
CHRISTOPHER A. MITCHELL
200 Ottawa Avenue NE, Suite 900
Grand Rapids, MI 49503
(616) 336-1058
cmitchell@dickinson-wright.com

JOHN S. ARTZ
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
(734) 623-7075
jartz@dickinson-wright.com

PHILLIP J. DEROSIER
500 Woodward Avenue, Suite 4000
Detroit, Michigan 48226
(313) 223-3500
pderosier@dickinson-wright.com

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) and Fed. Cir. R. 32(b)(1), as it contains 6,572 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

/s/ Christopher A. Mitchell
Christopher A. Mitchell

Dated: January 27, 2026